# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                                                  **CASE NO. 2:11-CR-010(1)**

                                                                                  **JUDGE SMITH**

**SEAN MURPHY,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Suppress Evidence (Doc. 113). Defendant moves to suppress anything recovered as a result of the search and seizure at his home, 407 Walnut Street, Lynn, Massachusetts, on January 23, 2009. Defendant also requests that all observations made and information obtained by the officers and agents as a result of the search be suppressed.

**A.    BACKGROUND**

On January 23, 2009, federal, state and local authorities executed a series of search warrants at Defendant Murphy's home at 407 Walnut Street, Lynn, MA; at his moving storage warehouse; and on his vehicle. Defendant is only seeking to suppress the warrant issued for the search of his home. Defendant has attached a copy of the search warrant executed on his home as an exhibit to the Motion. However, Defendant has failed to attach the second search warrant issued on his home that same day. The Government has responded and has attached the second search warrant, as well as all the exhibits to both warrants.

The Court held a hearing on Defendant's Motion on October 12, 2011. At the hearing, the Court heard testimony from Lieutenant Alan C. Zani with the Massachusetts State Police, the affiant on the search warrants. The Defendant did not present any witnesses, but did submit an exhibit, the grand jury testimony of Jordayne Hartman, in support of his arguments.

Counsel for the Government questioned Lieutenant Zani about his background and his basis for the initial search warrant, which included detailed information of Defendant's criminal history, and interviews with witnesses, specifically Jordayne Hartman. Lieutenant Zani also described what was observed during the initial search and how he acted with an abundance of caution in obtaining a second search warrant to expand the scope of the search.

**B.    STANDARD OF REVIEW**

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . .." U.S. Const. amend IV. Therefore, search warrants are prohibited unless they have been issued "upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that "indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). In other words, the affidavit "must state a nexus between the place to be searched and the evidence sought." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (quoting *United States v. Bethal*, 245 Fed. Appx. 460, 464 (6th Cir. 2007)).

In reviewing the sufficiency of evidence, the Court is limited to examining the information contained within the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th

Cir. 2005). The Sixth Circuit has recently restated that in reviewing an application for a search warrant, the Court must consider the totality of the circumstances and "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause may derive from information provided by a confidential informant, so long as the information is "sufficiently detailed and corroborated by the independent investigation of law enforcement officers." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998).

Warrant affidavits carry a "presumption of validity" and the challenger's attack must focus on statements made by the affiant, and not statements the affiant states were made by a nongovernmental informant. *Franks v. Delaware*, 438 U.S. 154, 171. The burden is on the Defendant to establish the invalidity of a facially adequate warrant. The issuing court's determination of probable cause in the issuance of the search warrant is given great deference. *United States v. Swihart*, 536 F.2d 715 (6th Cir. 1976); *United States v. Chaffin*, 622 F.2d 927 (6th Cir. 1980).

**C. DISCUSSION**

Defendant Murphy sets forth seven arguments in support of his Motion to Suppress: (1) the application for the search warrant contains material misstatements of fact; (2) the Affiant omitted material information from the Affidavit; (3) there was a lack of corroboration on information received; (4) the Affidavit contained excessively stale information; (5) there was no nexus between the items sought and criminal activity associated to those items; (6) the officer used the search for business-related records as a pretext to search for other evidence; and (7) the officers searched beyond the scope of the Search Warrant.

The Government argues that "[t]he defendant's motion contains no assertion that the affidavit in support of the search warrant was deceptively drawn or contained factual misrepresentations. It merely alleges that following the execution of the warrant, one Informant, Jordayne Hartman, made some alleged inconsistent statements than those that appear in the FBI 302 report documenting her interview." (Gov't Response at 3). Nonetheless, the Court will consider each of Defendant's arguments in turn.

### 1. Misstatements

Defendant asserts that the five page statement given by Jordayne Hartman on January 15, 2009 is "riddled with misstatements, falsities and outright lies." (Def.'s Mot. at 4). Ms. Hartman met with federal and state authorities at Woburn District Court where she was appearing for a felony burglary charge unrelated to Defendant. Ms. Hartman provided this statement in exchange for a favorable outcome on her pending charges.

