IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


UNITED STATES OF AMERICA,          :

        Plaintiff,         :

     -vs-          :     CASE NO. 2:11-CR-010 (1)

SEAN MURPHY,          :     JUDGE SMITH

        Defendant.         :

SENTENCING MEMORANDUM

I.     Jail Credits

     a.     Sentencing Disparity
     b.     Inability to Obtain Concurrent Sentence
     c.     Pre-Indictment Delay
     d.     18 U.S.C. 3585(b)/Relevant Conduct


II.     3 Level Sentence Reduction

     a.     Training Video/Security Evaluation Report
     b.     Solving Open Cases
     c.     Government's Refusal to file 5K1.1


III.     Further 3-5 Level Reduction in Sentence

     a.     Additional Cooperation/District Court Security Upgrades
     b.     Collateral Consequences
     c.     Defendant received little or no money
     d.     Lack of Guidance as a Youth
     e.     Family Responsibilities
     f.     Improper/Insufficient Investigation

IV.     Sentence Structure

V.     Co-Conspirator Sentencing

VI.     Recommended Placement/Restitution

I.      Jail Credits

        Sentence Disparity

        Defendant Sean Murphy is "on loan" from Massachusetts State authorities
through a Writ of Habeas Corpus Ad Prosequendum for Federal authorities to prosecute
their case against Murphy.[1] Once the Federal case is resolved, Murphy will be returned to
the State of Massachusetts according to the mandates of the Writ, where he will be
prosecuted, sentenced and required to serve his 'complete term' of incarceration before he
is then turned over to Federal authorities to begin serving his Federal sentence.  18 U.S.C.
3585(a).

        Co-Defendant Joseph Morgan on the other hand began serving his Federal
sentence on January 20, 2011 (date of his Federal arrest) and will serve out his Federal
sentence without break solely because Morgan was able to post bail on the Massachusetts
case, he is also a Co-Defendant with Murphy on.   This is an enormous disparity
compared to Murphy's sentence structure.   Cullen v. U.S., 194 F.3d 401, 408 (2nd Cir.
1999) (Sentencing Court could plausibly conclude that extremely divergent sentences
would undermine the accepted notion that similar conduct should be punished in a
somewhat similar manner.).  See also, U.S. v. Martin, 520 F.3d 87, 94-95 (1st Cir. 2008)
(codefendant disparity); U.S. v. Williams, 524 F.3d 209 (2nd Cir. 2008) (codefendant
disparity); U.S. v. Lazenby, 439 F.3d 928, 934 (8th Cir. 2006) (same); U.S. v. Stern, 590
F.Supp.2d 945 (N.D. Ohio, Dec. 19, 2008) (disparity); U.S. v. Ortiz, 502 F.Supp.2d 712

_____

[1] Murphy is currently being held on $500,000.00 bail in MA on a burglary case where he
is Co-Defendants with David Nassor and Joseph Morgan.  In August 2009, Morgan was
able to post bail in the MA case.

(N.D. Ohio 2007) (disparity); <u>U.S. v. Conatser</u>, 514 F.3d 508, 522 (6th Cir. 2008) (disparity).

Inability of indigent criminal Defendant to make bond should not result in extending the duration of his imprisonment.  <u>Hart v. Henderson</u>, 449 F.2d 183, 185 (5th Cir. 1971).  <u>See</u> also, <u>White v. Gilligan</u>, 351 F.Supp. 1012, 1014 (S.D. Ohio 1972); <u>Crowden v. Bowen</u>, 734 F.2d 641, 642 (11th Cir. 1984); <u>Griffin v. Illinois</u>, 351 U.S. 12, 17-18 (1956).

18 U.S.C. § 3553(a)(6) addresses the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct.  <u>See</u>, <u>Kimbrough v. U.S.</u>, 552 U.S. 85 (2007).  Avoidance of unwarranted sentencing disparity is, after all, one of the primary goals of the Guidelines.  <u>Witte v. U.S.</u>, 515 U.S. 389, 404-405 (1995).  <u>See</u> also, <u>U.S. v. Ossa-Gallegos</u>, 453 F.3d 371, 375 (6th Cir. 2006).

Murphy is requesting he be given his 36 months jail credit from January 23, 2009 to present as a remedy for this unwarranted disparity.  If Murphy is granted a sentence adjustment for his 36 months jail credit, this would account for the unwarranted disparity due to his inability to make bail.  Fairness dictates that credit be given.

<u>Inability to Obtain Concurrent Sentence</u>

Federal and State authorities induced Murphy to cooperate by stating "Don't you want your Federal and State time to run concurrent?"  Murphy stated that he did want his Federal and State time to run concurrent and cooperated fully.

