IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    vs.     :    CASE NO. 2:11-CR-10(1)
                                                JUDGE SMITH

SEAN D. MURPHY

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the United States, by its counsel Assistant United States Attorneys Salvador A. Dominguez and Heather A. Hill, and by way of the following memorandum, we respond to Defendant Murphy's sentencing memorandum.

                                        Respectfully submitted,

                                        CARTER M. STEWART
                                        United States Attorney

                                        s/Salvador A. Dominguez
                                        SALVADOR A. DOMINGUEZ (0056232)

                                        s/Heather A. Hill
                                        HEATHER A. HILL (6291633)
                                        Assistant United States Attorneys
                                        303 Marconi Boulevard, Suite 200
                                        Columbus, Ohio 43215
                                        (614) 469-5715
                                        Fax: (614) 469-5653
                                        Sal.Dominguez @usdoj.gov
                                        Heather.Hill @usdoj.gov

**MEMORANDUM**

**Sentencing Disparity**

Defendant Murphy (hereinafter Murphy) argues that any sentence within the range recommended by the probation officer in the PreSentence Investigation Report (PSR) would result in a sentencing disparity when that sentence is considered in comparison to the sentences imposed upon his co-defendants, Joseph Morgan and Robert Doucette.

First, Murphy is requesting that this Court give him 36 months jail credit from January 23, 2009 to present. The rationale advanced for this request is flawed. Murphy was arrested on January 23, 2009, for his involvement in the burglary of a business located in Massachusetts. His arrest was unrelated to anything involving the January 18-19, 2009 burglary of the Columbus, Ohio Brinks facility and resulting interstate transportation of stolen property. As a matter of fact, at the time of his arrest on January 23, 2009, law enforcement officials in both Ohio and Massachusetts were unaware that Murphy had any involvement in the burglary of the Columbus Brinks facility. Moreover, the United States had absolutely no control over the Murphy's bond and the status of his detention imposed upon him in the Commonwealth of Massachusetts. The fact that he was detained pending disposition of the case in Massachusetts should therefore not have any affect upon the sentence imposed by this Court. His

bond status in the Massachusetts case does not present any issue of disparity with respect to his co-defendants in the case at bar.

Murphy further complains that based on the actions of the federal government, he was unable to obtain bail in his Massachusetts case. He alleges that if the government had waited until he was sentenced in his Massachusetts case, then his federal prison time would have started at a later date. Such a statement is contrary to the request that Murphy himself made in letters he forwarded to an undersigned Assistant United States Attorney demanding that he be indicted and that he appear before this Court to respond to potential federal charges.[1]

Murphy also alleges that he was somehow prejudiced by the alleged pre-indictment delay in this matter. The evidence presented at trial revealed that the investigation of this crime involved activity in five different states, the seizure and obtaining of numerous items of evidence and the interview of numerous witnesses. The manner in which the crime was carried out made this a complex case which required the exhaustion of a great deal of investigative resources for it to proceed to trial.

---

[1] See Exhibits 1 and 2 attached to Murphy's sentencing memorandum. Indeed, Murphy argues that the government somehow prejudiced his interests by indicting him and ordering him to the Southern District of Ohio to respond to these charges. Surprisingly, elsewhere in his sentencing memorandum, he alleges pre-indictment delay.

For instance, David Nassor, a critical witness in this case, did not testify before the grand jury until January 6, 2011, just two weeks prior to the indictment being returned in this matter. Additionally, the investigation involved the government's receipt of extensive evidence through international channels. Clearly, the case was indicted well in advance of the statute of limitations. The fact that the government was able to obtain an indictment within a two-year time frame could frankly be considered commendable given the complexity of the case. Murphy has not proffered any basis to allege that the government in any way unduly delayed its pursuit of an indictment in this case.

Murphy further argues that since he is awaiting trial for his participation in the June 2008 E.A. Dion burglary in Massachusetts, that he should somehow receive some credit on his federal sentence for the term of pre-trial detention has served while awaiting the disposition of his Massachusetts case. He makes this argument under the guise of "relevant conduct" since the E.A. Dion burglary was allegedly committed in the same manner as the Brinks burglary. The E.A. Dion case, in fact, had absolutely nothing to do with the Brinks burglary case in Columbus, Ohio, and neither the government nor the probation office has ever referenced the E.A. Dion burglary as relevant conduct inn the case at bar. This Court is certainly not

required to grant Murphy any credit for his term of pretrial detention imposed in the Commonwealth of Massachusetts.

