IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NUMBER |
| | ) | 2:11-CR-10(1) |
| PLAINTIFF, | ) | |
| VS. | ) | COLUMBUS, OHIO |
| | ) | SEPTEMBER 14, 2011 |
| | ) | |
| SEAN MURPHY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

_____)


**TRANSCRIPT OF PRETRIAL CONFERENCE**
BEFORE THE HONORABLE GEORGE C. SMITH
UNITED STATES DISTRICT JUDGE




APPEARANCES OF COUNSEL:

FOR THE UNITED STATES:        SALVADOR DOMINGUEZ, AUSA

FOR THE DEFENDANT:            DAVID GRAEFF, ESQUIRE







GEORGINA L. WELLS, OFFICIAL FEDERAL COURT REPORTER
(614)719-3225

1    Wednesday Afternoon Session,

2    September 14, 2011.

3                    - - -

4         COURTROOM DEPUTY CLERK:  The Court calls Case Number

5    2:11-cr-10(1), the United States of America v. Sean Murphy.

6         THE COURT:  We are here on defendant's motion for an

7    initial pretrial conference, and there are numerous pretrial

8    issues involved in this case, as you know.  Several have

9    already been addressed by this Court's orders.

10        I want to say here at the outset that this is not a

11   conference to reach a plea agreement or a resolution of the

12   case.  The Court should not and will not participate in such a

13   conference for that purpose.  However, following our discussion

14   here, everyone will be available without the Court's presence

15   to do that.

16        Mr. Graeff?

17        MR. GRAEFF:  Thank you, Your Honor.  First of all, I

18   want to thank the Court for allowing me to have this initial

19   pretrial conference.  There is one scheduled for next month,

20   but because of the details that have emerged since I was last

21   asked to help Mr. Murphy, I thought it would be best to have

22   just a general discussion as to what is occurring and some of

23   the problems that Mr. Murphy and I are encountering.

24        There are, basically, four points that we are having

25   some concern over.  The first -- I will just list the four

1  points first and then get back and detail them in sufficient

2  detail.  The first one involves a young man by the name of

3  David Nassor, N-A-S-S-O-R, and he is not named in the

4  indictment, but from what I have seen in discovery and from

5  what Mr. Dominguez has discussed with me, he appears to be an

6  individual that is involved -- at least peripherally -- in this

7  case.

8          I know that Mr. Dominguez does not have the statutory

9  obligation to tell me if he is going to be a witness in this

10 case, but one of the purposes of this pretrial discussion is if

11 he is not going to be a witness, then Mr. Murphy and I want the

12 Court's permission to actually order him to be, minimally, a

13 Court's witness for us.  As I understand it, he is

14 incarcerated.

15         THE COURT:  To be what, Mr. Graeff?

16         MR. GRAEFF:  Pardon me?

17         THE COURT:  I didn't catch what your last sentence

18 was.

19         MR. GRAEFF:  As I understand it, Mr. Nassor is

20 incarcerated.

21         The second part of the Nassor issue is that on

22 August 8th of several years ago, he sustained a serious

23 accident, resulting in significant head injuries.  If this

24 indeed is true, then, obviously, it will affect this young

25 man's credibility.  And for that reason, we filed a pretrial

1    motion to request his medical records from the hospitals that

2    we have located.  That was responded by Mr. Dominguez by saying

3    that he is not under the discovery rules obligated to give us

4    that.

5            The second major issue are letters in discovery, the

6    primary ones we received from Mr. Dominguez on August 29th of

7    this year.  They are a series of letters authored by my client,

8    and they have been sent to various law enforcement officials

9    and so forth.  Most of them focus on negotiations under

10   Evidence Rule 410, which deals with, again, plea negotiations,

11   and as a result are inadmissible in a court of law.  That is

12   the second major issue.

13           The third issue is kind of an issue that Mr. Murphy

14   and I have spent a number of hours discussing and that has to

15   do with what we called the burglary guidelines.  As I

16   understand it, although I am not privy to the Presentence

17   Report of one of the codefendants, Mr. Morgan, we believe that

18   the guidelines that were used in Mr. Morgan's PSR were what we

19   call actual loss guidelines.

