**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

       vs.                                 :      CASE NO. 2:11-CR-10(1)
                                           JUDGE SMITH

SEAN D. MURPHY

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM FILED ON JUNE 21, 2013

    Now comes the United States, by its counsel, Assistant United States Attorneys Salvador A. Dominguez and Heather A. Hill, and by way of the following memorandum, we respond to Defendant Murphy's sentencing memorandum.

                                          Respectfully submitted,

                                          CARTER M. STEWART
                                          United States Attorney

                                          s/Salvador A. Dominguez
                                          SALVADOR A. DOMINGUEZ (0056232)

                                          s/Heather A. Hill
                                          HEATHER A. HILL (6291633)
                                          Assistant United States Attorneys
                                          303 Marconi Boulevard, Suite 200
                                          Columbus, Ohio 43215
                                          (614) 469-5715
                                          Fax: (614) 469-5653
                                          Sal.Dominguez @usdoj.gov
                                          Heather.Hill @usdoj.gov

**MEMORANDUM**

**Sentencing Disparity**

Defendant Murphy (hereinafter Murphy) argues that the 15 year sentence recommended by the probation officer in the PreSentence Investigation Report (PSR) would result in a sentencing disparity when that sentence is considered in comparison to the sentences imposed upon his co-defendants, Joseph Morgan and Robert Doucette. We note that the applicable advisory sentencing guideline range is 324 to 405 months based on a total offense level 36 and a criminal history category VI. (PSR para. 114.) Neither Morgan nor Doucette had a comparable sentencing guideline range.[1]

First, Murphy is requesting that this Court give him jail credit from January 23, 2009 to present. The rationale advanced for this request is flawed. Murphy was arrested on January 23, 2009, for his involvement in the burglary of a business located in Massachusetts.

---

[1] Morgan's final advisory sentencing guideline, as determined by this Court, was 46 to 57 months based an offense level 21, criminal history category III. Doucette's final advisory sentencing guideline range, as determined by this Court, was 37 to 46 months based on an offense level 21, criminal history category I.

His arrest was unrelated to anything involving the January 18-19, 2009 burglary of the Columbus, Ohio Brinks facility and resulting interstate transportation of stolen property. As a matter of fact, at the time of his arrest on January 23, 2009, law enforcement officials in both Ohio and Massachusetts were unaware that Murphy had any involvement in the burglary of the Columbus Brinks facility. Moreover, the United States had absolutely no control over the Murphy's bond and the status of his detention imposed upon him in the Commonwealth of Massachusetts. The fact that he was detained pending disposition of the case in Massachusetts should therefore not have any affect upon the sentence imposed by this Court. His bond status in the Massachusetts case does not present any issue of disparity with respect to his co-defendants in the case at bar.

Murphy further complains that based on the actions of the federal government, he was unable to obtain bail in his Massachusetts case. He alleges that if the government had waited until he was sentenced in his Massachusetts case, then his federal prison time would have started at a later date. Such a statement is contrary to the request that Murphy himself made in letters he forwarded to an undersigned Assistant United

States Attorney demanding that he be indicted and that he appear before this Court to respond to potential federal charges.[2]

Murphy also alleges that he was somehow prejudiced by the alleged pre-indictment delay in this matter. The evidence presented at trial revealed that the investigation of this crime involved activity in five different states, the seizure and obtaining of numerous items of evidence and the interview of numerous witnesses. The manner in which the crime was carried out made this a complex case which required the exhaustion of a great deal of investigative resources to proceed to trial. For instance, David Nassor, a critical witness in this case, did not testify before the grand jury until January 6, 2011, just two weeks prior to the indictment being returned in this matter. Additionally, the investigation involved the government's receipt of extensive evidence through international channels.

Murphy's federal case was indicted well in advance of the statute of limitations. The fact that the government was able to obtain an indictment within a two-year time frame could frankly be considered commendable given the complexity of the

---

[2] See Exhibits 1 and 2 attached to Murphy's sentencing memorandum filed prior to his first sentencing hearing. Indeed, Murphy argues that the government somehow prejudiced his interests by indicting him and ordering him to the Southern District of Ohio to respond to these charges. Surprisingly, elsewhere in his sentencing memorandum, he alleges pre-indictment delay.

case.  Murphy has not proffered any basis to allege that the government in any way unduly delayed its pursuit of an indictment in this case.

