IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NUMBER |
| | ) | 2:11-CR-10(1) |
| PLAINTIFF, | ) | |
| VS. | ) | COLUMBUS, OHIO |
| | ) | JUNE 26, 2013 |
| | ) | |
| SEAN MURPHY, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

**TRANSCRIPT OF RESENTENCING**
BEFORE THE HONORABLE GEORGE C. SMITH
UNITED STATES DISTRICT JUDGE

APPEARANCES OF COUNSEL:

FOR THE UNITED STATES:     SALVADOR DOMINGUEZ, AUSA

FOR THE DEFENDANT:        JOSEPH EDWARDS, ESQUIRE

GEORGINA L. WELLS, OFFICIAL FEDERAL COURT REPORTER
(614)719-3225

1          Wednesday Afternoon Session,

2          June 26, 2013.

3               - - -

4          COURTROOM DEPUTY CLERK:  The Court calls Criminal

5     Case No. CR-2-11-10, the United States of America v. Sean

6     Murphy.

7          THE COURT:  Mr. Dominguez, Mr. Edwards.

8          MR. EDWARDS:  Good afternoon, Your Honor.

9          MR. DOMINGUEZ:  Good afternoon, Your Honor.

10         THE COURT:  Good afternoon.  We are here for the

11    Resentencing of the defendant, Sean Murphy, following the Sixth

12    Circuit's decision vacating the Court's previous sentence.  The

13    Sixth Circuit dismissed Counts 2 and 3 of the Indictment

14    because the government's appellate counsel chose not to defend

15    those counts on appeal.  The Sixth Circuit affirmed with

16    respect to the remaining counts.  And accordingly, the

17    defendant is before the Court for resentencing on Counts 1 and

18    4, (conspiracy to transport merchandise and money in interstate

19    commerce and transporting merchandise and money in interstate

20    commerce) after having been convicted of those counts at trial.

21         When resentencing a defendant upon remand, this Court

22    is permitted to revisit the entire sentencing procedure unless

23    restricted by the remand order, United States v. Rodgers, a

24    Sixth Circuit case in 2002.

25         Mr. Edwards, have you and your client read and

1  discussed the revised Presentence Report prepared by the

2  U.S. Probation Office?

3          MR. EDWARDS:  Your Honor, we have, yes.

4          THE COURT:  Thank you.  And Mr. Murphy, do you recall

5  reviewing the Presentence Report with your attorney?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And do you understand everything that you

8  and your attorney have discussed regarding the Presentence

9  Report?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And Mr. Murphy, is there anything about

12  the Presentence Report that you do not understand?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Mr. Edwards, do you have any doubt as to

15  your client's understanding of the Presentence Report?

16          MR. EDWARDS:  Absolutely not, Your Honor.

17          THE COURT:  Okay.  At the initial sentencing, the

18  defendant raised some factual objections to the Presentence

19  Report such as the fact that he conducted research on the

20  internet for the burglary.  The Court considered all of

21  defendant's arguments and accepted the facts with some

22  clarifications.

23          Are there any additional factual statements reported

24  -- now, this is additional statements -- in the Presentence

25  Report that are disputed by the defendant or the government?

1    Both counsel.

2            MR. DOMINGUEZ:  Not from the government, Your Honor.

3            MR. EDWARDS:  Your Honor, not from the defense.

4            THE COURT:  All right.  I will address the sentencing

5    memos next.  This just speaks to the Presentence Report.

6            Based on the testimony presented at trial, I find

7    that all of the factual statements contained in the Presentence

8    Report are correct, and therefore, the Court adopts those

9    statements as its findings of fact.  The defendant was found

10   guilty of Counts 1 and 4 of the Indictment charging him with

11   conspiracy to transport merchandise and money in interstate

12   commerce, in violation of 18 United States Code, Section 371,

13   and transporting merchandise and money in interstate commerce,

14   in violation of 18 United States Code, Section 2314 and Section

15   2.

16           Accordingly, the defendant is adjudged guilty of

17   these charges.

18           At defendant's original sentencing, he raised six

19   objections to the Presentence Report.  Defendant has not raised

20   any new objections.  However, for the purposes of Resentencing,

21   the rulings on the previous objections apply, and the Court

22   will summarize the rulings that affect defendant's sentence.

23           The Court sustained in part defendant's objection to

24   the 24-level increase in the base level offense based upon the

25   intended loss of $92 million.  The Court recognized that there

was some doubt as to whether the defendants intended to steal

over $92 million and found that they most likely expected that

there would be approximately $50 million at the warehouse,

which was the typical amount according to James Daniels, the

Vault Supervisor with Brinks.  Therefore, the intended loss was

reduced by half to $46 million.  According to 2B1.1, the

intended loss is more than $20 million but less than

$50 million, which instructs that 22 levels should be added to

the base offense level.  Defendant's offense level was reduced

two levels to reflect this reduction.  Defendant's offense

level is now 34.  Combined with his Criminal History of VI, the

advisory guideline range is 262 to 327 months.

The Court sustained defendant's objection to being

assessed a total of seven criminal history points for three

convictions that were consolidated for sentencing purposes to

run concurrent with each other and were resolved on the same

date.  The Court agreed that the calculation was technically

correct because they were separate arrest dates, but because

the offenses were combined for purposes of sentencing, the

Court assessed three criminal history points for those

offenses.  Defendant's criminal history points were reduced by

four, resulting in a total of 13 criminal history points.