Defendant sets forth specific statements made by Ms. Hartman and then provides argument as to why each statement is incorrect. Defendant also asserts that the statements made by Frank Senibaldi and Thomas Enquist were false. Defendant therefore argues that he has made a substantial showing that the affiant knowingly and intentionally or with reckless disregard for the truth, included a false statement in the warrant affidavit. Specifically, Defendant argues that Lieutenant Zani knew or should have known that the aforementioned informants provided false information that he included in the affidavit in support of the search warrant.

Reckless disregard can be established by evidence that the officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the Affiant must have entertained serious doubts as to the truth of the *statement or had obvious reasons to doubt the accuracy of the information reported." Wilson v. Russo*, 212 F.3d 781, 788 (3rd Cir.

2000).

The Government does not address each alleged misstatements by Ms. Hartman, but does argue that regardless of the alleged inconsistencies, they do not affect the validity of the search warrant. Specifically, with respect to the cell phone jammer, regardless of the description of it, the fact that Murphy had one in his possession is noteworthy for the reviewing judge. Next, the alleged mistakes made by Hartman is in the description of jewelry obtained via Defendant Murphy's criminal activity were not material. The critical issue was that Hartman described that Defendant Murphy had jewelry in his possession that was taken during the E.A. Dion burglary in Massachusetts. Finally, there is no question that Hartman knew that Defendant Murphy used an alias when he conducted business at a New Hampshire rental company. While Hartman may have made some inconsistent statements during the grand jury proceeding, weeks after the execution of the search warrant, that does not affect the validity of the search warrant.

Lieutenant Zani testified that Ms. Hartman gave crucial information that Defendant Murphy had a cell phone jammer and that he had given his girlfriend Rikkile Brown a New York Giants superbowl ring. Ms. Hartman also stated that Defendant Murphy has used aliases, which was consistent with information already known about Defendant and confirmed in subsequent investigations.

Again, Defendant Murphy is not alleging that the affiant made any false statements in the affidavit, but is challenging false statements made by Jordayne Hartman, a witness who provided information that formed the basis for the search warrant. Regardless of the alleged inconsistent statements, they do not suggest that the affiant misrepresented facts to the judicial officer, or acted with reckless disregard in his approach to the facts. Since the affiant was not deceptive and made no misrepresentation in the search warrant affidavit, there is a presumption of validity that is attached to

-5-

the affidavit requesting the warrant. *United States v. Breckenridge*, 782 F.2d 1317, 1322 (5th Cir. 1986). The Court finds based on the affidavit in support of the search warrants and the testimony here in Court today that the affiant, Lieutenant Zani, was quite thorough in providing a very detailed description of the ongoing investigation, as well as detailed attachments for the judicial officer to consider in support of the search warrant application.

### 2. Omissions of Material Information

Defendant argues that on January 20, 2009, the Affiant appeared at a meeting in the Boston FBI office to discuss Mr. Murphy's case. During the meeting, SA Cabral of the FBI stated that he spoke to Dennis Dion of the E.A. Dion Company to attempt to verify the information that Jordayne Hartman provided. Defendant argues that this information was not included in the affidavit because "Hartman claimed to have seen gold bars when none were stolen from E.A. Dion. Hartman also claimed to have received a gold ring with the red ruby bearing the Radio Shack logo, when no such ring existed. Dennis Dion surely would have told this to SA Cabral, which would have dispelled Hartman's statement." (Def.'s Mot. at 9).

Defendant argues that these material omissions amount to reckless disregard. "Reckless disregard" can be established by evidence that police "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003).

Lieutenant Zani testified that the evidence of Defendant giving his girlfriend Brown a superbowl ring helped further the investigation; however, there is no testimony regarding gold bars or a Radio Shack ring. Based on all the other evidence and testimony presented, the court finds that this evidence, or lack thereof, is not material and therefore does not amount to reckless disregard.