The prosecutor in Murphy's Massachusetts case, Assistant District Attorney Garrett Fregault, has agreed to run Murphy's State sentence concurrent with the Federal sentence.

Unfortunately, based on the way the Federal and State sentences will be imposed, Murphy can only receive a "partially concurrent" sentence in the form of jail credits for time he already served in State custody from January 23, 2009 to present.  See, U.S. v. Barrera-Saucedo, 385 F.3d 533 (5th Cir. 2004).  After sentence is imposed on the Federal case, Murphy must return to Massachusetts according to the mandates of the Writ and serve a substantial State sentence before he can begin serving the Federal sentence. 18 U.S.C.§ 3585(a).

Coincidentally, Murphy's inability to obtain a concurrent sentence was caused by the Government because the Government took custody of Murphy before he was sentenced in Massachusetts.  Had the Government issued a detainer on Murphy upon Indictment, Murphy could have requested a bail reduction in Massachusetts in order to be similarly situated as Co-Defendant Joseph Morgan.  The Government's actions virtually eliminated any possibility of Murphy obtaining a Federal and State sentence that would run fully concurrent.  Murphy can only receive a partially concurrent sentence through a sentence adjustment for his 36 months jail credits.

Pre-Indictment Delay

On January 17, 2009, the BRINKS Depot in Columbus, Ohio was burglarized where a small portion of the total amount of money in the building was stolen.  On

January 23, 2009, Defendant Sean Murphy was arrested and taken into custody on a State case in the State of Massachusetts.

In March 2009, a David Nassor informed State and Federal authorities of his knowledge of the BRINKS heist.  On June 5, 2009, Federal authorities recovered a substantial amount of the money stolen in the heist from a storage bin in Raymond, New Hampshire, through the cooperation of Co-Defendant Robert Doucette.

In August 2009, SA Jason Costello of the FBI told Murphy he had enough evidence to indict him on the BRINKS job, but he was going to wait to bring the charges.

On July 1, 2010, Murphy wrote to AUSA Sal Dominguez requesting that formal charges be brought on the BRINKS job.  (See letter attached) (Exhibit 1),  In September 2010, Murphy attempted to file a formal request with the District Court that charges be brought on the BRINKS job.  (See Request Attached) (Exhibit 2).

Finally, after two years of pestering, the Federal Indictment was filed on January 20, 2011.

By delaying the filing of criminal charges, the Government deprived Murphy of the opportunity to obtain a Federal sentence that would run concurrent with his State sentence.  Had the Government sought those charges earlier and issued a detainer against Murphy, rather than taking custody via Writ of Habeas Corpus Ad Prosequendum, the Massachusetts Court may have reduced Murphy's bail knowing Murphy would not be released.  Murphy would have then been situated as Co-Defendant Joseph Morgan where he could begin serving his Federal sentence immediately and receive a concurrent sentence.

A Judge could avoid unfairness by using permitted departures for prejudice caused by delay. U.S. v. Martinez, 77 F.3d 332, 337 (9th Cir. 1996). The Guidelines provide for departures which would avoid the kind of unfairness to which Defendant was arguably exposed. Id. at 336. See also, U.S. v. Dote, 328 F.3d 919, 922 (7th Cir. 2003); U.S. v. Collins, 122 F.3d 1297, 1308 (10th Cir. 1997).

A number of Circuit Courts of Appeal have held that a delay in bringing a Federal charge that deprives a Defendant of the opportunity to serve a partially concurrent sentence may be grounds for a departure. Because these cases were decided before the Supreme Court's seminal decision in United States v. Booker, 543 U.S. 220 (2005), they relied upon existing jurisprudence regarding appeals of sentencing departures. Since Booker, of course, the bases for a below-Guidelines sentences are much broader, encompassing any of the Sentencing Factors set forth in 18 U.S.C. § 3553(a) and the edict to impose a sentence "no greater than necessary" to effectuate the statutory purposes of sentencing.

In United States v. Saldana, 109 F.3d 100 (1st Cir. 1997), the First Circuit acknowledged that a delay in sentencing that deprived a Defendant of a possible concurrent sentence could form the basis for a departure.[2] Other circuits have found such a departure to be valid. The Ninth Circuit affirmed a departure based in part on this factor, where the Defendant was charged with illegal reentry seven months after immigration officers learned of his presence in State custody. United States v. Sanchez-

---

[2] Saldana acknowledged that the possibility of such a departure was not necessarily limited to those cases in which the delay was the result of bad faith. "It seems to us possible that someone with time and ingenuity could construct a case where a careless or even an innocent delay produced sentencing consequences so unusual and unfair that a departure would be permissible." Saldana, 109 F.3d at 104.