**Acceptance of Responsibility and Downward Departure**

Murphy alleges that he should be afforded a three-level reduction in his offense level computation for acceptance of responsibility per U.S.S.G. § 3E1.1.  The basis for this allegation is that he assisted the FBI in Massachusetts by creating a training video and that he cooperated and provided information on others who may have committed federal or local crimes.  The fact of the matter is that Murphy proceeded to trial and forced the government to exhaust numerous economic resources to achieve a successful result at trial.  Murphy has not accepted responsibility for his offense conduct.  He served as his own counsel during the course of the trial.  During the trial, Murphy in both his cross-examination of witnesses and in his closing argument, suggested that he was never involved in the burglary and the resulting transportation of the stolen money and merchandise.  Rather, he wanted the jury to believe that he had otherwise taught Doucette and Morgan how to commit such a burglary based on his "Mater Thief: How to be a Professional Burglar" manifesto.  Murphy further attempted to convince the jury that there was a storage facility located somewhere in Ohio, separate and distinct from the storage facility that he and his

co-conspirators used in Pennsylvania, which Doucette and Morgan allegedly used to assist in the interstate transportation of stolen property. Additionally, during the course of his closing argument, Murphy attempted to tell the jury "what really happened" but was prevented from so doing without actually testifying at trial. Murphy further argued that the government never placed him in the State of Ohio. Throughout the trial he clearly attempted to refute his involvement in this criminal activity. All of these theories were, of course, inconsistent with the information Murphy himself provided to government officials during his proffer in May of 2010.

When a defendant proceeds to trial and denies the essential factual elements of his guilt, he is not entitled to a reduction for acceptance of responsibility. *United States v. Forrest*, 402 F.3d 678, 688 (6th cir. 2005). Indeed, a defendant who presents a claim of actual innocence and attempts to implicate others who had "set him up," is not entitled to a reduction for acceptance of responsibility. *United States v. Farrelly*, 389 F.3d 649, 656-657 (6th Cir. 2004). *See also United States v. Angel*, 355 F.3d 462, 477 (6th Cir. 2004).

The government believes that this Court should deny any consideration to Murphy for acceptance of responsibility. He is not entitled to acceptance of responsibility, nor an adjustment in any matter, for any cooperation he provided to the United

States.  Murphy argues that he is entitled to a 50% sentence reduction based on the level of cooperation he provided.  Prior to the trial of this case, and in recognition of Murphy's attempt to assist law enforcement authorities, the United States offered Murphy a very reasonable offer of a binding sentence pursuant to Rule 11(c)(1)(C), in order to resolve this matter.  The government reiterated its willingness to resolve the case in this manner the day before the trial was to commence.  Murphy, who was well aware of the provisions under U.S.S.G. §5G1.2(d) and the requirement that this Court impose consecutive sentences on his counts of conviction, flatly rejected the government's offer. While the probation officer has recommended a sentence of 25 years in prison given Murphy's extensive criminal history and his ultimate offense level, the United States' offer would have permitted Murphy to plead guilty to Count 4 of the Indictment, which would have capped him at the statutory maximum of 10 years. This plea offer further provided for a sentence more than a year less than the statutory maximum 10 years applicable to Count 4. This offer was *more than 50% off* Murphy's ultimate sentencing exposure*.*  Again, this offer was based, in part, upon Murphy's previous statements to law enforcement authorities.  Murphy rejected that reasonable plea agreement offer and chose instead to proceed to trial, refusing to accept responsibility for his actions.  His present argument for a downward departure or an

7

adjustment for acceptance of responsibility is thus without merit.

Murphy further argues that he should be granted a sentence reduction because he received little or no money based on this offense conduct. The government is unaware of the exact amount of money Murphy personally received as a result of this offense conduct. The fact that the defendant was arrested prior to all of the money being divided amongst co-conspirators is not a circumstance that this Court should take into consideration in contemplating a downward departure in Murphy's sentence.

**Co-defendants' Sentences**

Murphy continues to request that this Court sentence him based, in part, on the sentences imposed upon co-defendants Joseph Morgan and Robert Doucette in this case. Unlike Murphy, who flatly rejected the government's plea offer for a very reasonable sentence pursuant to a binding plea agreement, defendants Morgan and Doucette chose to accept plea agreements which reflected the same loss figure as the plea agreement offered to Murphy. Additionally, both Morgan and Doucette had criminal history backgrounds which reflected far less exposure to the criminal justice system when compared to Murphy. The three are simply not similarly situated.

Defendant Morgan received the benefit of acceptance of responsibility which was reflected in his ultimate sentence. Defendant Doucette likewise received the benefit of acceptance of responsibly plus some additional consideration based on his level of cooperation with the United States. Moreover, both Morgan and Doucette entered guilty pleas to Counts 1 and 4 of the Indictment which capped their statutory maximum sentences at 15 years. Murphy, on the other hand, has been convicted on four counts which subjects him to an additional 10 year term of imprisonment. His Criminal History Category VI merely adds to his ultimate exposure. Simply stated, Murphy's background is quite a bit different than the backgrounds of defendants Morgan and Doucette.

**Family Background**

In his memorandum, Murphy discusses his difficult personal background[2] and a general lack of positive supervisory guidance during his childhood years as having a significant negative impact upon him. The government recognizes that the Court is instructed by 18 U.S.C. § 3553(a) to consider the relevant history and characteristics of the defendant when determining an appropriate sentence, and that verifiable family background

---

[2] Murphy essentially "testified" as to some of these matters during his closing argument at trial.

matters may be part of the a defendant's history and characteristics.  The government would note, however, that U.S.S.G. § 5H1.12, specifically indicates that "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted."