20           We believe that the proper criteria to use for this

21   particular case are the burglary guidelines under Section

22   2B2.1.  And I'll discuss that later on, but I have found a

23   Sixth Circuit case which is right on point.

24           The last issue, and just as important, has to do with

25   Counts 2 and 3 of the indictment.  They, basically, involve the

1   same conduct, Your Honor, except in Count 2, they are saying

2   that Mr. Murphy caused another individual to travel in

3   interstate commerce with the intent to commit an unlawful act;

4   namely, the theft of money.  The third count deals with the

5   identical set of conduct except they have included the other

6   codefendants in the series of events.

7        We filed a motion to dismiss those counts under rule

8   12(b)(6) because we believe that they don't state a federal

9   offense.  Mr. Dominguez responded by citing a Seventh Circuit

10  case, United States v. Baker, and we have read the case, and we

11  believe that -- and as an officer of this Court, I believe

12  that -- we are not creating excessive paper by filing a motion

13  to reconsider Counts 2 and 3.

14       Mr. Murphy has an unusual handle on this.  He has the

15  ability to articulate this, quite frankly, better than me.  And

16  so, towards the end of my discussion, with the Court's

17  permission, after I give my spiel to set the table, I would

18  like, again, with the Court's deference, to ask Mr. Murphy to

19  articulate it in a better fashion than I can.

20       But I would like to get back to count -- the first

21  point on the agenda, which is this David Nassor issue.  And if

22  Mr. Dominguez could speak to that and let us know, if indeed,

23  he is going to be a witness here, that would avoid us asking

24  you to file a writ of habeas corpus to get him back here in

25  time for the October 17th trial.

1          MR. DOMINGUEZ:  Your Honor, Mr. Nassor will be

2    available for trial.

3          MR. GRAEFF:  So, I take it from your response that he

4    will be here?

5          MR. DOMINGUEZ:  That is correct.

6          MR. GRAEFF:  Thank you.  The other part of the issue,

7    Your Honor, is the medical records that resulted in his

8    hospitalization in an east coast hospital where he sustained

9    his head injury.  Mr. Dominguez is correct in that he does not

10   have to give me those records, but under Criminal Rule 17,

11   which is our subpoena rule, under a subheading of it, if I

12   request that of you and state the reasons, then you have the

13   obligation -- I'm sorry -- you have the discretion in ordering

14   that hospital or series of hospitals to give those records to

15   me and Mr. Murphy.

16          The reason behind it, Your Honor, is because of the

17   privacy act and because of obvious personal data that would be

18   shown.  But, again, I would state as an officer of this court,

19   if Mr. Murphy(sic, Mr. Nassor) did sustain a head injury --

20   obviously, sometimes, I feel like I have sustained a head

21   injury sometimes when I discuss things -- but if

22   Mr. Murphy(sic, Mr. Nassor) has sustained a head injury -- I

23   think it is proper that in the interests of this court

24   proceeding and trial, that we be given the medical records.

25          So, we will file a motion with respect to that, Your

1  Honor.

2       THE COURT:  All right.

3       MR. GRAEFF:  Now, the letters that we obtained

4  primarily from the August 29th batch of discovery, as I

5  mentioned at the start of my spiel, are authored mostly by

6  Mr. Murphy, and they are a series of letters that --

7       THE COURT:  Why don't we do this, Mr. Graeff, let's

8  give Mr. Dominguez an opportunity to respond as you present the

9  issues.  Is that all right with you, Mr. Dominguez?

10      MR. DOMINGUEZ:  I am fine.  Whatever the Court would

11  like to do.

12      THE COURT:  Would you rather that we listen to all of

13  this and then you start in?

14      MR. DOMINGUEZ:  Your Honor, I am prepared either way.

15  I have already responded to his first issue with respect to

16  Mr. Nassor's availability.  I have represented to Mr. Graeff

17  and now Mr. Murphy and this Court that he will be here for this

18  trial.

19      Secondly, I want the record to be clear because --

20  and I know that Mr. Graeff did not mean this -- he said the

21  government is not obligated to give those records.  I don't

22  want the record to suggest -- I do not have those records at

23  all.  So, I want that to be clear on this record.