Murphy further argues that since he is awaiting trial for his participation in the June 2008 E.A. Dion burglary in Massachusetts, that he should somehow receive some credit on his federal sentence for the term of pre-trial detention he has served while awaiting the disposition of his Massachusetts case. He makes this argument under the guise of "relevant conduct" since the E.A. Dion burglary was allegedly committed in the same manner as the Brinks burglary.  The E.A. Dion case, in fact, had absolutely nothing to do with the Brinks burglary case in Columbus, Ohio, and neither the government nor the probation office has ever referenced the E.A. Dion burglary as relevant conduct in the case at bar.  This Court is certainly not required to grant Murphy any credit for his term of pretrial detention imposed in the Commonwealth of Massachusetts.

## Downward Departure

Murphy alleges that he should be afforded a downward departure for his "assistance" to the FBI in Massachusetts by creating a training video and that he cooperated and provided

5

information on others who may have committed federal or local crimes.  The fact of the matter is that Murphy proceeded to trial and forced the government to exhaust numerous economic resources to achieve a successful result at trial.  Murphy has never accepted responsibility for his own offense conduct which led to his conviction.  He served as his own counsel during the course of the trial.  During the trial, Murphy in both his cross-examination of witnesses, and in his closing argument, suggested that he was never involved in the burglary and the resulting transportation of the stolen money and merchandise.  Rather, he wanted the jury to believe that he had otherwise taught Doucette and Morgan how to commit such a burglary based on his "Master Thief: How to be a Professional Burglar" manifesto.

Murphy further attempted to convince the jury that there was a storage facility located somewhere in Ohio, separate and distinct from the storage facility that he and his co-conspirators used in Pennsylvania, which Doucette and Morgan allegedly used to assist in the interstate transportation of stolen property.  Additionally, during the course of his closing argument, Murphy attempted to tell the jury "what really happened" but was prevented from so doing without actually

testifying at trial. Murphy further argued that the government never placed him in the State of Ohio. Throughout the trial he clearly attempted to refute his involvement in this criminal activity. All of these theories were, of course, inconsistent with the information Murphy himself provided to government officials during his proffer in May of 2010.

When a defendant proceeds to trial and denies the essential factual elements of his guilt, he is not entitled to a reduction for acceptance of responsibility. *United States v. Forrest*, 402 F.3d 678, 688 (6th Cir. 2005). Indeed, a defendant who presents a claim of actual innocence and attempts to implicate others who had "set him up," is not entitled to a reduction for acceptance of responsibility. *United States v. Farrelly*, 389 F.3d 649, 656-657 (6th Cir. 2004). *See also United States v. Angel*, 355 F.3d 462, 477 (6th Cir. 2004).

Since Murphy is not entitled to the benefit of an acceptance of responsibility reduction, he certainly is not entitled to a downward departure under the federal sentencing guidelines or under any other theory. The government believes that this Court should deny any consideration to Murphy for any alleged cooperation he provided to the United States.

Prior to the trial of this case, and in recognition of Murphy's <u>attempt</u> to assist law enforcement authorities, the United States offered Murphy a very reasonable offer of a binding sentence pursuant to Rule 11(c)(1)(C), in order to resolve this matter. The government reiterated its willingness to resolve the case in this manner the day before the trial was to commence. Murphy, who was well aware of the provisions under U.S.S.G. §5G1.2(d) and the requirement that this Court impose consecutive sentences on his counts of conviction, flatly rejected the government's offer.

While the probation officer has now recommended a sentence of 15 years in prison given Murphy's extensive criminal history and his ultimate offense level, the United States' offer would have permitted Murphy to plead guilty to Count 4 of the Indictment, which would have capped his sentencing exposure at the statutory maximum of 10 years. This plea offer further provided for a sentence more than a year less than the statutory maximum 10 years applicable to Count 4. Murphy rejected that reasonable plea agreement offer and chose instead to proceed to trial, refusing to accept responsibility for his actions. His present argument for a downward departure is thus without merit.