Defendant's Criminal History Category remains a VI.

The defendant has filed a sentencing memorandum

requesting a sentence below 10 years.  The Court will consider

1  these arguments as grouped by defendant in his memo, and the

2  parties may supplement when necessary.

3         As I read through these things, gentlemen, I will

4  offer you an opportunity, if you wish, if there is anything

5  that should be mentioned in addition to what you have written.

6         Sentencing Disparity Number 1.  Defendant requests

7  jail credit from January 23, 2009 when he was arrested on the

8  instant charges to the present date.  Defendant requests this

9  adjustment to his sentence for following reasons:  Sentencing

10  disparity, inability to obtain concurrent sentence,

11  pre-indictment delay and 18 United States Code, Section 3585,

12  relevant conduct.

13        When Murphy was arrested in 2009, he was taken into

14  Massachusetts State custody.  When he was indicted in this case

15  in January of 2011, he was taken into the custody of the U.S.

16  Marshals via a Writ.  Therefore, the time defendant has been in

17  the custody of the U.S. Marshal's Service via a Writ will not

18  count toward the federal sentence imposed today.  Murphy argues

19  that the imposition of the sentence recommended by the

20  Probation Officer would result in a sentencing disparity

21  because codefendant Morgan was able to post bond in a State

22  case and, therefore, receive credit for his federal sentence

23  since the time of his arrest on January 20 of 2011.

24        Murphy asserts that the government's conduct

25  precludes him from obtaining concurrent federal and State

1 sentences, despite the Assistant District Attorney in

2 Massachusetts agreeing to run his State sentence concurrent to

3 the federal sentence.  Murphy also argues that the government's

4 delay in the filing of criminal charges against him in this

5 case deprived him of the opportunity to obtain concurrent

6 sentences.

7 Finally, Murphy argues that a 36-month jail credit

8 will properly account for these sentencing disparities and that

9 this must be done in the form of a sentence adjustment, as the

10 BOP will not recognize this as a jail credit since he was in

11 State custody.

12 The government argues that Murphy was arrested in

13 2009 for his involvement in a burglary in Massachusetts and

14 that law enforcement was not aware of his involvement in the

15 Brinks burglary at the time.  Additionally, the government had

16 no control over defendant's ability to obtain bail in the State

17 case.

18 Murphy asserts that the government should have waited

19 to indict him on the federal case until he was sentenced in the

20 Massachusetts case, but then argues that there was delay in

21 indicting him in this case.

22 The government asserts that the complexity of this

23 case necessitated an extensive investigation and that there was

24 no undue delay in pursuing an Indictment in this case.

25 Anything further, Mr. Edwards, on this point?

1    MR. EDWARDS:  No, Your Honor.  Other than I note at

2   the last sentencing, that when the Court departed downward, the

3   Court did award departure to some degree for the time that

4   Mr. Murphy has spent in jail.

5        THE COURT:  That's correct.

6        MR. EDWARDS:  We would just ask the Court to again

7   follow that finding that you made during the last sentencing.

8        THE COURT:  Thank you, Mr. Edwards.

9        Mr. Dominguez, anything?

10       MR. DOMINGUEZ:  Your Honor, I think the Court has

11  accurately summarized the government's position in this matter.

12  I would note for the record in response to what Mr. Edwards

13  just stated with respect to the last sentencing hearing,

14  Mr. Murphy did face an extensive advisory sentencing guideline

15  range at an offense level 36, with the guideline range of 324

16  to 405 months.

17       However, with the Court's granting of certain

18  objections, as has been outlined on this record, his offense

19  level was effectively reduced to an offense level 34 with a 262

20  to 327-months sentencing guideline range, and the Court

21  ultimately imposed a 240-month or 20-year sentence, given the

22  parameters, frankly, of what Mr. Murphy faced at that time.

23       Obviously, the posture of this case is quite a bit

24  different at this time.

25       THE COURT:  Thank you.  The Court rules -- and

acknowledges the defendant's arguments concerning his

incarceration since January of 2009. However, the defendant's

original arrest in 2009 was unrelated to this case, and his

bond status in State court is not pertinent here. Nonetheless,

I believe defendant Murphy should receive some credit for the

time he was in the U.S. Marshal's custody via a Writ.

Therefore, I will downward depart to reflect this sentence

adjustment.

Part 2, defendant's cooperation. Defendant seeks a

reduction of his sentence based upon his cooperation with law

enforcement. Defendant asserts that he created a training

video for the FBI and provided information during several

proffer sessions. Defendant notes that the Court may consider

a downward departure under 5K2.0, even if the government does

not move for a downward departure based upon his cooperation.

Defendant also suggests that he should be entitled to

a departure because he provided information to the FBI

regarding crimes he has knowledge of and those who were

involved in those crimes.

Defendant asserts that he advised the U.S. Marshals

of at least five areas where our courthouse security could be

improved and how to do so.

Defendant argues that if the Court decides not to

reduce his sentence under 5K2, it should still consider an

objection under 3553(a) based on his cooperation. He also

1  asserts that any opposition by the government to such a

2  reduction would be without good cause.