### 3. Lack of Corroboration

Defendant argues that the Affiant failed to corroborate many of the statements made by Jordayne Hartman, as well as the information received from Frank Senibaldi and Thomas Enquish. Accordingly, Defendant argues that uncorroborated information received by police does not provide probable cause. *United States v. Hammond*, 351 F.3d 765 (6th Cir. 2003); *United States v. Monteiro*, 447 F.3d 39 (1st Cir. 2006); *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993).

The Affiant Lieutenant Zani, however, testified that he did corroborate the testimony. Specifically, Lieutenant Zani testified that he was involved in an investigation of some burglaries and was aware of Defendant Murphy's past criminal behavior that included renting a truck in his company name and contacting a business using his business name. These two businesses, North Shore Movers and Angel One Security, were being operated out of Defendant Murphy's home. Lieutenant Zani further testified that during the interview with Ms. Hartman, she was able to tie much of this information together, providing the basis for the search warrant. Therefore, the Court finds that there was sufficient corroboration of the information received by Lieutenant Zani that provided probable cause for the issuance of the search warrant.

### 4. Stale Information

Defendant argues that the statement from Anthony Cataldo from February 20, 2007, referenced a 2006 burglary, which is stale and may negate the finding of probable cause. *See United States v. Thomas*, 757 F.2d 1359, 1367-68 (2nd Cir. 1989). Defendant also argues that the Enquish statement mentioned a bicycle shop break-in from 1984 in Saugus, Massachusetts. Further, Defendant asserts that the information provided by Ms. Hartman was at least seven months old or more. Additionally, at the hearing, defense counsel argued that all evidence of Defendant's criminal activity from 1984 through the Amerisource burglary in 2006 is stale information negating probable cause for the search warrant.

The Government, however, argues that this information is not stale, but rather, establishes a propensity by the Defendant to use his businesses as a front for his high end burglaries, such as renting a truck under his business name. Then the interview with Ms. Hartman helped to bring it all together, when she mentioned how Defendant Murphy used his businesses in the burglaries. There is no question that this alleged stale information was not being offered to establish probable cause on its own. Lieutenant Zani even stated that they did not expect to find items from these older crimes during the search of Defendant's home. Rather, Lieutenant Zani testified that this information was not stale, but rather that "displaying an ongoing pattern of behavior overcomes any staleness or at least combats stale information." (Hearing Tr. at 22).

Defendant references *United States v. Brooks*, 594 F.3d 488 (6th Cir. 2010), in support of his argument that the aforementioned activities of Defendant are stale. The *Brooks* Court noted that "in seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information, and whether information is stale depends on the 'inherent nature of the crime.'" *Id.* at 493 (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). The Court continued:

> Whether information is stale in the context of a search warrant turns on several factors, such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2006) (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)). In the context of drug crimes, information goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009).

*Id.* at 493.

Regardless of the finding by the Court that the information was stale "for purposes of establishing probable cause in its own right," the Court noted that the Government was "arguing that

the otherwise stale information is nevertheless relevant, and properly considered by the magistrate, to add flavor and force to the non-stale information." *Id.* at 494.

The Court agrees with the Government in this case, that the information establishes a propensity by the Defendant to use his businesses as a front for high end burglaries, or that there was at least a commingling of business and criminal operations. "Information which demonstrates a chain of related events covering a broad span of time continuing to the current period may furnish a most reliable indicia of present activity, thereby clearly demonstrating that probable cause exists for the order to intrude." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) (quoting *United States v. Haimowitz*, 706 F.2d 1549, 1554-55 (11th Cir. 1983)). Further, "the basis criterion as to the duration of probable cause is the inherent nature of the crime.... [I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *Id.*

Accordingly, the Court finds that the information is not stale and the information is relevant to show Defendant's repeated criminal conduct and his use of businesses as a front or co-mingling of his businesses with burglaries and other criminal activity.

**5.    No Nexus Between the Items Sought and Criminal Activity**

Defendant argues that "the Affidavit is devoid of any information alleging that Northshore Movers of Lynn or Angel One Corporation was involved in any criminal activity that the business-related records would reveal." (Def.'s Mot. at 11).