Rodriguez, 161 F.3d 556, 558, 564 (1998) (en banc). The Fifth Circuit held "that it is permissible for a sentencing court to grant a downward departure to an illegal alien for all or part of time served in state custody from the time immigration authorities locate the defendant until he is taken into federal custody." United States v. Barrera-Saucedo, 385 F.3d 533, 537 (5th Cir. 2004) (vacating sentence and remanding where district court judge incorrectly believed that he did not have the authority to depart on this basis.)

Here, more than two years elapsed between the crime and the Federal Indictment. This delay was longer than the time reasonably necessary to investigate the case and bring a criminal charge. See United States v. Martinez-Salazar, 318 F.Supp.2d 127, 128, 136 (S.D.N.Y. 2004) (departing downward where defendant was indicted for illegal reentry while serving state sentence but was not brought to federal court for almost two years); cf. United States v. Medrano, 89 F.Supp.2d 310, 318 (E.D.N.Y. 2000) (granting departure where federal authorities did not bring defendant into federal court until four years after immigration officials confirmed his presence in the U.S.). Here, the fact "that the Government waited 19 months after stating they had enough evidence to indict Murphy raises the suspicion of bad motive on the part of the government." Los Santos, 283 F.3d at 428.

It is not necessary for this Court to decide whether the delay in this case resulted from bad faith. First, under the reasoning in Los Santos, the time elapsed was longer than reasonably necessary to investigate the case. Second, given the fact that the Guidelines have been rendered advisory by Booker, this Court can take into account the delay.

For these reasons, Murphy requests that he be given credit for the time he spent in custody after the commission of the Federal offense from January 23, 2009 to present.

Murphy consolidates the: 1. Sentence disparity; 2. Inability to Obtain Concurrent Sentence; and, 3. Pre-Indictment delay as reasons to award the 36 months jail credit.

Sentencing decisions represent instances in which the whole sometimes can be greater than the sum of the constituent parts. U.S. v. Martin, 520 F.3d 87, 95 (1st Cir. 2008).

18 U.S.C. 3585(b)

Federal jail credits can be awarded for any time spent in official detention after the commission of the instant offense that has not been credited against another sentence. 18 U.S.C. 3585(b).

It is the Federal BOP who calculates and applies jail credits to a Federal sentence. U.S. v. Gonzalez, 192 F.3d 350, 353 (2nd Cir. 1999); U.S. v. Wilson, 503 U.S. 329, 334 (1992). If the District Court wants to award a Defendant jail credits that the BOP will not apply to a Federal sentence, the Court must do so in the form of a "sentence adjustment." Ruggiano v. Reish, 307 F.3d 121, 132-133 (3rd Cir. 2002); U.S. v. Jones, 233 F.Supp.2d 1067, 1076 (E.D. Wis. 2002). Under U.S.S.G. § 5G1.3 the Court has authority to "adjust" a sentence to award credit for time already served in prison, on an unrelated case. Ruggiano at 124; Delestre v. Pugh, 196 Fed. App. 75 (3rd Cir. 2006); U.S. v. O'Hagan, 139 F.3d 641, 656-658 (8th Cir. 1998).

Therefore, in order for the Court to grant Murphy his 36 months jail credit, it must be in the form of a sentence adjustment to ensure proper credit is given, similar to a downward departure.

Relevant Conduct

U.S.S.G. § 1B1.3(a)(2) defines "relevant conduct" as all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction. Application Note 9 defines "common scheme or plan" to contain at least one common factor, such as common accomplices. See also, U.S. v. Panigua-Verdugo, 537 F.3d 363 (7th Cir. 2008) or similar modus operandi. In this case, three of the four co-conspirators (Murphy, Morgan and Nassor) are co-defendants in the Massachusetts case. The modus operandi for the Massachusetts case is identical to the BRINKS Burglary. Application Note 9 also defines "same course of conduct" as a continuous pattern to include similarity in the offenses and the time intervals between the offenses. See, U.S. v. Stephenson, 557 F.3d 449 (7th Cir. 2009). Here, the Massachusetts Burglary occurred only six months prior to the BRINKS Burglary and the offenses were strikingly similar in nature. The money from the Massachusetts Burglary was used to prepare for and commit the BRINKS Burglary. Section 1B1.3(a)(1) includes "preparation for the offense" as relevant conduct. Therefore, the Massachusetts case and the BRINKS Burglary are relevant conduct.

U.S.S.G. § 5G1.3(b)(1) states that if another offense is relevant conduct, the Court shall adjust the sentence for any period of imprisonment already served . . . if that period of imprisonment will not be credited by the BOP.

Since it is clear that the BOP will not credit Murphy for the 36 months from the Massachusetts case, the Court must adjust Murphy's Federal sentence to reflect the 36 months as relevant conduct time.