The cases that Murphy has cited in urging the Court to consider his disadvantaged youth, are factually dissimilar to Murphy's circumstances.  In both *United States v. Swift,* 2008 WL 2906884 (ND Ind. 2008) and *United States v. Lopez*, 938 F.2d 1293 (D.C. Cir. 1991), the defendants were youthful offenders who had not been involved in the criminal justice system for decades. The government submits that the lack of youthful guidance is a more compelling consideration in the instance of a youthful offender whose criminal transgressions may be seen as a result of naively following the negative elements that surrounded him in his life. Murphy, on the other hand, has had decades of involvement in the criminal justice system.  He has undoubtedly been given opportunities to engage in rehabilitative programs and come to understand the negative ramifications of continuing to involve himself in criminal activity.  That Murphy has persisted in his criminal lifestyle from his youth and throughout his adulthood (and become a master of the crime of professional burglary), the government submits is a weightier personal history and

characteristic of the defendant than his lack of guidance he received thirty years ago.

## DEFENDANT'S SENTENCING MEMORANDUM-II

### Defendant's use of the Internet

Murphy continues to argue that he did not use the internet in order to target the Brinks facility in Columbus, Ohio. This assertion is contrary to the testimony provided by Robert Doucette and David Nassor, a portion of which is actually attached to Murphy's memorandum. The targeting of a business through the internet is part of the trade. Indeed,

> [t]he first place to begin your search is the internet. The amount of information available on-line is mind boggling. All the different telephone directories on-line provide a good starting point. You can search by company type or SEC. Both will limit your search to the exact type of business you want to hit.

Murphy, Sean, *Master Thief: How To Be a Professional Burglar*, Government Exhibit 15-1. The testimony of Doucette and Nassor was consistent with the teaching of Murphy himself as reflected in his manifesto. Murphy's objection should be overruled.

### Intended Loss

Murphy objects to the intended loss being in excess of $90 million. Murphy asserts that this is an improper figure because

there was "nothing" presented at trial to suggest that Murphy and his co-conspirators intended to take the entire amount of money in the vault during the course of the burglary.  This assertion is inconsistent with the evidence presented at trial.  First and foremost, Murphy reserved a 24 foot semi-tractor trailer nearly two weeks prior to traveling from Massachusetts to Ohio in order to transport burglary tools and the monetary proceeds obtained during the burglary.  This reservation was made after Murphy had entered into a contract to lease a storage facility in Pennsylvania where he had successfully stored the tools that he intended to use to break into the Brinks facility.  Given the fact that such a trailer was rented in order to transport both the burglary tools and loot is sufficient in and of itself to suggest that the intention of Murphy and his co-conspirators was to steal everything within the vault.

One need only review all of Murphy's preparation to affirmatively state that everything in the vault would be transported, if possible, following the "score."  The crew only took the coin boxes, much heavier than the currency, as an after-thought because the currency caught on fire.

Murphy further contends that he should only be accountable to the loss amounts reflected in his co-defendants plea agreements, to which the government agreed to be bound.  When the government negotiated its plea agreements with co-defendants

Morgan and Doucette, we had not yet received a full accounting relative to the total amount of money contained in the vault at the time of the burglary.  While we knew that the amount would be substantial, we had not yet received a final accounting and we thus agreed to hold the defendants accountable for the amount of actual loss, as reflected in Morgan's and Doucette's respective plea agreements.  We tendered the same offer relative to loss amount to Murphy, and although he and his counsel were informed that the intended loss amount would ultimately be much higher, he rejected that agreement.  Indeed, the only difference in the plea agreement tendered to Murphy and those offered to his co-defendants, was that the government negotiated for a role enhancement and an enhancement for sophisticated means in Murphy's agreement.  The evidence presented at trial clearly indicated that Murphy was the leader of this enterprise and that he had devised a sophisticated means to carry out the crime.  The Probation Officer properly computed the intended loss in this matter.

WHEREFORE, the United States respectfully requests that this Court consider the matters contained herein in arriving at an appropriate sentence in this case.

        Respectfully submitted,

        CARTER M. STEWART
        United States Attorney

        s/Salvador A. Dominguez
        SALVADOR A. DOMINGUEZ (0056232)

        s/Heather A. Hill
        HEATHER A. HILL (6291633)
        Assistant United States Attorneys
        303 Marconi Boulevard, Suite 200
        Columbus, Ohio 43215
        (614) 469-5715
        Fax: (614) 469-5653
        Sal.Dominguez @usdoj.gov
        Heather.Hill @usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was served on this 19th day of January, 2012, electronically on David J. Graeff, Esquire, P.O. Box 1948, Westerville, Ohio 43086, attorney for defendant Sean Murphy.

        s/Salvador A. Dominguez
        SALVADOR A. DOMINGUEZ (0056232)
        Assistant United States Attorney