24      MR. GRAEFF:  I agree.

25      THE COURT:  Do you know what is in those records?

1          MR. DOMINGUEZ:  I have no idea, Judge.  Candidly,

2    Mr. Murphy may know better than any of us because Mr. Nassor

3    and he are close, and obviously, he knew the time frame within

4    which he had this injury.  I do not object if the Court were to

5    issue an order.  I am not trying to prevent Mr. Graeff or

6    Mr. Murphy from having access to these records.

7          Obviously, what Mr. Nassor did at Mr. Murphy's behest

8    allegedly occurred sometime after Mr. Nassor suffered this head

9    injury.  So, the nature of my response was that we do not have

10   access to those records, nor do we have through HIPAA the

11   ability to actually obtain those records without Mr. Nassor's

12   consent.

13         With respect to the letters authored by Mr. Murphy, I

14   don't know if Mr. Graeff was finished with his statement

15   regarding that?

16         MR. GRAEFF:  No.

17         MR. DOMINGUEZ:  Okay.

18         THE COURT:  Mr. Graeff, before we leave this subject,

19   unless you are going to be commenting on the Nassor matter, do

20   you or your client know whether Mr. Nassor will give his

21   consent?

22         MR. GRAEFF:  Mr. Murphy, do you want to stand up and

23   speak to what you just told me?

24         THE DEFENDANT:  Your Honor, I believe that if the

25   Court subpoenas the records and holds them under seal, when

1   Mr. Nassor gets here prior to trial, I believe the Court can

2   question him, and I believe he'll probably release them because

3   we did the same thing in the Massachusetts case.  We subpoenaed

4   his records, they were held under seal, and then when

5   Mr. Nassor was going to become available, he was going to give

6   us permission to get access to them.

7              THE COURT:  Okay.  Thank you.

8              MR. DOMINGUEZ:  May I have a moment, Your Honor?

9              THE COURT:  Yes.

10                         - - -

11             (There was a discussion between counsel.)

12                         - - -

13             MR. GRAEFF:  Your Honor, we can resolve that.

14             THE COURT:  Okay.

15             MR. GRAEFF:  I'd like to get back to the letters for

16  a couple of seconds, so that Mr. Dominguez can respond.

17             We filed a motion in limine, and after I filed it,

18  Mr. Dominguez called me and stated with respect to the letters,

19  which are Part 3 and Part 4 of the motion in limine, he

20  suggested that we get together and try to figure out which

21  letters he is not going to introduce and which letters he wants

22  to introduce, if I am making myself clear?  There is a whole

23  bunch of letters.  So, we can do that.

24             THE COURT:  Well, excuse me.  Are these letters that

25  preceded the incident?

1    MR. GRAEFF:  No, sir.  Most of them -- the incident

2    occurred on January 17th of 2009, and the lion's share of these

3    letters have been authored afterwards.

4            THE COURT:  Okay.

5            MR. GRAEFF:  But I want to -- what we are trying to

6    do is cut down on the Court's time because, as you well know in

7    a motion in limine, it is a conditional motion.  And when

8    Mr. Dominguez is going to introduce a letter, if he does, then

9    I have got to get up and object, and we will have a sidebar

10   conference.  So, what we are trying to do is limit that, so

11   that we aren't here until Christmas during this trial.

12           So, what I planned to do after this pretrial

13   conference is, hopefully, get with Mr. Dominguez and try to

14   work it out, but I can almost guarantee you that there will be

15   some that we will not be agreeable upon.  So, what we will try

16   to do is accommodate the Court by indicating to your court

17   personnel the letters that we are not going to agree upon, if I

18   am making myself clear?

19           THE COURT:  All right.

20           MR. GRAEFF:  Okay.  Go ahead.

21           MR. DOMINGUEZ:  Your Honor, and I want to make clear

22   to the Court that is the reason why the government has not yet

23   responded to Mr. Graeff on behalf of Mr. Murphy's motion in

24   limine.  One prong of his request to hold those matters in

25   limine was the assertion that those letters are somehow in

1    furtherance of plea negotiations or a proffer.  And second, it

2    was rather broad, that some of the letters were otherwise

3    prejudicial.