Murphy further argues that he should be granted a sentence reduction because of Brinks was able to recoup the money returned by co-defendant Doucette. This money was not returned by Murphy. Murphy should receive no reduction on this basis.

**Co-defendants' Sentences**

Murphy continues to request that this Court sentence him based, in part, on the sentences imposed upon co-defendants Joseph Morgan and Robert Doucette in this case. Unlike Murphy, who flatly rejected the government's plea offer for a very reasonable sentence pursuant to a binding plea agreement, defendants Morgan and Doucette chose to accept plea agreements which reflected the same loss figure as the plea agreement offered to Murphy. Additionally, both Morgan and Doucette had criminal history backgrounds which reflected far less exposure to the criminal justice system when compared to Murphy. The three are simply not similarly situated.

Defendant Morgan received the benefit of acceptance of responsibility which was reflected in his ultimate sentence. Defendant Doucette likewise received the benefit of acceptance of responsibly plus some additional consideration based on his level of cooperation with the United States. Moreover, Murphy

9

having been convicted at trial on Counts 1 and 4, subjects him to the recommended sentence of 15 years. Based on the government's ultimate dismissal of Counts 2 and 3, Murphy has received the benefit of a five year reduction in the sentence previously imposed by this Court. Moreover, his Criminal History Category VI merely adds to his ultimate exposure. Simply stated, Murphy's background is quite a bit different than the backgrounds of defendants Morgan and Doucette.

**Family Background**

In his memorandum, Murphy discusses his difficult personal background[3] and a general lack of positive supervisory guidance during his childhood years as having a significant negative impact upon him. The government recognizes that the Court, pursuant to 18 U.S.C. § 3553(a), should consider the relevant history and characteristics of the defendant when determining an appropriate sentence, and that verifiable family background matters may be part of the defendant's history and characteristics. The government would note, however, that U.S.S.G. § 5H1.12, specifically indicates that "[l]ack of guidance as a youth and similar circumstances indicating a

---

[3] Murphy essentially "testified" as to some of these matters during his closing argument at trial.

disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted."

The cases that Murphy has cited in urging the Court to consider his disadvantaged youth, are factually dissimilar to Murphy's circumstances. In both *United States v. Swift,* 2008 WL 2906884 (ND Ind. 2008) and *United States v. Lopez*, 938 F.2d 1293 (D.C. Cir. 1991), the defendants were youthful offenders who had not been involved in the criminal justice system for decades. The government submits that the lack of youthful guidance is a more compelling consideration in the instance of a youthful offender whose criminal transgressions may be seen as a result of naively following the negative elements that surrounded him in his life. Murphy, on the other hand, has had decades of involvement in the criminal justice system. He has undoubtedly been given opportunities to engage in rehabilitative programs to understand the negative ramifications of his continued involvement in criminal activity. That Murphy has persisted in his criminal lifestyle from his youth and throughout his adulthood (and become a master of the crime of professional burglary), the government submits is a weightier personal history characteristic of the defendant than the alleged lack of guidance he received thirty years ago.

**Collateral Consequences**

Murphy suggests that that this Court should consider a reduction in his sentence based on his lost business and other collateral consequences resulting from his arrest and the execution of search warrants. The state search warrants executed in January of 2009 were based on the Massachusetts authorities' investigation of the E.A. Dion burglary that occurred in Massachusetts. Murphy was not a suspect in the Brinks burglary in Ohio when those warrants were executed. Nevertheless, Murphy certainly cannot argue that his sentence should be reduced based on his alleged business losses which he caused due to his desire to burglarize and damage legitimate businesses in Massachusetts and Ohio.