3         The government opposes defendant's request for any

4  reduction for acceptance of responsibility and any further

5  departure for cooperation because Murphy proceeded to trial and

6  forced the government to exhaust numerous economic resources in

7  its prosecution of this case.  The government also asserts that

8  it offered Murphy a binding plea agreement, but he rejected

9  that offer.  Thus, the government does not believe any

10 departure for cooperation is warranted.

11        Anything to add to that, Mr. Edwards?

12        MR. EDWARDS:  No, Your Honor.  I would just again

13 reiterate, as we did in the sentencing memorandum, and as this

14 was brought out during the January 2012 sentencing hearing, I

15 think the Court noted this at the end of that hearing as well

16 as in your statement of reasons for sentencing, that Mr. Murphy

17 made significant attempts to cooperate.  And I think at least

18 the three situations that we are talking about would be:

19        One, the training video with his debriefings in

20 Massachusetts with the FBI;

21        The ATM skimming case that he also worked with

22 Agent Costello on;

23        And the courthouse security issue that occurred

24 during the trial of his case here in Columbus.

25        So, I think that the Court at the last sentencing

1 hearing made a finding that a departure was warranted because

2 of his attempts to cooperate, and I would ask the Court to do

3 so likewise in this Resentencing.  Thank you.

4 　　　　　THE COURT:  Thank you, Mr. Edwards.

5 　　　　　Any comments, Mr. Dominguez?

6 　　　　　MR. DOMINGUEZ:  Again, Your Honor, the Court saw fit

7 to consider every aspect of the defendant's case at the

8 January of 2012 sentencing hearing when Mr. Murphy faced a

9 maximum of 25 years in prison.  The posture is obviously

10 different now.

11 　　　　　I think I need to comment, however, for the record

12 that this case is quite a bit different in terms of the

13 government's not filing a 5K1.1 motion in this matter.  This

14 case is quite a bit different than the defendant sitting or

15 even representing himself, forcing the government to prove its

16 case against him beyond a reasonable doubt as he stood silent,

17 forcing us to do that.

18 　　　　　Mr. Murphy did, in fact, proffer to the United

19 State's government the exact manner in which he carried out

20 this Brinks burglary.  Nevertheless, at the trial of this case,

21 he attempted to perpetuate a fraud upon the Court by suggesting

22 to the jury that he was not involved at all, by suggesting to

23 the jury that Morgan and Doucette carried this out on their own

24 based on his training.  And, frankly, Your Honor, I could not

25 put pen to paper to draft such a motion when he had done that

1   during this court proceeding.

2          So, no, the government did not file a motion for a

3   downward departure, and Mr. Murphy certainly didn't cooperate

4   with the government in its case here.  Thank you, Your Honor.

5          THE COURT:  Thank you, Mr. Dominguez.

6          The Court has carefully considered the level of

7   defendant's cooperation.  And had defendant decided to take the

8   plea agreement, he would have received a reduction based upon

9   his cooperation.  However, he proceeded to trial and forced

10  both the government and this Court to exhaust numerous

11  resources in the trial.  I did not find any departure -- I do

12  not find any departure based on 5K of the guidelines is

13  warranted in this case.

14         Even so, I will consider the defendant's cooperation

15  as a part of the 3553(a) factors justifying a departure.

16         Collateral consequences is Number 3.  Defendant

17  Murphy argues that he received little or no money as a result

18  of this offense and that the collateral consequences of his

19  offense justify a departure.

20         The defendant was arrested in Massachusetts in

21  connection with the E.A. Dion jewelry heist a short time after

22  the Brinks burglary occurred.  The proceeds had not been fully

23  divided between the conspirators.  The defendant claims that he

24  actually lost money for renting the moving truck, the storage

25  bin and the car used to commit the crime.  He also claims that

1    co-defendant Doucette kept the bulk of the stolen money.

2         Defendant asserts that he lost his business as a

3    result of the arrest, that the authorities caused substantial

4    damage to his moving customers' property when they executed the

5    search warrant.  The damage apparently was not covered by

6    insurance.

7         The government asserts that it cannot calculate the

8    exact amount of money defendant personally received as a result

9    of this offense.  The government further asserts that the fact

10   that he was arrested before all of the money could be divided

11   is not a circumstance that the Court should consider for a

12   downward departure.

13        Anything on that issue, Mr. Edwards?  Anything?

14        MR. EDWARDS:  Your Honor, we would rest on the

15   arguments made at the original sentencing hearing as well as

16   the supplemental sentencing memorandum that was filed last

17   week.

18        THE COURT:  Thank you.  Mr. Dominguez?

19        MR. DOMINGUEZ:  No, thank you, Your Honor.

20        THE COURT:  The cases cited by defendant on this

21   issue are not persuasive, and the circumstances surrounding

22   this offense are distinguishable.  Although a minor participant

23   who has not received any money for his participation in an

24   offense may be entitled to a departure on this basis, that is

25   not the case here.  The defendant was the mastermind of this

elaborate heist of the Brinks facility. The fact that he was
arrested before he was able to receive the full benefit, the
proceeds of the burglary do not justify a departure. The
closing of Murphy's business was a foreseeable consequence of
him being caught on this offense.

Nonetheless, the Court will consider this in
sentencing.

Family background. The defendant argues that his
lack of guidance as a youth justifies a departure. Defendant's
mother married her third husband when he was 11, and that man
was hostile toward children. Murphy was forced to reside with
his apathetic, alcoholic father. The defendant's older brother
lured him into a life of crime as a burglar.