There must be a sufficient nexus between the places and items to be searched and some sort of criminal activity associated to those items. *See United States v. Williams*, 544 F.3d 683 (6th Cir. 2008).

Lieutenant Zani testified that the search warrant application provided a sufficient nexus between Defendant Murphy's home and the criminal activity. Specifically, he stated that he was

aware of the two businesses operating at Defendant's home address, 407 Walnut Street. And, that he had evidence that the Defendant was using those businesses in his involvement with criminal activity. Lieutenant Zani stated that Defendant's businesses, if not a total front, were commingled with his criminal activities. (Hearing Tr. at 9, 17-18, 21). Accordingly, the Court finds that there was sufficient evidence set forth in the application for the search warrant and the accompanying affidavit and exhibits to establish a nexus between the items sought and the alleged criminal activity.

### 6. Business-Related Records Used as Pretext to Search for Other Evidence

Defendant argues that "totality of the circumstances" supports a finding that the search for business-related records was a pretext to search for evidence of crimes that police were investigating and that possibly involved Defendant Murphy. Defendant asserts that there was no need to bring 19 officers and agents to his small one-family home to search for business-related records of a small business. Next, he asserts that the officers intent and objective was established based on where they searched and what they seized. Finally, Defendant asserts pretext because the officers entered his home with their pistols drawn and handcuffed the Defendant claiming he was the target of a major investigation.

Lieutenant Zani testified that he, along with the other law enforcement officers, were looking for business records at Defendant's home based on their belief that Defendant Murphy was using his businesses as a front for criminal activity. Lieutenant Zani provided sufficient testimony to establish this, specifically that Defendant Murphy was apprehended in a truck following a burglary of a Costco in Pennsylvania and the truck was rented in the name of Defendant Murphy's business.

The Court agrees that there was probable cause for the execution of the search warrant for Defendant's business records. Further, this search did not constitute pretext to search for other evidence because when other potential evidence was observed in plain sight by officers, a second

-10-

search warrant was obtained expanding the scope of the initial search warrant.

       **7.      Search Beyond the Scope of the Search Warrant**

Defendant argues that the search warrant for his home was limited to business-related records only, yet the officers and agents exceeded the scope of the search warrant. Defendant argues that there are three specific items that must be excluded as beyond the scope: two Massachusetts licenses bearing Murphy's picture; a half-moon series key; and a Carnival Cruise guest folio. Defendant argues that these items were beyond the scope of the search warrant. However, Defendant Murphy fails to even acknowledge that the officers obtained a second search warrant on his home based on the information observed in plain view while executing the first search warrant. There is no question that these items were the subject of the second search warrant and therefore the search of Defendant's home did not exceed the scope of the search warrants.

**D.    CONCLUSION**

Based on the totality of the circumstances, there is no question that the Judge had a substantial basis to conclude that there was a fair probability that contraband would be found in Defendant Murphy's home. The affidavit in support of the search warrant contained adequate detail regarding the suspected criminal activity of Defendant Murphy and the items expected to be found at his home, which is sufficient to support the Judge's finding of probable cause to issue the search warrants. Further, Defendant Murphy has failed to show that specific portions of the affiant's statements are deliberately or recklessly false.

Even if this Court were to conclude that the search warrants were not supported by probable cause, the Supreme Court has held that the Fourth Amendment's exclusionary rule does not require suppression of evidence where law enforcement agents act in reasonable reliance on the search warrant issued by a Magistrate or Judge, even when such search warrant is ultimately determined to

be unsupported by probable cause. *United States v. Leon*, 468 U.S. 897 (1984). Here, the evidence shows that the law enforcement officers acted in reasonable reliance on the search warrants issued by the judicial officer in the search of Defendant's home. For this additional reason, Defendant's Motion to Suppress is without merit.

In light of the aforementioned discussion, the Court finds there was sufficient probable cause for the issuance of both of the search warrants on Defendant Murphy's home. Accordingly, Defendant's Motion to Suppress is **DENIED**.

The Clerk of this Court shall remove Document 113 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                           */s/ George C. Smith*
                                           **GEORGE C. SMITH, JUDGE**
                                           **UNITED STATES DISTRICT COURT**