II.     3 level sentence reduction

Training Video

Murphy offered to make Federal authorities a training video on: 1. procedures; 2. techniques; 3. equipment used; and, 4. how to detect elite burglary.  In August 2009, SA Jason Costello of the FBI told Murphy the FBI was very interested in producing and obtaining this training video.  SA Costello told Murphy the video would be worth a modest reduction of sentence.  Murphy stated he thought it would be worth more.  SA Costello's statement to Murphy is a "Promise, Reward and Inducement" in the classic sense of the term.

Under a formal proffer in writing, Murphy offered authorities the video and other information under PROFFER PART I, requesting that his sentence be cut in half in return for providing the information described in PROFFER PART I.  (See Proffer Part I, attached) (Exhibit 3).  In response, the FBI scheduled several proffer sessions, including the taping of the training video.  (See Agreement attached) (Exhibit 4).  Murphy appeared and produced the in-depth video.  SA Costello was very pleased with the video's contents and told Murphy the video was very useable and then proceeded to edit the video for distribution throughout law enforcement.  Law enforcement will benefit from the information contained in the training video for the next 20 years.

Therefore, it can be argued that Murphy is entitled to have his sentence cut in half, where Murphy offered the video and other information, which he provided, in return for cutting his sentence in half. Federal authorities accepted Murphy's counter-offer by scheduling the production of the video and completing the process.

District Court erred in failing to consider downward departure under 5K2.0, where Defendant arrested for Theft provided information that led to upgrades in the security procedures used by victim, even in the absence of a Government Motion for cooperation under 5K1.1 of the Sentencing Guidelines. U.S. v. Truman, 304 F.3d 586, 591 (6th Cir. 2002).

Additionally, Murphy provided BRINKS with a Security Evaluation Report containing many security upgrades. (See Security Evaluation Report, attached) (Exhibit 5). (Under Court Seal).

For these reasons, Murphy requests a 3 level sentence reduction.


Solving open cases

Court should consider that Defendant made efforts to cooperate, even though those efforts did not yield a Government Motion for Downward Departure. U.S. v. Fernandez, 443 F.3d 19, 33-34 (2nd Cir. 2006). A downward departure is proper where Defendant informed Government of crimes which Government had no knowledge. U.S. v. DeMonte, 25 F.3d 343, 349 (6th Cir. 1994). Here, in PROFFER PART II, Murphy provided information to the FBI on a long list of crimes he had knowledge of, and, who the participants were in those crimes. (See PROFFER PART II, attached) (Exhibit 6).

Most of these crimes were open and unsolved. Murphy's efforts helped solve those crimes. Even though the Government did not file a Motion for a Downward Departure for Murphy's cooperation, Murphy is entitled to consideration for his assistance in solving these crimes. For these reasons, Murphy requests that this variance be consolidated with PROFFER PART I to support the 3 level departure for the training video and Security Evaluation Report.

Sentencing decisions represent instances where the 'whole' sometimes can be greater than the sum of the constituent parts and the combination of factors verges on the unique. U.S. v. Martin, 520 F.3d 87, 95 (1st Cir. 2008).

It is incomprehensible that the Government did not file a 5K1.1 Motion for Murphy providing the extensive, highly detailed training video to the FBI. Murphy's request for a 3 level sentence reduction for the training video, the BRINKS Security Evaluation Report and the information on the unsolved crimes in PROFFER PART II should be the "starting point" for this particular sentence reduction. Fairness and proper credit dictate that these three areas of cooperation rightfully deserve up to a 4 or 5 level sentence reduction based upon their individual worth to law enforcement and to BRINKS. Murphy's Federal Guidelines are so high based on "intended loss" that even if the Court were to grant Murphy a modest reduction of 3 levels for these three areas of cooperation, justice would still be served and respect for the law imposed based on the significant amount of time Murphy would still have to serve on the Federal sentence alone, never mind the Massachusetts sentence he still faces.

Government's Refusal to File 5K1.1

It is evident that the Government did not file a 5K1.1 Motion relating to Murphy's cooperation with authorities. However, if the Government opposes any sentence reduction under 3553(a) for Murphy's cooperation, Murphy claims the Government is doing so without good cause.

Court should address cooperation as part of its 3553(a) analysis even in absence of 5K1.1 Motion. U.S. v. Doe, 213 Fed. App. 660, 663 (10th Cir. 2007); U.S. v. Truman, 304 F.3d 586, 591 (6th Cir. 2002). District Court may review the Government's refusal to make 5K1.1 Motion if such refusal was not rationally related to a legitimate Government interest. U.S. v. Perez, 526 F.3d 1135 (8th Cir. 2008). Court can correct for Government's refusal in not making 5K1.1 Motion. U.S. v. Hubbard, 369 F.Supp. 146, 150 (D. Mass. 2005). The Government is required to advise the Court and Defendant of its factual determination of whether Defendant provided substantial assistance. U.S. v. Villareal, 491 F.3d 605, 610 (6th Cir. 2007).