4            And as I told Mr. Graeff, that's a pretty broad term,

5    so why don't we sit down and figure out which ones I actually

6    want to use, and then we can bring those before the Court, if

7    we can't reach some type of an agreement as to those letters.

8            THE COURT:  Thank you.

9            MR. GRAEFF:  The third point of this agenda, Your

10   Honor, deals with the burglary guidelines.  Under Section

11   2B2.1.  Mr. Murphy and I have had a great deal of discussion on

12   this and the point of contention -- and also Mr. Dominguez and

13   I have -- and the point of contention is that Mr. Dominguez is

14   saying that the applicable guideline is actual loss under

15   another guideline.  What we have been saying is the applicable

16   guideline is Section 2B2.1.

17           I found a case from the Sixth Circuit, and it is

18   called the United States v. Couch, C-O-U-C-H, 65 F.3d 542,

19   where in that case, briefly, Your Honor, the district court

20   judge in Tennessee applied the burglary guidelines involving a

21   theft, involving a series of thefts.

22           Real quickly, Mr. Couch was involved with other

23   individuals in a Tennessee National Forest, and they were

24   stealing property from cars.  The district court stated in

25   clear and unequivocal terms that the burglary guidelines

1  applied.  It gets reversed by the Sixth Circuit but for other

2  reasons.

3         The point is that the Sixth Circuit has stated that

4  you have almost unbridled discretion to determine whether the

5  burglary guidelines apply or the theft guidelines apply.  And

6  this case is, basically, a Hallmark case that reflects what I

7  have been trying to say.

8         This is extremely important, and it is my belief that

9  if I am given the opportunity to hold some sort of a

10  pre-determination conference with the Probation Officer, with

11  Mr. Dominguez present, that this will go a long way in

12  determining the ultimate outcome of my case.

13         I am not saying this just to puff.  I am saying it

14  because I truly believe that the burglary guidelines are the

15  guidelines that should be used in this case.  On January 17th

16  of 2009, the allegation here is someone broke into the Brink's

17  warehouse.  It is that clear, it is a breaking and entering,

18  and the reason for the burglary guidelines to fit perfectly

19  within this series of events.

20         MR. DOMINGUEZ:  Your Honor, I have not had the

21  benefit of reviewing Couch.  I will review it.  I strongly

22  disagree with Mr. Graeff's and Mr. Murphy's analysis in that

23  regard.  And I will first point to the sentencing guidelines

24  themselves, which references 18 United States Code, 2314, which

25  is the interstate transportation of stolen property charge in

1    this case.  And it refers directly to Section 2B1.1 and 2B1.5

2    under the sentencing guidelines.  And as a matter of fact,

3    under the Commentary provisions, the statutory provisions cited

4    in there also reflects 18 United States Code, Sections 2312 to

5    2317.

6           The allegation of this case, Your Honor, is not the

7    mere breaking in of Brink's warehouse in Columbus, Ohio on

8    January 17th and 18th of 2009.  The allegation here is

9    Mr. Murphy along with two others traveled in interstate

10   commerce, using a van line and using a sedan, to travel to

11   Pennsylvania to get tools that had previously been placed there

12   by Mr. Murphy and then go to Columbus, Ohio for the express

13   purpose of breaking into the Brink's warehouse facility on

14   Essex Road and then taking the goods, the chattel, if you will,

15   that they obtained in interstate commerce, first to

16   Pennsylvania and then to Boston, Massachusetts.

17          It is a clear case of interstate transportation of

18   stolen property, which is the allegation returned by the Grand

19   Jury in this case.  Therefore, we feel strongly that Section

20   2B1.1 of the sentencing guidelines would be the applicable

21   guideline.  However, that is, in fact, a sentencing issue, and

22   we would take that up, of course, if, in fact, Mr. Murphy is

23   convicted by a jury here in Columbus.

24          MR. GRAEFF:  May I respond just briefly to that, Your

25   Honor?  I don't want to turn this into a Sixth Circuit oral

1   argument, but first of all --

2            THE COURT:  It is a rather important issue.

3            MR. GRAEFF:  Pardon me?

4            THE COURT:  It is a rather important issue.

5            MR. GRAEFF:  It is a very important issue.  And in

6   the 39 years I have been doing this kind of work, I don't think

7   I have ever asked for some sort of predetermination hearing to

8   determine whether the burglary guidelines apply or the actual

9   loss guidelines apply.