**Insufficient Investigation**

Murphy alleges that the FBI failed to investigate or interview James Hennessey who assisted Doucette to move money and tools from a storage facility in New Hampshire several months <u>after</u> the Brinks burglary. He suggests that such an interview may have uncovered evidence favorable to Murphy. This suggestion is flawed. First, Murphy was incarcerated on the E.A. Dion charges when Hennessey provided such assistance. Second, and

12

more important, Murphy's proffer relative to the Brinks' burglary <u>fully corroborated</u> information provided by Doucette as to the method and means of carrying out the Brinks burglary and each co-conspirator's role.  Murphy's, through his own proffer, placed himself in Ohio and in the Brinks facility.

## Murphy as a Security Risk

Murphy suggests that this Court should provide a sentencing reduction as he speculates that the BOP may treat him differently as the Marshal has suggested that he may be a security risk. Such rank speculation does not support a reduction in Murphy's sentence.  Indeed, the Marshal's Service would be derelict in the performance of its duties if it did not note, with a degree of suspicion, an inmate's reference to certain security "flaws" within the federal courthouse facility.  Murphy's criminal history suggests that his movement should be viewed with a greater degree of caution than the movement of other prisoners. Murphy has not, however, presented anything suggesting that he has been subjected to any harsher treatment than others with similar backgrounds.

**Resentencing Options**

Murphy suggests that this Court must give him the exact same consideration upon his re-sentencing that was extended at his initial sentencing hearing. At his initial sentencing hearing, Murphy faced a sentencing guideline range of 324 to 405 months based on an offense level 36 with a corresponding criminal history category VI. (PSR para. 114.) Based on objections sustained on Murphy's behalf, this Court reduced his offense level to an offense level 34 which subjected Murphy to a 262 to 327 month sentencing range. The Court ultimately imposed a 240 month sentence. In imposing that sentence, the Court advised that the only way to keep Murphy from committing more crimes was to impose "a lengthy period of incarceration."

When re-sentencing a defendant upon remand, this Court is permitted to revisit the entire sentencing procedure unless restricted by the remand order. *United States v. Rodgers*, 278 F.3d 599, 602 (6th Cir. 2002). Indeed, the original "sentencing package" may be re-visited by this Court. As the Court of Appeals for the Tenth Circuit stated in *United States v. Hicks*, 146 F.3d 1198, 1202 (10th Cir. 1998):

> When a defendant is convicted of more than one count of a multi-count indictment, the district court is likely to fashion a sentencing package in which sentences on

> individual counts are interdependent. When,
> on appeal, one or more counts of multi-count
> conviction are reversed and one or more
> counts are affirmed, the result is an
> 'unbundled' sentencing package. Because the
> sentences are interdependent, the reversal of
> convictions underlying some, but not all, of
> the sentence renders the sentencing package
> ineffective in carrying out the district
> court's sentencing intent as to any one of
> the sentences on the affirmed convictions.
> Thus, … [upon remand] the district court
> ha[s] the authority to reevaluate the
> sentencing package ... and resentence the
> defendant to effectuate the original
> sentencing intent.

Indeed, this Court, in evaluating Murphy's entire sentence, believed that based on a sentencing range of 262 to 367 months, a 240 month sentence was the appropriate "sentencing package." Nothing in Murphy's sentencing memorandum mandates that this Court reduce that final applicable guideline range. Therefore, since this Court believed that a 240 month sentence was appropriate given all of the sentencing factors considered during Murphy's first sentencing hearing, then this Court may certainly impose the recommended 180 month sentence "to effectuate [its] original sentencing intent."

WHEREFORE, the United States respectfully requests that this Court consider the matters contained herein in arriving at an appropriate sentence in this case.

    Respectfully submitted,

    CARTER M. STEWART
    United States Attorney

    s/Salvador A. Dominguez
    SALVADOR A. DOMINGUEZ (0056232)

    s/Heather A. Hill
    HEATHER A. HILL (6291633)
    Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum was served on this 24th day of June, 2013, electronically on W. Joseph Edwards, Esquire, 341 S. Third Street, Suite 200, Columbus, Ohio 43215, attorney for defendant Sean Murphy.

    s/Salvador A. Dominguez
    SALVADOR A. DOMINGUEZ (0056232)
    Assistant United States Attorney