Murphy now claims that he is committed to becoming a
responsible member of society. Defendant claims his acceptance
of responsibility in this case establishes his intent to
change.

Defendant also argues that his family
responsibilities justify a departure. The defendant has lost
both of his parents and his older brother. The defendant also
has two children from his ex-wife and current wife. Both of
these children have health issues. The government argues that
while the Court can consider the relevant history and
characteristics of the defendant in accordance with Section
3553(a) and 5H1.12 of the Sentencing Guidelines, they

1   specifically state that, quote, lack of guidance as a youth and

2   similar circumstances indicating a disadvantaged upbringing are

3   not relevant grounds in determining whether a departure is

4   warranted, end of quote.

5           The government further notes that the defendant has

6   had decades of involvement with the criminal justice system.

7   Despite opportunities to be rehabilitated, he has demonstrated

8   little intention to change.

9           Anything on that, Mr. Edwards?

10          MR. EDWARDS:  Your Honor, other than, again, that in

11  your -- in the sentencing that took place back in January of

12  2012, I believe that part of your 16-months departure downward

13  to Mr. Murphy's sentence, that you found that his family

14  background, his upbringing was grounds for departure, so we are

15  arguing -- or I will argue now as you did then -- we will ask

16  for that also to be considered.  Thank you.

17          THE COURT:  Thank you, Mr. Edwards.

18          Anything on that, Mr. Dominguez?

19          MR. DOMINGUEZ:  No, thank you, Your Honor.

20          THE COURT:  The Court is sympathetic to the

21  defendant's family situation and his difficult upbringing and

22  the lack of guidance.  Defendant's background would carry more

23  weight if this were defendant's first or second offense.

24  However, the defendant has a long history of committing

25  burglaries.  The defendant claims he wants to change, but the

Court is unpersuaded.  Nonetheless, the Court will consider the
defendant's history and characteristics in determining his
sentence, specifically, that he has lost most of his family and
his concern for the well-being of his children and the mothers
of his children.

Section 5 alleged insufficient investigation.  The
defendant seeks a departure based upon the alleged insufficient
investigation of codefendant Doucette's use of James Hennessey
to rent a moving truck and storage bin.  The defendant contends
that if this situation had been fully investigated, the outcome
of the trial may have been different, or at a minimum, he would
have had a witness to challenge Doucette's testimony.

Anything on this issue, Mr. Edwards?

MR. EDWARDS:  No, Your Honor.

THE COURT:  And Mr. Dominguez?

MR. DOMINGUEZ:  No, Your Honor.  Thank you.

THE COURT:  The Court is confident based upon the
evidence presented at trial that the investigation into James
Hennessey was sufficient and that there was no information that
would have been helpful to the defendant at trial.

Section 3553(a) factors.  The defendant argues that
the 3553(a) factors based upon the arguments set forth above,
including the fact that the sentence must be sufficient but not
greater than necessary, requires a sentence well below the
Probation Officer's recommended sentence of 180 months in

1  prison.

2      In support of defendant -- in support, the defendant

3  also cites that the sentences of his co-conspirators Morgan,

4  who received 55 months and Doucette, who received 27 months,

5  and David Nassor, who was not charged because of his

6  cooperation, defendant submits that a sentence of 60 to 84

7  months is appropriate in this case.

8      The government asserts that not only did Morgan and

9  Doucette receive the benefit of accepting of responsibility for

10  their actions, but their criminal history scores were much

11  lower than defendant's.  As such, the three co-defendants are

12  not similarly situated.

13      Mr. Edwards, anything on this?

14      MR. EDWARDS:  As to that issue, no, Your Honor.

15      THE COURT:  And Mr. Dominguez, anything?

16      MR. DOMINGUEZ:  Nothing in addition to the memorandum

17  submitted, Your Honor.

18      THE COURT:  It is undeniable that Murphy's sentence

19  should be much higher than that of his co-conspirators because

20  they received the benefit of accepting responsibility for their

21  actions and their Criminal History scores were lower.  Thus,

22  considering the fact that defendant Murphy went to trial in

23  this case and did not accept the plea agreement offered by the

24  government and also considering Murphy's background, a sentence

25  substantially higher than the co-defendants is justified.

1      Defendant is labeled as a security risk.  Defendant

2  argues that he has been improperly labeled a security risk

3  after he provided information to a U.S. Marshal regarding this

4  courthouse's security.  The defendant suggested that he will be

5  treated unfairly by the BOP because of this label.  This

6  argument is unpersuasive.  The U.S. Marshal Service must take

7  the necessary and appropriate steps to ensure safety in this

8  courthouse.  An inmate's observations regarding security,

9  quote, unquote, flaws should be and are taken very seriously by

10  the Marshal Service.  The defendant's criminal history and the

11  nature of the case before this Court warrants special

12  attention, and the defendant fails to show that he has been

13  treated harsher than anyone else with a similar background and

14  criminal history.

15      In addition to all of the arguments addressed, the

16  Court has also received a number of exhibits submitted in

17  support of defendant's sentencing memorandum.  These exhibits

18  have been carefully reviewed.  And I might not have addressed

19  each and every one during the previous summary of your

20  arguments.  Therefore,  Mr. Edwards and Mr. Murphy, I will give

21  you this time to raise any additional arguments that you

22  believe may justify a departure or some other consideration

23  that has not already been addressed.