III.     Further 3-5 Level Reduction in Sentence

Murphy hereby argues that the following areas warrant a further 3-5 level reduction in sentence.

Additional Cooperation

Above and beyond the information contained in the proffer, Murphy was the main witness for Massachusetts State authorities in the case of Commonwealth v. Brian Stevens, Malden District Court No. 0950CR0036 (See Summons, attached) (Exhibit 7).

Stevens was charged with Forgery, Uttering and Receiving Stolen Property. In lieu of going to trial and facing Murphy as a witness, Stevens pled guilty and received an 18 month sentence. (See Mittimus attached) (Exhibit 8).

Downward departures also apply if Defendant cooperated with State authorities. U.S. v. Truman, 304 F.3d 586, 589-591 (6th Cir. 2002); U.S. v. Kaye, 140 F.3d 86, 88-89 (2nd Cir. 1998).

Murphy contends that his cooperation in the Stevens matter, which resulted in a term of incarceration, was substantial assistance and should be rewarded with a downward departure.

Federal Cooperation

Murphy gave the FBI information received from a Juan Garcia Hernandez, a member of the Mexican Los Zetas Gang from Rio Bravo. Murphy gave telephone numbers and contact names on how to acquire up to 100 lbs. of cocaine at a time from this cartel (See attached) (Exhibit 9). Once Murphy realized the Government was not going to file a 5K1.1 Motion for his cooperation, Murphy requested the FBI 302 Reports through Discovery and had an investigator try to corroborate the information Murphy gave authorities. The investigator contacted the AUSA in charge of Hernandez's case, AUSA Terry Olilla, District of New Hampshire, and confirmed that the information Murphy provided was extremely accurate and she thought that Murphy would have to be a member of the cartel to know that information. (See investigation report attached) (Exhibit 10).

The Government refused to provide the FBI 302 Reports from Murphy's intelligence, even though Murphy timely requested the reports through discovery. It is Murphy's contention that his information led to further investigation which resulted in what could be considered "substantial assistance."

ATM Skimming

Murphy received information from a Vladeslav Vladev, a member of a high-tech Bulgarian criminal network, who used "skimming" devices that were placed on ATM machines to capture customers' account numbers as the ATM cards were put into the ATM machines. The group also put covert cameras on the ATM machines to view the customers as they entered their PIN number. Vladeslav Vladev, as well as two Bulgarian co-conspirators, were arrested in the greater Boston area for ATM skimming offenses and were subsequently indicted Federally in Boston. Murphy informed the FBI of additional ATM skimming crimes this group conducted in Chicago, Scottsdale, and Toronto. Murphy also informed the FBI where @ 200 more bank customer's PINs and account numbers were stored in an email account on the internet. (See, SA Costello's notes, Exhibit 3).

District Court Security Upgrades

During the trial of this case, a U.S. Deputy Marshal asked Murphy to advise him on how the Kinneary Courthouse could be more secure. Murphy advised the U.S. Marshal of at least five areas where Courthouse security could be improved and how to do so. Murphy argues that his expertise was provided and should be rewarded with a

downward departure or sentence variance in this instance. (Exhibit 11) (Under Court Seal).

Collateral Consequences

Collateral consequences may partially satisfy the need for just punishment. U.S. v. Wachowiak, 496 F.3d 744, 747 (7th Cir. 2007); U.S. v. Redemann, 295 F.Supp.2d 887, 894-897 (E.D. Wis. 2003).

As a result of Murphy's arrest, he lost his business. Federal and State authorities caused substantial damage to Murphy's moving customers' property when executing their Search Warrant. Murphy could not cover the cost of the damages. Insurance denied coverage because neither Murphy nor his employees caused the damage. Finally, the FBI convinced Murphy's General Manager to quit and the business went under. See, U.S. v. Gaind, 829 F.Supp. 669 671 (S.D.N.Y. 1993), aff'd 31 F.3d 73 (2nd Cir. 1994) (downward departure for loss of business as a collateral consequence of offense). See, also U.S. v. Vidal-Reyes, 562 F.3d 43 (1st Cir. 2009).

Defendant received little or no money

A Defendant may obtain a downward departure where he received little or no money for his participation in the offense. U.S. v. Stuart, 22 F.3d 76, 83-84 (3rd Cir. 1994). A Defendant may also receive a downward departure because he did not profit personally from the offense. U.S. v. Walters, 87 F.3d 663 (5th Cir. 1996); U.S. v. Broderson, 67 F.3d 452, 457-458 (2nd Cir. 1995).