10           Agent Trombitas, who spearheaded this investigation,

11  in his discovery that I received weeks and weeks ago, stated at

12  the top right, and so did Agent Costello, an FBI agent, that a

13  burglary occurred.  If Mr. Dominguez is so concerned over the

14  fact that actual loss is the applicable guideline, then he has

15  to discuss that with his own agents.

16           The next issue is the last one on the list, and that

17  is Counts 2 and 3 of the indictment.  And that is what we call

18  the travel count where the individual supposedly traveled in

19  interstate commerce with the intent to commit an unlawful act,

20  in this case, the theft of money.

21           We believe that the logic that is used to get to this

22  offense is circular and what Mr. Murphy and I have called

23  "hopscotch".  And with the Court's permission, I would like

24  Mr. Murphy to explain the reasons why these two offenses are

25  not federal offenses.

1    THE COURT:  Well, before we do that, give me a chance

2    to read them.

3         Well, Mr. Murphy, I understand that you have a

4    comment on this?

5         THE DEFENDANT:  Yes, Your Honor.  In regards to the

6    1952 indictments, Your Honor, there are two of them, if you

7    listen to the government's argument in regards to why these

8    1952s apply, they are basically saying that every 2314 that's

9    ever filed has an automatic 1952 attached to it.  That's what

10   they are saying.

11        THE COURT:  Wait a minute.  What is the 1952?

12        THE DEFENDANT:  The 1952 is the interstate

13   transportation in aid of racketeering of an unlawful activity.

14        THE COURT:  Okay.

15        THE DEFENDANT:  That's what is at issue here, Your

16   Honor, Counts 2 and 3, the two 1952s.

17        THE COURT:  Okay.

18        THE DEFENDANT:  That's the first point we would like

19   to make.  Under the government's argument, they are basically

20   saying that every 2314 has an automatic 1952 attached to it,

21   and I don't believe that was Congress's intent to do that.

22        And to go along with that argument, before I get to

23   the next argument, if Congress wanted 1961 to be a listed

24   offense in 1952, they would have stated that, but they didn't.

25   And under 1952, they authorize a list of crimes and 1956 and

1    1957.

2            What the government did, they went to 1956, which

3    referred to 1961, and then went down and say, now, we are doing

4    this.  That's why Mr. Graeff said, you know, they are playing

5    "hopscotch".  They went to 1952 first and then to 1956, which

6    refers to 1961, and therefore, we have an offense.  But 1961

7    wasn't listed under 1952, and I don't believe it was Congress's

8    intent to do that.

9            And finally, Your Honor, my last argument is it is

10   duplicitous.  1952 was interstate transportation in aid of

11   racketeering, and the government is saying that the unlawful

12   activity is 2314.  And even though the government named it as

13   theft of money and merchandise, 2314 is interstate

14   transportation.  That's what the statute is.  The government

15   just said that earlier in his argument, 2314 is interstate

16   transportation.  So, the government is basically saying that it

17   is interstate transportation in aid of interstate

18   transportation.  And that's duplicitous.  I just don't see the

19   logic in their argument.

20           THE COURT:  Okay.  I would assume -- unless you got

21   it off the top of your head -- the commentary on that or the

22   argument on that, that's the subject of, you know, a future

23   brief.

24           MR. DOMINGUEZ:  If you would like, Your Honor, but we

25   feel comfortable with both counts as charged.  If you look 18

1    United States Code, Section 1952, it does specify unlawful

2    activity, and then it cross-references 1956 and 1957, the money

3    laundering statutes, which actually indicate what is specified

4    unlawful activity and what constitutes a racketeering

5    enterprise, and then it cross-references 1961.

6           In addition to the interstate transportation of

7    stolen property as being a specified unlawful activity, it

8    lists a whole litany of crimes that --

9           THE COURT:  It spells it out?

10          MR. DOMINGUEZ:  Spells it out.  Even prostitution,

11   which in and of itself is not a federal offense, but under

12   these guidelines, under these statutes, the interstate

13   transportation or the interstate travel in order to further

14   that activity.  So, Congress is actually capturing the

15   traveling in interstate commerce in order to further this

16   activity.  In other words, if they not had achieved their goal,

17   if they could not make the heist, the traveling in interstate

18   commerce to commit that crime still would be punishable under

19   18 United States Code, Section 1952.  That's what's being

20   penalized by Congress by way of those statutes.