24      Mr. Edwards?

25      MR. EDWARDS:  Thank you, Judge.  The only thing that

1    I wanted to add was that on Monday of this week we filed a

2    supplemental sentencing memorandum.  Actually, I guess it was a

3    supplement to the supplement, where we brought up the issue

4    dealing with the conditions of confinement, which the Court

5    briefly mentioned about Mr. Murphy being labeled a security

6    risk.  And in that conditions of confinement request for a

7    downward departure, part and parcel of that deals with the

8    courthouse security evaluation that he did during the trial.

9           And I can represent to the Court, and I did attach

10   some documents, one was an email from Marshal -- I think it is

11   Shadwick -- as well as an Ad Sec form, Administration

12   Segregation Form from the Franklin County Jail.

13          Mr. Murphy also just this morning or this afternoon

14   gave me another Hearing Disposition Notice from the Franklin

15   County Jail, where it says that he is an escape risk.

16          And one of the concerns that he has and that we have

17   in this case is that it would appear to me that his summary of

18   the courthouse security, that's one thing, but now that he has

19   been labeled a security risk, now that he has been labeled an

20   escape risk, it could affect his placement within the Bureau of

21   Prisons.  So, as a result, we filed that supplemental

22   sentencing memorandum on Monday, and we would ask the Court to

23   consider that, also, in the mix as far as a downward departure.

24          Now, in the alternative, Your Honor, if the Court

25   would not want to consider that, there is one way that that

1    could be cured if, in fact, the Court would follow the

2    recommendation that we made in the sentencing memorandum,

3    likewise that Mr. Graeff made back in January of 2012, and that

4    would be that you could recommend to the Bureau of Prisons that

5    he be placed in the federal facility in Devens, Massachusetts.

6    That way, that would be a location where he would be close to

7    his family, and it would cure this problem of him being labeled

8    and maybe put in a more restrictive environment because of this

9    courthouse security documentation.  So, that would be the

10   additional departure downward -- or that would be the

11   additional area that we would like to raise.

12            THE COURT:  I am going to speak to that in a few

13   minutes.

14            MR. EDWARDS:  Okay.

15            THE COURT:  Thank you, Mr. Edwards.

16            Any comment on that?

17            MR. DOMINGUEZ:  Nothing in addition to the

18   memorandum, Your Honor.

19            THE COURT:  Thank you.  In summary, I have carefully

20   considered all of the defendant's arguments raised in the

21   objections and the sentencing memoranda as well as all of the

22   3553(a) factors.  The Probation Officer recommended a total

23   sentence of 180 months imprisonment in this case.  However,

24   after hearing all of the defendant's arguments, I believe that

25   a sentence lower than 180 months is warranted.  The defendant

1  should receive some credit for the time served since his

2  Indictment.

3          Further, the 3553(a) factors, including the history

4  and characteristics of the defendant, and his attempts to

5  cooperate with prior information on unsolved crimes to law

6  enforcement justify a departure.  The Court notes that he has

7  seen the list that was provided by the defendant to

8  authorities, wherein he names various people.  Some are

9  somewhat repetitious, but the crimes are not.  So, the Court

10  has observed that part.  And what came of those cases as a

11  result of that, I do not know.

12          But the placement and in-kind payment request, the

13  defendant requests to serve his prison sentence at Fort -- is

14  it Devens?  However that's pronounced.

15          MR. EDWARDS:  That's correct, Your Honor.

16          THE COURT:  In Massachusetts to be close to his

17  family and to be able to litigate civil matters in the

18  Massachusetts courts.  While the Court is sympathetic to the

19  defendant's family situation, it must also consider the general

20  protection of the public.  Defendant has close ties to many

21  people involved in the illegal operations in the Boston area.

22  If defendant is placed in Massachusetts, it may be easier for

23  him to continue to maintain these connections.  Therefore, the

24  Court denies defendant's request to make this recommendation,

25  but notes that the Bureau of Prisons makes the ultimate

1   decision where to place defendants.

2          I spoke very strongly about this at the original

3   sentencing, Mr. Murphy, as you may recall, that I don't want

4   you in Massachusetts planning crimes -- to put it simply.

5          And the Court also includes a separation order in the

6   Judgment and Commitment Order that Murphy and his codefendants,

7   Morgan and Doucette, should all be placed in different prison

8   facilities, which I would assume is standard -- would be

9   standard procedure in any case like this or similar.

10          Defendant has also requested that his $200 special

11   assessment be paid with the money that he had in his possession

12   when he was arrested.  However, Murphy was arrested and taken

13   into custody on a State case in Massachusetts; so, therefore,

14   any money that was on him when he was arrested would be in the

15   possession of the Massachusetts authorities.  The Court has no

16   control over that money, and therefore, cannot grant

17   defendant's request.

18          Finally, defendant requests that he be allowed to

19   make restitution through an in-kind payment pursuant to 18

20   United States Code, Section 3664(f)(4).  And in-kind payment

21   may be in the form of return of property, replacement of

22   property or if the victim agrees, services rendered to the

23   victim or a person or organization other than the victim.

24          Defendant identifies himself as a security expert and

25   has contacted Brinks regarding his proposed in-kind payment.