In the case at bar, Murphy was arrested only two days after the perpetrators returned from Ohio in January 2009. The proceeds of the heist had yet to be counted or divied up. Murphy received no money from the BRINKS heist.

Co-Defendant Robert Doucette kept the bulk of the stolen money for himself and only returned a portion of the damaged burned currency along with 80% of the stolen coin. Doucette has been spending money frivolously since he began cooperating with authorities.

Not only did Murphy receive no money from the BRINKS heist, he lost money for renting the moving truck, storage bin and car that the co-conspirators used to commit the crime.

Lack of guidance as a youth

Since the Supreme Court ruling in U.S. v. Booker, 543 U.S. 220 (2005), a Court may now consider a Defendant's lack of guidance as a youth as a reason to depart. U.S.S.G. 5H1.12. See, U.S. v. Grossman, 513 F.2d 592, 596-97 (6th Cir. 2008); U.S. v. Lopez, 938 F.2d 1293, 1297-99 (D.C. Cir. 1991); U.S. v. Swift, 2008 WL 2906884 (N.D. Ind. 2008).

In Murphy's situation, his mother Sylvia married three different men in his youth. When Murphy was 11 years old, Sylvia met her third husband, William Cote. Within a year, Murphy, his older brother Michael and younger half-sister Michelle all moved up to New Hampshire with Sylvia and William Cote. William Cote didn't like kids and quickly got Sean's brother Michael to move back to Lynn, MA with his father. Shortly thereafter, Cote arranged to have half-sister Michelle move back to Lynn, MA with her father. Sean

held strong.  Finally, William Cote convinced his new wife Sylvia to sign Sean over to the State of New Hampshire as an unruly child.  The only option for Sean's release was to go to Lynn and live with his father and brother.

Unfortunately, Sean's father was a functioning alcoholic who didn't care what his two boys did.  Sean's older brother Michael was involved with a band of thieves who lured Sean into a life of crime as a burglar.  Sean quickly went to jail and fell into the loop of recidivism.  Now that Sean is in his late forties, he realizes he must "change a losing game" so that he can raise his two toddler children and obtain the rehabilitation he needs to become a responsible member of society.  Murphy has the support of his community.  Moreover, Murphy's super/extraordinary acceptance of responsibility in this case establishes his intent to change.

The successful rehabilitation of a criminal is a valuable achievement of the criminal process.  U.S. v. Core, 125 F.3d 74, 78 (2nd Cir. 1997).

Family Responsibilities

After Booker, essential family responsibilities and support may persuade the Court to depart downward.  U.S.S.G. § 5H1.6.  See, also, U.S. v. Owens, 145 F.3d 923 (7th Cir. 1998).

In Murphy's situation, shortly after arrest Murphy had a son from his ex-wife Rikkile Brown.  Brown got pregnant at the end of her relationship with Murphy.  DNA tests confirmed that Logan W. Brown is Murphy's son.  Rikkile Brown has HPV Cancer. She is currently engaged in her second bout of Chemotherapy and radiation.  The cancer has spread to her kidneys.  Logan Brown is also autistic and attends special-ed classes.

Murphy's new wife Kristen Sullivan got pregnant at the very beginning of their relationship. On August 14, 2009, Sullivan gave birth to Shaelyn D. Murphy.

Kristen Sullivan is struggling with a drug addiction. She recently graduated from a six month residential treatment program. Sullivan also has a sleeping disorder where she has difficulty waking up before noon every day. She needs Murphy's help with the kids during the morning hours.

Also, Murphy's mother Sylvia died of anal cancer at the age of 59 years old. During her last nine months of life she requested to remain at home under Hospice care. Sean Murphy agreed to be her primary care giver and remained home with his mother as her personal nurse until she passed. Sean's brother Michael recently died at the early age of 48 years old.

Murphy's father Edward died of a heart attack at the age of 66 years old. During his last year of life, Edward was in an out of rehabilitation centers. Sean took care of his ailing father at home between the rehab stints. Sean's actions show that he has strong family values.

The early death of parents can justify a downward departure. <u>U.S. v. Collington</u>, 461 F.3d 805 (6th Cir. 2006). Also the death of a sibling qualifies for a downward departure. <u>U.S. v. Wyatt</u>, 442 F.Supp.2d 298, 299 (W.D.Va. 2006); <u>U.S. v. Hubbard</u>, 369 F.Supp.2d 146, 147-148 (D. Mass. 2005). Additionally, if genetics play any part in how long a person lives, Murphy is now 47 years old. His mother died at age 59 and his father died at age 66. His brother at 48. Wherefore, there is the possibility that Murphy may not have more than 10-15 years of life remaining.