21          And we are comfortable with the Court's ruling with

22   respect to Counts 2 and 3, and we are comfortable arguing that

23   before the Sixth Circuit, Your Honor.

24          THE COURT:  All right.  That, of course, has been

25   ruled on by the Court, but if there are further arguments on

1    that, you may certainly submit them, Mr. Graeff.

2            We have other issues to discuss that we need to get

3    to.  Is there anything else?

4            MR. GRAEFF:  No, sir.

5            THE COURT:  That's your four?

6            MR. GRAEFF:  Not at the present, no, sir.

7            THE COURT:  Okay.  This case is set for trial Monday,

8    October 17th with the final pretrial scheduled for Wednesday,

9    October 5th, and voir dire on Wednesday, October 12th.  Is

10   there any problem with any of that?

11           MR. GRAEFF:  No, sir.

12           THE COURT:  Mr. Dominguez?

13           MR. DOMINGUEZ:  I may have another commitment, Your

14   Honor, and if the Court is able, I would respectfully request

15   that we move the voir dire to either Thursday or Friday of that

16   week, but we can certainly be here if the Court is set on

17   October 12th.

18           MR. GRAEFF:  I have no problem with moving the voir

19   dire if Mr. Dominguez has to be elsewhere.

20           THE COURT:  Well, I don't have a problem either.  We

21   will move it to Thursday.

22           MR. DOMINGUEZ:  Thank you, Your Honor.

23           THE COURT:  If we don't have time on Thursday, we

24   will move it over to Friday, if necessary.  You want to change

25   that now?

1          MR. DOMINGUEZ:  That would be fine with the

2   government, Your Honor.

3          MR. GRAEFF:  What is the 12th?

4          MR. DOMINGUEZ:  The 12th is a Wednesday.  The 13th

5   is a Thursday.

6          MR. GRAEFF:  Thursday, the 13th?  Sure.

7          THE COURT:  Now, I would like to get an idea of

8   approximately how long the trial will take.  Mr. Dominguez,

9   your case?

10          MR. DOMINGUEZ:  From the government's perspective,

11   Your Honor, and of course I cannot speculate how much

12   Mr. Graeff will do with respect to my case, but I can't see it

13   taking longer than a week.

14          MR. GRAEFF:  We anticipate, Your Honor, four to five

15   days on a defense.

16          THE COURT:  On the defense?

17          MR. GRAEFF:  Yes, sir.

18          THE COURT:  Not counting your cross-examination and

19   all of that?  Okay.

20          MR. GRAEFF:  This could easily be a two-week trial,

21   and it might spill into the third week.

22          THE COURT:  Well, let me urge you, and you are

23   already doing this cooperatively, urge you that we use the

24   motion in limine as much as possible in pretrial motions, as

25   much as possible even if we have to have more hearings in here

1  prior to that time because I don't like the jury -- anymore

2  than you do -- it wouldn't be good psychology on behalf of any

3  defendant either to have them be sitting out there two to three

4  hours every day while we go over a last minute motion for

5  something that could have been brought up before.

6          MR. GRAEFF:  Your Honor, 50 percent of my day is

7  being spent on this case.  You had the good graces to allow me

8  to have an investigator, Gary Phillips, who is doing a very

9  good job.  Mr. Dominguez has been very prompt in responding,

10  and I will represent to you that we are doing everything

11  possible to do the right thing as far as allowing the trial to

12  proceed and not any collateral side issues.

13          THE COURT:  All right.  Thank you.  So, to summarize

14  that, all legal issues must be raised in advance of trial by

15  written motion, and the Court will not consider issues raised

16  during the trial unless counsel shows that the matter could not

17  have been raised sooner.  And that includes any issues that may

18  have been touched on here today.  If the defendant does not

19  believe any issue was adequately addressed, please raise that

20  issue in a written motion and be sure to include the legal

21  support for any such argument prior to the trial.