1   In order to order such an in-kind payment, the victim must

2   agree.  Brinks has indicated to the Court that it does not

3   agree to such in-kind restitution payment.  Therefore, the

4   defendant's request is denied.

5           Is there anyone from Brinks here?

6           MR. DOMINGUEZ:  No, Your Honor.

7           THE COURT:  Mr. Dominguez, do you have any additional

8   comments on this matter?

9           MR. DOMINGUEZ:  No, Your Honor.  Thank you.

10          THE COURT:  Mr. Edwards, you may speak in mitigation.

11          MR. EDWARDS:  Oh, thank you.  Your Honor, I won't be

12  real lengthy because I know that there was a sentencing hearing

13  back in January of 2012.  Back at that hearing, Your Honor,

14  both in my reading of the transcript as well as your statement

15  of reasons, you made a very wise and thoughtful decision that

16  the three areas -- Mr. Murphy's time incarcerated, his family

17  background and upbringing and then his attempts to cooperate --

18  that those all put together were worthy of a 60-month downward

19  departure under the 3553(a) factors.

20          Now, I understand, as Mr. Dominguez argued in his

21  response and in his reply to the sentencing memorandum, and as

22  the Court mentioned earlier today, that you are not bound by

23  your findings at the first hearing, that you can revisit the

24  entire sentence.  However, I would submit to the Court

25  respectfully that those factors have not changed.  In fact, if

1    they have changed at all, they have actually changed to the

2    benefit of Mr. Murphy, that he should receive a greater

3    departure downward because he has been incarcerated an

4    additional 18 months in Massachusetts without serving a day of

5    any federal sentence.

6          So, I would ask the Court that you likewise depart

7    downward 60 months and that --

8          THE COURT:  Is that 6-0?

9          MR. EDWARDS:  60 months, yes, as you did at the last

10    hearing.  In addition to giving him some portion, if not all,

11    of the time that he spent in jail in Massachusetts, which is

12    approximately 18 months.

13          Now, I know that Mr. Dominguez -- because I did read

14    his response -- is going to say, well, that the downward

15    departure at the last hearing was based upon some adjustment

16    that, you know rather than a 25-year sentence, a 20-year

17    sentence was more reasonable, and that any sentence below 15

18    years in this case would demean the seriousness of the offense

19    and it wouldn't dissuade others from committing it.

20          I would strongly disagree with that.  I don't think

21    that the Court -- at least in my reading of your stated reasons

22    and at the sentencing hearing -- this wasn't a situation where

23    the sentence, at least from my prospective, was adjusted

24    downward because a 20-year sentence was fairer than a 25-year

25    or anything like that, but it was the fact that the Court

1 specifically found that because of his attempts to cooperate,

2 his upbringing, his family situation and his time incarcerated,

3 those factors warranted a 60-month departure. So, I would just

4 ask the Court -- although I know you are not specifically bound

5 by that -- I would ask the Court to make that same finding

6 because those factors still exist. Thank you.

7             THE COURT: Thank you, Mr. Edwards.

8             Mr. Dominguez?

9             MR. DOMINGUEZ: Well, Your Honor, I would not stand

10 up here and pretend to be in the Court's mind as it is

11 fashioning an appropriate sentence in this case. The only

12 thing that I could speak to is the record itself, and the

13 record suggests to Mr. Murphy that you believed that a

14 240-month sentence was appropriate, given all of the facts and

15 the circumstances, as you heard them in the trial of this very

16 complex case.

17             You are well aware of Mr. Murphy's actions, you are

18 well aware of the leadership role he reigned over the

19 codefendants in this case. You are well aware of the fact of

20 what he attempted to do before this jury in this case, and at

21 that sentencing hearing, you decided that a 240-month sentence

22 is appropriate in this case.

23             Clearly, Mr. Murphy is going to get the benefit of a

24 60-month departure based on certain counts being dismissed.

25 But we think the 180-months sentence recommended by the

1  Probation Officer truly reflects this Court's original

2  sentencing intent and is appropriate in this case.  Thank you.

3        THE COURT:  And Mr. Murphy?  Do you have anything to

4  say before I sentence you?  And keeping in mind that we have

5  already addressed in detail your arguments, and the Court would

6  appreciate that you not be repetitious on anything we have

7  already gone over, but you may speak your mind.

8        THE DEFENDANT:  Thank you, Your Honor.

9        Your Honor, I have made a lot of mistakes in my life,

10  and I have paid for those mistakes.  In this case, as you know

11  and as the government knows, I cooperated extensively in this

12  case, Your Honor.  And the government systematically attempted

13  to discredit all of my cooperation.

14        However, they argue that they would have given me

15  credit had I not gone to trial.  And in that sense, Your Honor,

16  the government was in error.  If I cooperated, I am entitled to

17  my cooperation.  And through reading a lot of decisions, I see

18  a lot of language of "liberty and justice", and it reminded me

19  of our Pledge of Allegiance at the end where it says:  "Liberty

20  and justice for all."  And, Your Honor, I am part of the all.

21        And in regards to my codefendants, Mr. Doucette is

22  out.  He served his time, and he is out.  Mr. Morgan will be

23  out in five months, and my sentence hasn't even started yet,

24  Your Honor.  It may not start for several years.  I would like

25  for the Court to take that into consideration and assess all of

1    the 3553(a) factors, Your Honor, and I would ask the Court to

2    impose a sentence of less than ten years.  Thank you very much.