Defendants "over the age of 40 . . . exhibit lower rates of recidivism." See Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at 12, 28 (2004) www.gov/publicat/recidivism_general.pdf. U.S. v. Hodges, 2009 WL 366231 (E.D.N.Y. Feb. 12, 2009) (Court relies in part on lower risk of recidivism for older Defendants like this 43-year old Defendant); U.S. v. Lucania, 379 F. Supp.2d 288, 297 (E.D.N.Y. 2005) (recidivism is lower for older Defendants).

18 U.S.C. 3553(a)(2)(D) requires that the Defendant be provided with the rehabilitation he needs. 18 U.S.C. 3582(a) requires the Court to recognize that imprisonment is not an appropriate means of promoting correction or rehabilitation.

The Court may consider a combination of factors when deciding to depart downward. U.S. v. Sabino, 274 F.3d 1053, 1078 (6th Cir. 2001).

Improper/Insufficient Investigation

Contained in the Jencks material Murphy received on the day of jury selection, he learned that Robert Doucette used a "James Hennessey" to rent a moving truck as well as a storage bin to move and store the stolen BRINKS money. At trial it was further discovered that Hennessey rented two moving trucks on two different occasions for Doucette to move the stolen money. Hennessey also personally helped Doucette move the loot. SA Jason Costello testified at trial that no one questioned Hennessey at all about BRINKS. Considering that Doucette was the "only witness" who was placing Murphy in Ohio, and the credibility of Doucette was at issue, not questioning Hennessey regarding his and Doucette's actions amounts to an improper/insufficient investigation. Prosecutors have a duty to learn of any favorable evidence known to others. Puertas v. Overton, 343

F. Supp.2d 649 (E.D. Mich. 2004) aff'd 168 Fed. Appx 689 (6th Cir. 2006) cert. denied 549 U.S. 1179 (2007). Had Murphy been made aware of Hennessey in a timely manner, he would have then subpoenaed Hennessey as a witness to uncover much of Doucette's alleged perjured testimony. There is no legitimate reason for not questioning Hennessey, or for that matter, indicting him.

The FBI did not investigate or obtain rental documents from (1) the storage bin Hennessey rented in Raymond, NH to store the stolen BRINKS money in; or (2) from the "two" UHAUL moving trucks Hennessey rented to move the stolen money twice; or (3) from the Lynn storage bin that stolen items were kept in. This is clearly more than sloppy police work.

Murphy is now seeking a departure for this improper insufficient investigation. See, U.S. v. Coleman, 188 F.3d 354 (6th Cir. 1999) (en banc) (under Koon, improper investigative techniques may justify a departure if outside the heartland); U.S. v. Nolan-Cooper, 155 F.3d 221 (3rd Cir. 1998) (departures based on investigative misconduct are not expressly precluded). Had the FBI done their job and interrogated Hennessey or investigated him, the outcome of trial may have been different, or at the very least, Murphy would have had a witness to challenge the testimony of Doucette. Murphy's request for a departure here is well-founded.


Sentence Structure

Murphy is on loan from Massachusetts State authorities on a Writ of Habeas Corpus Ad Prosequendum. When the Federal case is resolved, Murphy must be returned

to Massachusetts according to the mandates of the Writ where he currently faces a mandatory 20 year sentence[3] in Massachusetts.

Based on the way Murphy's Federal and State sentences will be imposed, the Federal sentence must be served "after" he serves an extremely lengthy Massachusetts State sentence. Murphy was denied the opportunity to receive a fully concurrent Federal sentence based on "how" and "when" the Government took custody of Murphy from Massachusetts authorities. 18 U.S.C. § 3585(a). Murphy could only receive a partially concurrent Federal sentence in the form of a sentence adjustment for the 36 months of jail credit.

18 U.S.C. 3553(a) states the Federal sentence must be "sufficient, but not greater than necessary." Kimbrough v. U.S., 552 U.S. 85 (2007). In this instance, Murphy's Guidelines currently call for @ a 300 month sentence. 300 months (25 years) is the "statutory maximum penalty" Murphy is subject to based on the convictions for Counts 1, 2, 3, and 4. Apprendi v. New Jersey, 530 U.S. 466 (2000). The 300 month maximum equates to level 34 on the Sentencing Table (262-327 months). Therefore, Level 34 is the starting point before any sentence reductions. If the 36 months jail credit variance is applied for the: 1. Sentence Disparity; 2. Pre-Indictment Delay; 3. Inability to Obtain a Concurrent Sentence; or 4. Relevant Conduct, the remaining sentence is 264 months.