22          Mr. Murphy is nodding "yes".

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Be thinking of what types of exhibits

25  that you will be presenting, such as a video that would require

1    equipment.

2            MR. GRAEFF:  We have a large exhibit list, and I am

3    in the process of obtaining an easel, which will be used to

4    assist us in our defense.

5            THE COURT:  An easel?

6            MR. GRAEFF:  An easel like in art, a support type of

7    thing?

8            THE DEFENDANT:  Your Honor, an easel is one of them

9    three-legged things where you put the thing up, or you can fold

10   it.

11           THE COURT:  Oh, an easel.  We have one of those.

12           MR. GRAEFF:  What did I say?  A weasel?

13           COURTROOM DEPUTY CLERK:  Mr. Graeff, the Court has

14   that.

15           THE COURT:  We have that around here.

16           MR. GRAEFF:  Oh, really?  Okay.  Super.

17           THE COURT:  Yeah, this is important since this is a

18   21st Century courtroom here.  If you plan to use exhibits,

19   you will need to coordinate some training on our electronic

20   courtroom with Lisa Wright and John Wright.  In other words,

21   pre-train on that.

22           MR. GRAEFF:  Your Honor, I have trouble putting gas

23   in the car.

24           MR. DOMINGUEZ:  We'll do it together.

25           THE COURT:  I know your VCR is always on 12 o'clock.

1        COURTROOM DEPUTY CLERK:  We will coordinate that,

2   Your Honor.

3        THE COURT:  And, of course, this can go without

4   saying, but a stipulation can be reached between the parties.

5        And are there any additional issues that you

6   anticipate that we will need to discuss?

7        MR. GRAEFF:  There is one slight issue, and it is

8   basically that Mr. Dominguez -- that there are certain videos

9   that might possibly be introduced during the course of the

10  trial; is that correct?

11       MR. DOMINGUEZ:  Yes.

12       MR. GRAEFF:  So, they will probably be a graphic part

13  of the jury trial.  Hopefully, you know how to introduce them?

14       MR. DOMINGUEZ:  Yeah, we will be fine.

15       THE COURT:  Well, as you can see, we have 46 video

16  screens here in the courtroom, as well as my old regular

17  screen.

18       MR. GRAEFF:  There aren't really 46 videos, are

19  there?

20       MR. DOMINGUEZ:  He means the screens.  The screens,

21  it is all good.

22       MR. GRAEFF:  Your Honor, I would like to thank you

23  for your time today.

24       MR. DOMINGUEZ:  May I address one matter?  I will

25  move orally at this time to know if there is any alibi defense

1  from the defense?

2        MR. GRAEFF:  You have to do that by written motion,

3  as I understand the rule.

4        MR. DOMINGUEZ:  We can do that as well, but I wanted

5  to put it on the record.

6        MR. GRAEFF:  You better do it by a written statement.

7        MR. DOMINGUEZ:  Thank you, Your Honor.

8        THE COURT:  Okay.  Stephanie has the predetermination

9  material, and you may remain in the courtroom.  You may need a

10  break.  Mr. Murphy, do you need a break?

11        THE DEFENDANT:  No, Your Honor, I am fine.

12        THE COURT:  Mr. Graeff?

13        MR. GRAEFF:  No, sir.

14        MR. DOMINGUEZ:  Thank you, Your Honor.

15        COURTROOM DEPUTY CLERK:  Ladies and gentlemen, please

16  rise.  This hearing is adjourned, and court stands adjourned.

17                                - - -

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2    United States of America

3    Southern District of Ohio

4             I, Georgina L. Wells, Official Court Reporter of the

5    United States District Court for the Southern District of Ohio,

6    do hereby certify that the foregoing 23 pages constitute a true

7    and correct transcription of my stenographic notes taken of the

8    said requested proceedings, held in the City of Columbus, Ohio,

9    in the matter therein stated on the 14th day of September,

10   2011.

11            In testimony whereof, I hereunto set my hand on the

12   19th day of September, 2011.

13

14

15

16

17

18                              /sa/Georgina L. Wells

19                              _____

20                              Georgina L. Wells, RMR
                                Official Court Reporter
21                              Southern District of Ohio

22

23

24

25