3              THE COURT:  Thank you, Mr. Murphy.

4              Well, Mr. Murphy, first of all, I acknowledge,

5    basically, your new argument about "justice for all".  And I

6    would remind you that in the word "all", that word all would

7    also include the victims of your crimes over the years.  And at

8    the last sentencing, we went into detail with that, and I will

9    do so again today.

10             Again, I acknowledge the letters that we have

11   received from your first sentence and from your ex-wife and

12   mother of your child, Rikklile Brown, Richard Ford,

13   Vice-President of the Lynn City Council and Judge Albert

14   Conlon, who I believe you worked for --

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  -- when he was in private practice;

17   correct?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And the Court appreciates all the letters

20   that it receives from citizens.

21             Now, I will say, are there any issues, including 3553

22   factors, that I have not addressed but need to be addressed?

23   Counsel?

24             MR. EDWARDS:  No, Your Honor.

25             MR. DOMINGUEZ:  Likewise, Your Honor.

1          THE COURT:  Pursuant to the Sentencing Reform Act of

2     1984 and 18 United States Code, Section 3553(a), it is the

3     judgment of the Court that the defendant, Sean D. Murphy, is

4     hereby committed to the custody of the United States Bureau of

5     Prisons to be imprisoned for a term of 60 months on Count 1 and

6     96 months on Count 4 to be served consecutively to each other

7     for a total sentence of 156 months.

8          Upon release from imprisonment, the defendant shall

9     serve a term of supervised release of three years on Counts 1

10    and 4 to be served concurrently.  Within 72 hours of release

11    from the custody of the Bureau of Prisons, the defendant shall

12    report to the Probation Office in the district to which he is

13    released.

14          Accordance with Setser v. United States, a 2012

15    Supreme Court case, the Court orders that the sentence imposed

16    today be served consecutively to any future sentence in State

17    court.

18          While on supervised release, the defendant shall not

19    commit any federal, State or local crimes.  He shall be

20    prohibited from possessing a firearm or other dangerous device.

21    The defendant shall refrain from any unlawful possession of a

22    controlled substance, submit to drug test with 15 days of

23    release on supervised release and at least two periodic drug

24    tests thereafter.

25          The defendant shall submit to the collection of a

sample of his DNA as directed by the Probation Officer or a designee of the Bureau of Prisons. Defendant shall comply with the standard conditions of supervised release as adopted by this court.

Defendant shall also comply with following special conditions: The defendant shall participate in a program of testing and treatment for alcohol and controlled substance abuse as directed by the U.S. Probation Office until such time as the defendant is released from the program by the Probation Office.

Defendant shall provide all personal financial information upon request by the Probation Officer.

The Court finds the defendant does not have the ability to pay a fine.

However, pursuant to 18 United States Code, Section 3663A, the defendant is ordered to pay restitution in this case in the amount of $1,270,456.80. The restitution shall be paid jointly and severally with Joseph Morgan and Robert Doucette. The restitution is due immediately with any unpaid balance to be paid as a condition of supervised release.

While incarcerated, if the defendant is working in a non-UNICOR or Grade 5 UNICOR job, he shall pay $25 per quarter toward the restitution obligation. If working in a Grade 1-4 job, the defendant shall pay 50 percent of his monthly pay toward the restitution obligation. Any change in this schedule

shall be made only by order of this Court.  Within 60 days of

the commencement of his term of supervised release, the

Probation Officer shall recommend a payment schedule to the

Court to satisfy the unpaid balance of restitution.  The Court

will enter an order establishing a schedule of payments.

Pursuant to 18 United States Code, Section 3612(f)(3)(A), the

Court waives the requirement of interest on any balance of the

restitution not paid within 15 days after judgment.

The defendant is ordered to pay a special assessment

in the amount of $200, which shall be due immediately.

As justification for this sentence, the defendant,

Sean D. Murphy, is before the Court having been found guilty of

conspiracy to transport merchandise and money in interstate

commerce and transporting merchandise and money in interstate

commerce.

The defendant was involved in a conspiracy to travel

from Boston, Massachusetts to Columbus, Ohio to commit a

burglary at a Brinks warehouse.  Defendant and two other

defendants successfully broke into a Brinks facility and stole

$2,330,291.15 but had the potential of stealing more than

$92 million.  The amount of money that they were able to obtain

was limited because the high intensity torch they used to break

into the vault ignited the money and materials inside of the

vault.  The defendant Murphy was the mastermind behind the

conspiracy.

1          The sentence imposed is consistent with the U.S.

2     Supreme Court decision U.S. v. Booker.  The Booker holding has

3     effectively made the sentencing guidelines advisory rather than

4     mandatory, and Booker requires judges to not only consider the

5     guideline range but also to consider the other factors listed

6     in 18 United States Code, Section 3553(a) in determining the

7     appropriate sentence.  The Court has considered the nature and

8     circumstances of the offense as well as the history and

9     characteristics of the defendant.

10          Defendant is 48 years old.  He has lost both parents

11     and his oldest brother.  He has two three-year old children,

12     one with his ex-wife and the other with a girlfriend.  He also

13     has a 27 year old daughter, who was raised by his mother.