If the 264 months is reduced by 3 levels for supplying the FBI with the training video and providing BRINKS with the Security Evaluation Report, the offense level

_____

[3] Murphy is indicted in MA as an Habitual offender, which mandates Murphy receive the maximum penalty for his most serious offense. Mass. General laws. Ch. 279, Sec. 25. Murphy's most serious offense is B & E in the Night, which carries a maximum term of 20 years. Mass. General laws. Ch. 266, Sec. 16. (Exhibit 3).

range is now 151-188 months.  Because Murphy has to serve such a lengthy sentence in Massachusetts before he can serve that sentence, and, the Federal sentence must be sufficient, but not greater than necessary, Murphy requests a further 3-5 level reduction in sentence for the other reasons stated.

The Court may rely on:

1.      Murphy's cooperation in the Brian Stevens matter; Federal Cooperation;

2.      Murphy did not profit from his crime;

3.      Murphy's lack of guidance as a youth;

4.      Murphy's family responsibilities; District Court Security Upgrades;

5.      The collateral consequences Murphy suffered;

6.      Improper/Insufficient Investigation; and,

7.      Murphy has to serve a significant Massachusetts sentence before starting his Federal sentence . . . as reasons to depart 3-5 levels further.

The District Court has greater latitude to grant departures under  § 3553(a).  U.S. v. McBride, 434 F.3d 470, 476 (6th Cir. 2006); U.S. v. Collington, 461 F.3d 805 (6th Cir. 2006).


Co-Conspirator Sentencing

1.  David Nassor was not charged for his participation in the BRINKS heist because he cooperated.  James Hennessey was not even questioned.

2.  Robert Doucette received 27 months for his participation in the BRINKS heist because he cooperated.   Doucette received a respectable reduction

from his original offense level for his cooperation.

3. Joseph Morgan received a sentence of 55 months with no cooperation at all.

4. Not including any reductions the Court may grant for Murphy's objections to the Presentence Investigation Report, Sean Murphy initially starts at @ 300 months, less 36 months jail credit, less 3 levels for providing the training video, and a further 3-5 level reduction for the other reasons stated.

It is this counsel's professional opinion and official recommendation that Murphy's "total sentence" should be no more than in the **120-150 month range** based on the overwhelming amount of valuable information and cooperation that Murphy has provided to Massachusetts State authorities, the FBI, the U.S. Marshals and to BRINKS in this matter. 120-150 months is almost three times the sentence Mr. Morgan received and five times the sentence Doucette received. While two of the other three co-conspirators got no jail time at all. A sentence of 120-150 months will promote respect for the law, and, justice will be served. Finally, it would possibly allow Mr. Murphy to complete the sentence before his life expires.

The 6-8 level reduction in sentence that Murphy is requesting for all of the reasons stated herein is on par with the offense level reduction Doucette received for cooperating in only one matter (this case). It has been clearly established that Murphy provided substantially more information than Doucette did. Moreover, it is very important to note that Murphy was more truthful and accurate in his Proffer (of this case)

than Doucette was at Murphy's trial under oath. Murphy's request for a 6-8 level sentence reduction is certainly reasonable.

Recommended Placement

Defendant requests the Court to recommend to the Bureau of Prisons that he be placed at <u>Devens</u> in Massachusetts. The Defendant makes this request for several reasons. First, the Defendant wants to be close to his family. The Defendant is from Massachusetts and there is only one Federal Prison in Massachusetts. Second, the Defendant litigates civil matters in the Massachusetts Courts and being placed in Massachusetts will allow the civil matters to proceed. Third, Devens holds all levels of security inmates. Therefore, Defendant fits the criteria of Devens placement.

Restitution

Defendant Murphy requests that he be allowed to make restitution through an in-kind payment pursuant to 18 U.S.C. 3664(f)(4). The Defendant is a security expert who operates a security consulting business in Lynn, MA. The Defendant developed certain security devices that the victim in this case, BRINKS, would benefit from the use of said devices. The Defendant has contacted BRINKS and proposed the in-kind payment. (See letter attached) (Exhibit 12).

WHEREFORE, the Defendant requests the Court's permission and approval to substitute the in-kind payment for restitution.

Respectfully submitted,

_s/David J. Graeff_____
David J. Graeff  #0020647
P.O. Box 1948
Westerville, Ohio  43086
Phone:  (614) 226-5991
Trial Counsel for Defendant
Sean Murphy

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was delivered to Salvador A. Dominguez and Heather Hill, Assistant United States Attorneys, 303 Marconi Boulevard, Suite 200,  Columbus, Ohio 43215, this <u>11th</u>  day of  <u>January</u>, 2012.

_s/David J. Graeff_____
David J. Graeff  #0020647
Trial Counsel for Defendant
Sean Murphy