14          Defendant's criminal history is very lengthy,

15     including convictions for 13 counts of breaking and entering;

16     six counts of possession of burglarious tools; possession of a

17     knife over 2 and 1/2 feet long -- or inches; three counts of

18     larceny under $250; possession of marijuana; malicious damage

19     to property; breaking and entering with intent; six counts of

20     larceny over $250; use of a motor vehicle without

21     authorization; wanton destruction of property; possession of a

22     controlled substance; two counts of larceny of a motor vehicle;

23     five counts of receiving stolen property; three counts of

24     knowingly receiving stolen property; two counts of breaking and

25     entering nighttime; two counts of larceny; violation compulsory

of insurance law and attaching a wrong motor vehicle plate;

possession of a dangerous weapon; larceny of a controlled

substance, two counts of attempted breaking and entering; two

counts of armed robbery; eleven counts of possession with

intent to distribute drugs; possession; distribution of drugs;

two counts of breaking and entering with intent to commit a

felony; possession of stolen firearms; two counts of possession

of a Class E substance with intent to distribute/manufacture;

illegal possession of a Class D substance; two counts of

possession of a Class C substance with intent to

distribute/manufacture; possession of a Class B substance with

intent to distribute; conspiracy to commit larceny over $250;

soliciting another to commit larceny; attempt to commit a

crime; operating under the influence of drugs; and the crime of

burglary.

It is apparent from the defendant's extensive

criminal history and unrelenting recidivist behavior that the

only way to stop him is a lengthy period of incarceration.

The sentence is further justified because Murphy was

the mastermind of this conspiracy, intricately involved in the

planning and carrying out of the burglary.  This was not a

simple burglary.  It was complex and Murphy's criminal

experience and technical knowledge were critical to his

operation.

While the Court has decided not to impose the

1    recommended 180-months imprisonment, the sentence imposed is

2    still considerable and will provide just punishment for the

3    offenses and will deter those in the community who may consider

4    committing similar offenses.

5          Furthermore, even the maximum sentences for Counts 1

6    and 4 are five years and ten years respectively, the sentence

7    imposed constitutes an increase of three years over the

8    previous sentence for these two counts.  This sentence will

9    help protect the public from further crimes of the defendant,

10   and the sentence imposed will also avoid unwarranted sentencing

11   disparities as codefendants Morgan and Doucette each had

12   substantially lower criminal history scores than Murphy, and

13   Murphy was the mastermind of the heist.

14         In conclusion, after considering the factors of this

15   particular case, the advisory sentencing guidelines, the

16   3553(a) statutory factors and the information in the

17   Presentence Report, the sentence imposed today, which will be

18   served consecutively to any sentence imposed in State court, is

19   reasonable and sufficient but not greater than necessary to

20   comply with the purposes of sentencing outlined in 3553(a).

21   The sentence imposed today will afford the defendant the

22   appropriate and necessary means of rehabilitation.

23         Do the parties have any objections to the sentence

24   just pronounced that have not previously been raised?

25         MR. EDWARDS:  No, Your Honor.

1          MR. DOMINGUEZ:  No, Your Honor.

2          THE COURT:  Mr. Murphy, I will read your right to

3   appeal.  You can appeal your conviction if you believe -- well,

4   you can appeal your conviction if you believe it was somehow

5   unlawful or involuntary or if there is some other fundamental

6   defect in the proceeding that was not waived by the decision of

7   the jury.

8          You also have a statutory right to appeal your

9   sentence under certain circumstances; particularly, if you

10  think the sentence is contrary to law.

11         If you are unable to pay the costs of the appeal, you

12  may apply to this Court for leave to appeal in forma pauperis,

13  that is without payment of fees and costs.  Do you understand

14  your rights, Mr. Murphy?

15         THE DEFENDANT:  Yes, I do, Your Honor.

16         THE COURT:  You may request the Clerk of this Court

17  to prepare and file a notice of appeal on your behalf.  Do you

18  wish to have the Clerk file a notice of appeal?

19         MR. EDWARDS:  Yes.

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  The Clerk will file your notice of

22  appeal.  If you change your mind, you still have 14 days to

23  make a final decision on this matter.

24         Mr. Edwards, do you know if you would be available to

25  handle the appeal on this matter or not?

1          MR. EDWARDS:  Yes, I am available.

2          THE COURT:  All right.

3          The defendant, obviously, will remain in custody.

4          Are there any other matters that we need to go over

5    while Mr. Murphy is still present in court?

6          MR. DOMINGUEZ:  Not from the government, Your Honor.

7          MR. EDWARDS:  No, Your Honor.  Thank you.

8          THE COURT:  All right.

9                              – – –

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2    United States of America

3    Southern District of Ohio

4            I, Georgina L. Wells, Official Court Reporter of the

5    United States District Court for the Southern District of Ohio,

6    do hereby certify that the foregoing 35 pages constitute a true

7    and correct transcription of my stenographic notes taken of the

8    said requested proceedings, held in the City of Columbus, Ohio,

9    in the matter therein stated on the 26th day of June, 2013.

10           In testimony whereof, I hereunto set my hand on the

11   30th day of September, 2013.

12

13

14

15

16

17                          /s/Georgina L. Wells

18                          _____

19                          Georgina L. Wells, RMR
                            Official Court Reporter
20                          Southern District of Ohio

21

22

23

24

25