UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-10(1) |
| | ) | JUDGE SMITH |
| | ) | |
| SEAN D. MURPHY | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR NEW TRIAL AND WRIT OF HABEAS CORPUS

The Defendant has moved for a new trial, pursuant to Federal Rule of Criminal Procedure 33. Defendant proceeded to trial on October 22, 2011, and was convicted on Counts 1-4. Defendant received a sentence of 240 months on January 25, 2012. The 6th Circuit Court of Appeals decided Defendant's direct appeal where Defendant's sentence was reduced. Defendant's Motion for New Trial is properly before this Court. The Defendant consolidates his Motion for New Trial with his Writ of Habeas Corpus.

## DISCUSSION

A motion for new trial must be filed within three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(b). A motion for new trial filed after 14 days after the verdict can only be based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). A Writ of Habeas Corpus must be filed within one year of the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). The Defendant's motion is timely. The Defendant hereby presents the Court with newly discovered evidence that could not be brought before the Court at trial ... even with due diligence, along with his argument for Habeas relief.

1

Co-Defendant Joseph Morgan refused to speak with FBI Investigators about the BRINKS burglary. Costello TR, Vol. 5, p. 84. Morgan declined a deal from the Government to testify against Murphy at trial. Morgan told Murphy that [i]f Murphy called him as a witness at trial, he would invoke his Fifth Amendment privilege against self incrimination. Morgan Aff. para. 36. After reading Robert Doucette's trial testimony and all the perjurous testimony contained therein, Morgan has now agreed to provide a sworn declaration and testify, if required to do so. Morgan Aff. para. 37. Morgan's statement was unavailable prior to trial and is now newly discovered evidence.

**A.      Robert Doucette, the sole witness who placed Defendant at the scene of the crime, and in the State of Ohio, committed material perjury at Trial.**

Federal Rule of Criminal Procedure 33(a) provides that "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Gardner, 507 F.3d 399, 404-405 (6th Cir. 2007); United States v. Bass, 460 F. 3d 830, 838 (6th Cir. 2006).*

The Defendant will lay out the perjured testimony Robert Doucette elicited at trial. Eventhough not all of the perjured testimony is "newly discovered", documenting the false testimony described will help the Court weigh the credibility of Doucette. *See, United States v. Solorio, 337 F. 3d 580, 589 FN6 (6th Cir. 2003)*(On Rule 33 motion the district court may weigh evidence and **assess credibility of witnesses**); *United States v. Matthews, 298 Fed. Appx. 460, 465 (6th Cir. 2008)*(same).

The burden is on the defendant to show the testimony was false. *United States v. Griley, 814 F. 2d 967, 971 (6th Cir. 1987).* Therefore, the Defendant hereby documents most of the perjured testimony Robert Doucette elicted at trial and presents evidence of its falsity:

(Trial Transcript Volumes 1- 3 are contained in Doc. #159. Trial Transcript Volumes 4 - 7 are contained in Doc. #160. The Sentencing Transcript is contained in Doc. #165.)

1.      Doucette testified Nassor left from picking up the cell phone jammer and went straight to Columbus, Ohio to case BRINKS. Doucette TR, Vol. 3, p. 35; Vol. 4, p. 79.

      a.      Nassor testified there was a month between the trips. Nassor TR, Vol. 1, pp. 122-126, 131-133; contradicting Doucette;

      b.      Records submitted by the government prove there was a month inbetween the trips. See, Government Trial Exhibits 2-1, 2-2.

This instance of perjured testimony **is material** to the case and focuses on Doucette's willingness to testify falsely regarding facts that have been proven otherwise.

2.      Doucette claimed to be present when Murphy and Morgan allegedly left Lynn, MA, to bring the tools to PA. Doucette TR, Vol. 3, p. 175.

      a.      Doucette testified this trip occurred approximately one month to five weeks before the 1-17-2009 burglary. Doucette TR, Vol. 3, p. 175;

      b.      The PA storage bin was not even rented until **1-3-2009** . See Government Trial Exhibit 8-1; McAlister TR, Vol. 2, p. 140; Government's Trial Exhibit 9-1; Doucette's timeline was way off;

This instance of perjury **is material** to the case. Doucette misled the Court and the jury. The Defendant argues that when so many lies are told ... it is hard to remember all the lies ... and cover all your tracks.

3.      Doucette testified the crew stayed in a Hotel on January 16, 2009, **one to two hours** from the Pennsylvania storage facility. Doucette TR, Vol. 3, p. 206.

      a.      Morgan says the Hotel was less than **ten minutes** from the **PA storage facility**. Morgan Aff. para. 4;

      b.      Hotel records prove the Comfort Inn in Mars, PA was **three miles** from the Warrendale, PA storage facility. See, Map, Exh. A;

      c.      Doucette was referring to the **Eastern Ohio storage facility** that was one or two hours away from the Hotel.

This instance of perjury **is material** to the case and **proves** that Doucette was willing to mislead investigators and the Court to determine the exact location of the Hotel and that there was a second storage facility in Eastern Ohio.

4.     Doucette testified he does not recall the orange 12 ft. A-frame ladder in BRINKS. Doucette TR, Vol. 4,  p. 102.

      a.     Morgan said Doucette used the ladder to unlatch the garage door opener in BRINKS and to carry the industrial fan up onto BRINKS' roof. Morgan Aff. para. 7.

This instance of perjury **is material** to the case, where at the very least, establishes Doucette's ability to perceive and/or remember events correctly.

5.     Doucette testified the crew returned home to Lynn, MA on **Sunday, January 18, 2009.** Doucette TR, Vol. 3,  pp. 123-124, 210, 212. Doucette denied **staying at a Hotel** on the night of January 18, 2009. Doucette TR, Vol. 3, p. 212; Doucette GJ Testimony, p. 50. Doucette denied the crew **went back to BRINKS** in Columbus on January 18, 2009. Doucette TR, Vol. 3,  pp. 212-213.

      a.     Morgan and Murphy averred the crew stayed in the same Hotel on January 16th and 18th.          Morgan Aff. para. 9. Murphy Aff. para. 11;

      b.     Morgan said the crew went back to BRINKS on Sunday January 18th. Morgan Aff. para. 11;

      c.     Hotel records prove the crew stayed in the **Comfort Inn, Mars, PA,** on January 18, 2009. See, Hotel Records, Exh. B;

      d.     Doucette could not recall "when" he got home on Sunday, January 18, 2009. Doucette TR, Vol. 4, p. 108.

This instance of perjury **is critically material** to the case. The Hotel records **prove** that Doucette intentionally misled investigators, the Court and the jury as to what actually occurred during the weekend of the BRINKS burglary. The Hotel records are **newly discovered documentary evidence.**

6.     Doucette testified the extra 452 miles on the rent-a-car was probably from

4

Murphy driving the car after they returned to Lynn, MA from Ohio. Doucette TR, Vol. 4, pp. 16-18.

    a.      Morgan said the extra miles were from the trip back to BRINKS on January 18, 2009. Morgan Aff. paras. 11-12;

    b.      Doucette denied said trip occurred. Doucette TR, Vol. 3, pp. 212-213.

This instance of perjury **is critically material** to the case. This **proves that** Doucette intentionally misled investigators and the Court as to what actually occurred during the weekend of the BRINKS burglary.

7.      Doucette testified the tools and stolen money were in the PA storage bin after the BRINKS burglary. Doucette TR, Vol. 3, p. 164. Doucette did not "recall" going to the Ohio storage bin. Doucette TR, Vol. 3, p. 195.

    a.      Morgan said everything stolen from BRINKS was in the Ohio storage bin. Morgan Aff. para. 8;

    b.      Video and Entry/Exit logs at the PA storage facility support Morgan's story;

    c.      Doucette testified that the storage facility where he "unloaded" the tools and coins after the BRINKS burglary ... was the **first time** he had ever been there and did not know **where** it was. Doucette TR, Vol. 4, pp. 106-107. (This would be the Ohio storage facility);

    d.      Doucette did not differentiate the "Ohio" or "Pennsylvania" storage bins. Doucette TR, Vol. 4, p. 23.

This instance of perjury **is material** to the case and establishes that Doucette hid from authorities (and the Court) that there was a second storage bin used on the weekend of the burglary.

8.      Doucette testified Morgan made the decision to go get the stolen money after Murphy got arrested. Doucette TR Vol. 4, p. 23.

    a.      Morgan said Doucette made the decision. Morgan Aff. para. 20;

    b.      Because Doucette had James Hennessey from Maine rent a UHAUL truck and a storage bin on the day Murphy got arrested, it appears Doucette was making the decisions. Doucette TR, Vol. 3, p. 190;

This instance of perjury **is material** to the case and shows that Doucette pawned off all of his "leadership" actions on either Murphy or Morgan.

9.      Doucette does not recall how he got in the PA storage when he went back on January 24, 2009. Doucette TR, Vol. 3, p. 123. Doucette testified Murphy hid the key and Morgan knew where the key was located. Doucette TR, Vol. 3, p. 122.

     a.      The FBI seized the **only key** to the PA storage bin on January 23, 2009, when they raided Murphy's home, the day "before" Doucette allegedly went to that facility. Wohlgemuth TR, Vol. 2, p. 172; Goverment Trial Exhibit 6-3;

     b.      Morgan stated the key was not at the Pennsylvania storage facility. Morgan Aff. para. 23;

     c.      Doucette and Morgan could not get in the PA storage bin on January 24, 2009, because the key was not there.

This instance of perjury **is material** to the case and establishes that Doucette hid from authorities (and the Court) that there was a second storage bin in Eastern Ohio.

10.      Doucette denied taking drugs (Oxycontin) on January 16, 17, 18, 19, 23 and 24, 2009. Doucette TR, Vol. 4, p. 61.

     a.      Morgan said he and Doucette snorted crushed up 80mg Oxycontin on all those dates. Morgan Affidavit para. 14.

This instance of perjured testimony **is material** to the case and establishes that Doucette was heavily under the influence of narcotics during all critical dates of the crimes charged, and, the drugs may have affected his ability to perceive and/or remember events correctly.

11.      Doucette testified Morgan took a couple of duffle bags full of stuff from the Raymond, NH storage bin. Doucette TR, Vol. 3, p. 165.

     a.      Morgan said only the coins racks, video units, paper currency and digital money counter were taken out of the Raymond, NH storage bin. Morgan Aff. para. 25.

This instance of perjury **is material** to the case and shows that Doucette pawned off all of his "leadership" actions on either Murphy or Morgan. Also, that he tampered with and withheld evidence from authorities.

12.     Doucette said the rent-a-car was a **Voyageur** in his prior statements. Doucette TR, Vol. 3, p. 38.

      a.      At trial, Doucette testified the rent-a-car was now a **Journey.** Doucette TR, Vol. 3, pp. 38, 186.

      b.      Doucette testified he mixed up the names because the word Journey is similar to Voyage. Doucette TR, Vol. 3, p. 163; Vol. 4, p. 87.

This instance of perjury **is material** to the case as it establishes Doucette was willing to change his prior testimony after discovering certain facts from the Discovery the Government let him review before trial. Doucette TR, Vol. 3, p. 162.

13.     Doucette testified the crew brought back all the paper currency on **January 18, 2009,** and began splitting up the money on January 18, 19 and 20, 2009. Doucette TR, Vol. 3, p. 115; Vol. 4, pp. 12-14. Doucette testified Nassor helped split up the money on January 19 & 20, 2009, and that Nassor received a share of the stolen money. Doucette TR, Vol. 3, pp. 125-126, 213, 216; Vol. 4, p. 111.

      a.      Morgan said the money did not come back to Lynn, MA until **January 24, 2009.** Morgan Aff. para. 13;

      b.      Nassor testified that he helped clean the truck and never saw any money nor received any money      when the crew returned to Lynn. Nassor TR, Vol. 1, p. 185;

      c.      Hotel records prove the crew was still in Western PA on January 18, 2009, contrary to Doucette testimony. See, Hotel records, Exh. B;

      d.      Doucette testified at the Grand Jury that Murphy wanted to leave everything out west and **drive back empty.** Doucette GJ pg. 47;

      e.      Doucette testified "he and Morgan" divvied up the money **after they** got back *from picking up the money* after Murphy got arrested. Doucette TR, Vol. 3, p. 127.

This instance of perjury **is critical** to Defendant's argument and **is material** to

the case. This establishes that Murphy never crossed state lines with stolen

goods.

14.     Doucette testified that Morgan rented the storage bin at UHAUL Storage in Lynn,

MA. Doucette TR, Vol. 3, p. 127; Vol. 4, p. 24. Doucette does not recall telling the FBI

about the Lynn storage bin until late 2011. Doucette TR, Vol. 4, pp. 24-26.

   a.   Morgan said Doucette rented the Lynn storage bin at UHAUL under
        name George Bogart. Morgan Aff. para. 26;
   b.   UHAUL Storage records prove Doucette rented the storage bin
        under his nickname "Bogart". See, UHAUL records, Exh. C;
   c.   Morgan's nickname is JoMo. Doucette TR, Vol. 3, p. 27;
        Morgan's alias is John Lynch. Costello TR, Vol. 5 pp. 116-177.

   This instance of perjury **is material** to the case. The storage bin records

are **newly discovered** documentary **evidence.**

15.     Doucette testified that they burned money in his kitchen that was unusable.

Doucette TR, Vol. 3, pp. 219, 224; Vol. 4, p. 72.

   a.   Morgan said no money was destroyed. Morgan Aff. para. 29;
   b.   The unusable money was in the Raymond, NH storage bin and was
        entered into evidence as Government Trial Exhibits 1E8-1E9.

   This instance of perjury **is material** to the case. Doucette used this falsity as

an excuse to keep the bulk of the stolen money.

16.     Doucette testified there was only @$210,000 of unburned paper currency.

Doucette TR, Vol. 3, pp. 221-222.

   a.   Morgan said there was @ $420,000 of unburned paper currency.
        Morgan Aff. para. 28;
   b.   Records of the total amount of missing money indicate Morgan's
        statement of the total amount stolen is more accurate than Doucette's
        testimony;
   c.   Judge Smith asked Doucette **where the rest of the money was at**
        Doucette's sentencing; Doucette clammed up. See, Columbus Dispatch
        article, Exh. D.

This instance of perjury **is material** to the case. Doucette used this falsity as an excuse to keep the bulk of the stolen money.

17.    Doucette testified that the laptop computer [h]e researched the BRINKS building with **broke**. He testified he did not destroy it. Doucette TR, Vol. 3, pp. 178-179.

    a.    Morgan said Doucette ran over the laptop computer with Morgan's Chevy Tahoe truck. Morgan Aff. para. 30;

    b.    Doucette cased out BRINKS on [h]is computer. Doucette TR, Vol. 3, p. 179; Doucette GJ p. 14.

This instance of perjury **is material** to the case and shows that Doucette pawned off all of his "leadership" actions on either Murphy or Morgan.

18.    Doucette testified that someone must have gotten in the Raymond, NH bin and taken a trash bag full of money. Doucette TR, Vol. 4, pp. 72-73.

    a.    Murphy and Morgan were in jail and had no knowledge of the *second* Raymond, NH bin's location;

    b.    Doucette testified to going to Raymond, NH *after* Morgan got arrested "to put the burned money in the bin so that he could turn it over ... then noticed someone went in the bay." Doucette TR, Vol. 3, pp. 230-231. How could Doucette claim a bag of money was missing from the bin, when he was going to the bin to put the money (he said was missing) ... in the bin?

This instance of perjury **is material** to the case. Doucette used this falsity as an excuse to keep the bulk of the stolen money.

19.    Doucette testified someone must have gotten in the Raymond, NH bin and stole the MILWAUKEE Electromagnetic Drill. Doucette TR, Vol. 3, pp. 196-198.

    a.    Doucette purchased this drill just prior to the BRINKS burglary. Doucette TR, Vol. 3, p. 196. The drill had serial numbers on the drill that could prove Doucette bought the drill. Doucette TR, Vol. 3, p. 200;

    b.    Doucette testified all the tools belonged to Murphy. Doucette TR, Vol. 3, pp. 195, 198-199.

This instance of perjury **is material** to the case and shows that Doucette pawned

9

off all of his "leadership" actions on others. Also, that he tampered with and withheld

evidence from authorities.

20.     Doucette testified Morgan took Murphy's money after the split. Doucette TR,

Vol. 3, p. 217.

   a.     Morgan said all the money stayed at Doucette's house. Morgan Aff.
          para. 29;
   b.     Doucette testified all the currency was at his house that they had been
          dividing. Doucette TR, Vol. 3, p. 125;
   c.     SA Jason Costello testified that Doucette told him that he (Doucette)
          and Morgan held Murphy's money. Costello TR, Vol. 5, p. 79.

This instance of perjury **is material** to the case. Doucette used this falsity as an

excuse to keep the bulk of the stolen money.

21.     Doucette testified at the Grand Jury that James Hennessey did not know about

the stolen goods. Doucette GJ p. 77.

   a.     Doucette testified Hennessey helped him move everything across town to
          another storage bin. Doucette TR, Vol. 3, p. 190;
   b.     Doucette admits to lying to Grand Jury and the FBI about Hennessey's
          involvement. Doucette TR, Vol. 3, pp. 168-169; Vol. 4, pp. 21-22.

This instance of perjury **is material** to the case and shows what lengths Doucette

will go to in order to protect the individuals who helped him isolate the money and tools

from the other participants.

22.     Doucette testified the big 100 Watt cell phone jammer went into the PA storage

bin. Doucette TR, Vol. 4, p. 44.

   a.     Morgan said the big 100 Watt cell phone jammer was at Doucette's house
          on the weekend of the burglary. Morgan Aff. para. 33;
   b.     Nassor testified that the big 100 Watt jammer was at Doucette's house.
          Nassor TR, Vol. 1, p. 196.

This instance of perjury **is material** to the case and establishes that Doucette was

willing to **plant evidence** in the Raymond, NH storage bin that had no connection with

10

the BRINKS burglary.

23.    Doucette testified he is an honest person and plans on telling nothing but the

truth. Doucette TR, Vol. 3, pp. 160-161.

   a.    At the end of Doucette's testimony, he testified that he was **as truthful and honest** as he can be. Doucette TR, Vol. 4, p. 113;
   b.    Doucette perjured himself multiple times at trial.

   This instance of perjured testimony **is critical** to the case and **material**. Doucette

tried to manipulate the Court and jury into believing he was totally honest when

testifying.

24.    Doucette testified everything went in the PA storage bin except the currency.

Doucette TR, Vol. 3, p. 164.

   a.    Doucette later testifies under cross that a *digital money counter* may have also come back. Doucette TR, Vol. 3, pp. 214-215;
   b.    Doucette never told the FBI about a money counter. Costello TR, Vol. 5, p. 99.

   This instance of perjury **is material** to the case. Doucette misled the Court and

the jury. The Defendant argues that when so many lies are told ... it is hard to remember

all the lies ... and cover all your tracks.

25.    Doucette testified he was awake for 100 hours straight on the weekend of the

burglary. Doucette TR, Vol. 4, pp. 4, 16, 17, 107, 109.

   a.    Doucette admits to **sleeping** in a Hotel on Friday, January 16, 2009. Doucette TR, Vol. 3, p. 205;
   b.    Doucette testified he was **sleeping** in his bed in Lynn, MA on Sunday, January 18, 2009 ... but was in fact sleeping in the Comfort Inn Hotel in Mars, PA. Doucette TR, Vol. 3, p. 124; Vol. 4, p. 17.

   This instance of perjury **is material**. This proves that Doucette could only have

been awake for no more than 36 hours.

   The Defendant argues that if the Court allowed him to cross-examine Doucette

further, as he requested to do (Doucette TR, Vol. 4, p. 41 ), *many more* lies and

perjurous testimony would have been elicited from Doucette. However, the Government

argued that Murphy cross-examined Doucette for over *five hours* when requesting that

Doucette should not be recalled (Vol. 4, TR p. 54 ). The Court then denied Murphy's

request to recall Doucette. Vol 4, TR p. 154.

 The Defendant argues that Doucette committed voluminous perjury and did so in

an egregious manner. The Defendant has now **proven** Doucette committed **material**

perjury at trial. When deciding Defendant's Rule 29 Motion for Acquittal, the Court ruled

that Murphy did not "prove" Doucette committed perjury. (See Decision denying Rule 29

motion). The Defendant has now met his burden.

 There are two standards the Court uses for false/perjured testimony. The

Defendant asserts that he meets both standards and a new trial should be granted.

**B.**   <u>**The definitive proof/recantation standard.**</u>

 If the Defendant can definitively prove a key prosecution witness committed

perjury at trial, or if a key prosecution witness recants his testimony, the Court has set

the standard where a new trial should be granted.

 A new trial should be granted where: (1) the court is reasonably well satisfied

that the testimony given by a material witness is false; (2) that without it, the jury might

have reached a different conclusion; and (3) that the party seeking the new trial was

taken by surprise when the false testimony was given and was unable to meet it or did

not know the falsity until after trial. *Gordon v. United States, 178 F. 2d 896, 900*

*(6th Cir. 1949)(citing Larrison v. United States, 24 F. 2d 82, 88 (7th Cir. 1928));*

*United States v. Smith, 395 Fed. Appx. 223, 232-233 (6th Cir. 2010).* The subject

12

testimony must be "indisputably false" rather than "merely misleading". *Akrawi v. Booker, 572 F. 3d 252, 265 (6th Cir. 2009); Byrd v. Collins, 209 F. 3d 486, 517-518 (6th Cir. 2000)*. The evidence in question was unavailable to Defendant at the time of trial. *U.S. v. Mathur, 624 F.3d 498, 503 (1st Cir. 2010)*.

Here, there is no dispute that the testimony has proven to be false. The Defendant argues that since Doucette was the "only" witness placing Murphy at the scene of the crime and in the State of Ohio, Doucette's credibility was central to the case. Costello TR, Vol. 5, pp. 32, 59. Also, with Doucette's perjured testimony stricken, there is no evidence Murphy violated any law. The evidence was "unavailable" due to Morgan's unwillingness to cooperate with the Government or to testify at trial. Lastly, the Defendant was "taken by surprise" when Doucette testified falsely at trial and could not meet it because Attorney David Graeff told Private Investigator Gary Phillips "to stop investigating" weeks before the trial began. Phillips TR, Vol. 6, pp. 6, 9, 11. PI Phillips could not complete the majority of the tasks Murphy requested him to investigate because Attorney Graeff told him to stop investigating. Phillips TR, Vol. 6, p. 12. See also, Ineffective Assistance of Counsel claim, Section F *infra*.

### C.   **The generic new trial standard.**

The general test for granting a new trial requires the party seeking a new trial to show that: (1) the evidence was discovered after trial; (2) the evidence was not discoverable earlier through due diligence; (3) the evidence is of a nature that might have led to a different result; and (4) the evidence is material, not merely cumulative or impeaching. *United States v. Turns, 198 F. 3d 584, 586 (6th Cir. 2000); United States v. O'Dell, 805 F. 2d 637, 640 (6th Cir. 1986)*. Here, The Defendant asserts: (1) that the

"proof" establishing Doucette committed perjury was discovered after trial; (2) the evidence was not discoverable through due diligence, due to the fact that Attorney David Graeff told Private Investigator Gary Phillips "to stop investigating" weeks before the trial began. Phillips TR, Vol. 6, pp. 6, 9, 11. PI Phillips could not complete the majority of the tasks Murphy requested him to investigate because Attorney Graeff told him to stop investigating. Phillips TR, Vol. 6, p. 12. See also, Ineffective Assistance of Counsel claim, Section F *infra*; (3) the evidence is of a nature that "more than likely" would have led to a different result based on the voluminous amount of perjury committed by Doucette and the key areas where newly discovered documentary evidence affects the prosecution's case-in-chief. See Section E *infra*; and (4) the evidence of perjury is clearly material to the case and not cumulative. The new evidence establishes Murphy did not violate any federal laws.

### D.     The Government knew that Doucette committed perjury at Trial and did not correct the false testimony.

When the newly discovered evidence is designed to demonstrate perjury on the part of a government witness, the defendant must show that the testimony in question was both material and false, and that it was known to be false by the prosecution. *United States v. Farley, 2 F. 3d 645, 655 (6th Cir. 1993); United States v. O'Dell, 805 F. 2d at 641; Napue v. Illinois, 360 U.S. 264, 269 (1959).* In order to demonstrate that the government knew **or should have known** that testimony was false, defendant must show:  (1) there were false statements, (2) which were material, and (3) the prosecutor knew they were false. *(emphasis added). United States v. Farley, 2 F.3d 645, 655 (6th Cir.), cert. denied, 510 U.S. 1030 (1993).* The prosecutor's knowing introduction of false testimony "constitutes a denial of due

14

process if there is any reasonable likelihood that the false testimony could have

affected the judgment of the jury." *United States v. Lochmondy, 890 F. 2d 817,*

*822 (6th Cir. 1989); United States v. Stewart, 5 Fed. Appx. 402, 410*

*(6th Cir. 2001); Coe v. Bell, 161 F. 3d 320, 343 (6th Cir. 1998).* Here, the

government knew, or at the very least, should have known that Doucette committed

perjury.

The Defendant relies on the following:

(1)     the government investigated every single lead that could produce documentary and/or testimonial evidence in this case;

(2)     the government subpoenaed documentary evidence from every source from before the conspiracy began until after the conspiracy ended, including documents from Great Britain and five different states;

(3)     the government subpoenaed witnesses from a minimum of five different states to testify at trial;

(4)     the government had specific information that the culprits stayed at a Hotel on Friday, January 16, 2009 **and Sunday, January 18, 2009,** *near the Pennsylvania Storage Facility;*

(5)     the government did not produce any "documentary evidence" at trial regarding the Hotel the culprits stayed at on the weekend of the crime;

(6)     the government did not produce any "witnesses" from the Hotel the culprits stayed at on the weekend of the crime, inferring that the government knew Doucette's testimony in this area was false;

(7)     at trial, Assistant United States Attorney Salvador Dominguez, got extremely mad and/or frustrated when Robert Doucette specifically denied staying in a Hotel on Sunday January 18, 2009. AUSA Dominguez jotted down something on a piece of paper then violently ripped off the paper and handed it to Special Agent Harry Trombitas when Doucette committed this perjury;

(8)     the government did not correct the perjured testimony allowing the Court and the jury to be misled;

(9)     the testimony was clearly false; and

(10)    the testimony was material to the case.

Because the police are just as much an arm of the state as the prosecutor,

the police inflict the same due process injury when they hide, conceal, destroy, withhold,

or even fail to disclose material exculpatory information. *Moldowan v. City of Warren,*

15

*570 F.3d 698, 724 (6th Cir. 2009)*. In complying with *Brady*, a prosecutor has a duty to find any evidence favorable to the defendant that is known by the prosecution team, which includes their fellow attorneys and the police or FBI agents investigating the crime, that is, those acting on the government's behalf in the case against the accused. *Kyles v. Whitley, 514 U.S. 419, 437 (1995); Strickler v. Greene, 527 U.S. 263 (1999)*. If the prosecutor has a duty to investigate and disclose favorable evidence known only to the police, he "should know" when a witness testifies falsely about such evidence. *Jackson v. Brown, 513 F.3d 1057, 1075 (6th Cir, 2008)* and has duty to notify the defense and report it to the court. Here, the Government knew Doucette provided statements about the whereabouts of the Hotel that were inconsistent with other statements received. Doucette also made statements that the crew went directly home after committing the burglary. The Government had information that the crew stayed in a hotel on Sunday, January 18, 2009. The Government purposely did not investigate this inconsistency and allowed Doucette to testify to these false statements at trial without correcting the perjured testimony. The Government exhibited compunction at trial when Doucette elicited this perjured testimony, which confirms the fact that the Government knew of Doucette's perjured testimony. See Murphy Affidavit para. 8.

The perjured testimony of Robert Doucette [c]ould have affected the judgment of the jury. Had the jury been provided "proof" that Doucette perjured himself on material issues, there was a reasonable likelihood that the jury may have reached a different verdict, where the entire case hinged on Doucette's testimony. The Government's actions amount to a travesty of justice requiring a new trial.

Additionally, the Government learned, after two years, that a storage bin was

16

rented in Lynn, MA, at the UHAUL Storage facility. Doucette withheld this information from authorities for two years. In late 2011, the Government obtained video footage from the UHAUL Storage facility. However, no storage records were provided to the Defendant by the Government pertaining to this storage facility. Again, Doucette testified that Morgan rented this particular storage bin. Doucette TR, Vol. 3, p. 127; Vol. 4, p. 24. Morgan averred Doucette rented the storage bin. Morgan Affidavit para. 26. UHAUL records confirm Morgan's averment and prove Doucette perjured himself. Murphy surmises the Government learned this fact and purposely did not produce records to Murphy for this reason.

Therefore, the Court should grant a new trial for the Government's violation of due process by not bringing to the Court's attention, or to the Defendant's attention, the known perjured testimony of Robert Doucette.

**E.** **Actual Innocence**

In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a *§ 2255* motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent. *Vanwinkle v. United States, 645 F. 3d 365, 369 (6th Cir. 2011); Regalado v. United States, 334 F. 3d 520, 528 (6th Cir. 2003); Bousley v. United States, 523 U.S. 614, 622 (1998).*

Here, the Defendant argues the following facts that support actual innocence:

1.      Morgan averred that all the money stolen from BRINKS went into the storage bin in **Eastern Ohio**. Morgan Aff. para. 8. Doucette testified that the stolen money

17

went in the Pennsylvania storage facility. Doucette TR, Vol. 3, p. 164. Morgan averred they could not get into the Pennsylvania storage facility because the key was not there. Morgan Aff. para. 23. Trooper Wohlgemuth testified that he seized the key to the Pennsylvania storage facility on January 23, 2009, the day *before* Morgan and Doucette went to retrieve the stolen money. Wohlgemuth TR, Vol. 2, p. 172;

2.       Morgan averred that **no money** went back to Lynn, MA, until **January 24, 2009**. Morgan Aff. para. 13. Doucette testified the money came back on January 18, 2009, (Doucette TR, Vol. 3, p. 115; Vol. 4, pp. 12-14) which was proven to be false by the Hotel records proving the crew stayed in the Comfort Inn in Mars, PA on January 18, 2009. Nassor testified that he never saw any money when the crew came back from Ohio. Nassor TR, Vol. 1, p. 185;

3.       Doucette admitted that the storage facility that he put the money and tools into "after" the BRINKS burglary was the **first time** he had ever been there and he did not know where it was. Doucette TR, Vol. 4, pp. 106-107. Doucette was caught off guard when the Judge interrupted his testimony and asked Doucette "where" the storage facility was located. Doucette TR, Vol. 3, pp. 106-107;

4.       Doucette testified Murphy wanted the truck to come back empty. Doucette GJ Testimony p. 47. This testimony is consistent with Nassor's testimony and Morgan's affidavit;

5.       Murphy was arrested and held in jail since January 23, 2009. Doucette TR, Vol. 3, p. 177; Costello TR, Vol. 5, p. 81. This establishes Murphy was not part of Doucette and/or Morgan's decision to go to Ohio to remove the money from the Eastern Ohio storage bin and transport it across state lines;

18

6.     Morgan averred he and Doucette split up the money after Murphy got arrested, and that all the money stayed at Doucette's house. Morgan Aff. para 29. Doucette admitted that he and Morgan split up the money at his house after they got back from picking up the tools and the money... after Murphy got arrested. Doucette TR, Vol. 4, p. 104;

7.     Other participants held Murphy's money (Doucette TR, Vol. 3, p. 194) indicating Murphy was not present to take money. Doucette denied holding [a]ny of Murphy's money. Doucette TR, Vol. pp. 217-218. SA Costello testified Doucette told him that he (Doucette) held some of Murphy's money. Costello TR, Vol. 5, p. 79.

The above-stated facts support the position that Murphy was already in jail when Morgan and Doucette made the decision to go out to the **Ohio storage bin** to retrieve the stolen money. Therefore, Murphy was not present when the stolen BRINKS money was transported across state lines. Also, Murphy was not involved in the decision in bringing the stolen money across state lines, nor did he participate in the actual transporting of the stolen money. The stolen money was supposed to stay in Ohio and there was no discussions as to [w]hen it would be moved from the Eastern Ohio storage bin.

Based on these facts, Murphy is "actually innocent" of 18 U.S.C. § 2314 (interstate transportation of stolen goods)(Count 4) and also 18 U.S.C. § 371 (conspiracy). Wherefore, a new trial must be granted.

F.     **Ineffective Assistance of Counsel**

A convicted defendant making a claim of ineffective assistance of counsel

must identify acts or omissions of counsel that are alleged not to have been the result of professional judgment. *Strickland v. Washington, 406 U.S. 668, 690 (1984).* First, the petitioner must show counsel's performance fell below an objective standard of reasonableness. *Strickland, 406 U.S. at 688; Miller v. Francis, 269 F. 3d 609, 615 (6th Cir. 2001).* The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Strickland, 406 U.S. at 689; Miller v. Francis 269 F. 3d at 615.* If found deficient, petitioner must show counsel's performance prejudiced the defendant. *Strickland 406 U.S. at 692; Miller v. Francis 269 F. 3d at 615.* The error by counsel, even if professionally unreasonable, must have an effect on the judgment. There must be a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland, 406 U.S. at 694; United States v. Wagner, 382 F. 3d 598, 615 (6th Cir. 2004).*

In order to provide reasonably effective assistance to their clients, criminal defense attorneys must interview potential witnesses and **make independent investigation of facts and circumstances,** as well as the law, involved in a particular case. *Strickland 406 U.S. at 691; Towns v. Smith, 395 F. 251, 258 (6th Cir. 2005); Clinksdale v. Carter, 375 F. 3d 430, 443 (6th Cir. 2004); Wiggins v. Smith, 539 U.S. 510, 521-522 (2003).*

Here, attorney David Graeff:

1.     Told Private Investigator Gary Phillips to stop investigating all the things Murphy instructed both attorney Graeff and PI Phillips to investigate that was

20

required for the defense at trial. Phillips TR, Vol 6, pp. 6, 9, 11; TR Vol. 1, pp. 3-4; Murphy Affidavit para. 5;

2.      Did not tell Murphy that he told PI Phillips to stop investigating until "after" Murphy fired attorney Graeff, on the eve of Opening Statements. TR Vol. 1, pp. 3-4;

3.      Did not Subpoena Murphy's defense witnesses after stating that he would subpoena them, nor did he speak with the witnesses. TR Vol. 1, pp. 3-4;

4.      Did not tell Murphy that he did not Subpoena the defense witnesses until "after" the Jury was empaneled. TR Vol. 1, p. 4. Eventhough the Government stipulated to certain facts that Murphy was seeking from his defense witnesses, there were other "key" areas that Murphy wanted to elicit testimony and he was thus prevented from doing so;

5.      Told Murphy on the eve of Opening Statements (just prior to Murphy firing him) that "he did not know what he was going to do for a defense" and begged Murphy to plead guilty. TR Vol. 1, p. 4; Murphy Affidavit para. 7;

6.      Told the jury at the voir dire that "he was going to make mistakes and not to hold them against Murphy. Voir Dire, Oct. 13, 2011, p. 71;

7.      Went behind Murphy's back and told the Judge, prosecutor and FBI that Murphy was communicating with Government witness David Nassor, then devised a plan on how the Government could gain possession of the correspondence. TR Vol. 4, pp. 195-198; and

8.      Did not tell Murphy that the Government did not give him Robert Doucette's recorded statement ... until after the verdict.

        Where there is relatively little evidence to support a guilty verdict to

begin with, the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt. *Strickland 406 U.S. at 696; Brown v. Smith, 551 F. 3d 424, 434-435 (6th Cir. 2008); Hodges v. Hurley, 426 F. 3d 368, 376 (6th Cir. 2005)*(finding of prejudice where there was no physical evidence and case turned on credibility of one witness). As discussed *supra*, the only witness placing Murphy in or around BRINKS, or even in the state of Ohio, was Robert Doucette ... who committed extensive perjury at trial. Costello TR, Vol. 5, pp. 32, 59. Therefore, the evidence against Murphy was tenuous at best. Murphy was prejudice by Attorney Graeff instructing the Private Investigator to stop investigating. Had the investigator completed the tasks he was instructed to complete, Murphy would have had proof that Doucette committed perjury. Attorney Graeff was not acting on behalf of Murphy's best interests and his actions amount to ineffective assistance of counsel.

## G.     Interest of Justice

A district court may grant a new trial pursuant to Rule 33 "if the interest of justice so requires." *U.S. v. Garner, 507 F.3d 399, 404-405 (6th Cir. 2007); United States v. Bass, 460 F. 3d 830, 838 (6th Cir. 2006)*. Furthermore, it is widely agreed that Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred.  See *United States v. Wall, 389 F.3d 457, 474 (5th Cir.2004)* (stating that "any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial" (quoting 3 Charles Alan Wright, Federal Practice & Procedure § 556 (3d ed.2004)));
*United States v.Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989)*(stating that Rule 33

22

relief is available where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial"); *United States v. De Miranda, No.2008-20, 2008 WL 5412848, at *3 (D.Vi. Dec. 29, 2008)* (stating that Rule 33 relief is available where defendant "show[s] ... reversible error at his trial"). The violations Murphy has alleged clearly meet this standard. *See United States v. Bass, 460 F.3d 830, 838 (6th Cir.2006)*(acknowledging that defendant may "s[eek] a new trial on the ground that his counsel allegedly rendered ineffective assistance"); accord *United States v. Russell, 221 F.3d 615, 619 (4th Cir.2000); United States v. Mojica, 984 F.2d 1426, 1452 (7th Cir.1993); United States v. Sands, 968 F.2d 1058, 1066 (10th Cir.1992); United States v. Brown, 476 F.2d 933, 935 (D.C.Cir.1973); United States v. Munoz, 605 F.3d 359, 373-374 (6th Cir. 2010).*

**H.**    **Brady Violations**

Murphy filed two discovery motions requesting exculpatory information and *Brady* material. Murphy claims the Government failed to provide him with:

1.    The recorded statement of Robert Doucette;
2.    The video the Government possessed from the business next door to BRINK'S; and
3.    The picture of the smaller hole in vault prior to the hole being enlarged by the fire department.

SA Jason Costello testifed that he did not include all the facts Doucette told him in his report because the statement was recorded. Costello TR, Vol. 5, pp. 96-97. The Government did not give Murphy that recorded statement. Doucette testified to [s]everal matters at trial that did not appear in his Grand Jury testimony or in the FBI 302 Reports. Doucette's recorded statement was critical to the case.

Brady applies to nondisclosure of evidence affecting the credibility of a

23

witness whose "reliability ... may ...be...determinative of guilt or innocense." *Giglio v. U.S., 405 U.S. 150, 153-154 (1992); U.S. v. Blood, 435 F. 3d 612, 627 (6th Cir. 2006).* Here, Robert Doucette was the only witness placing Murphy at the scene of the crime or in the state of Ohio.

BRINK'S General Manager Glen Blankenship testified that a video was recovered from a neighboring business. Blankenship TR, Vol. 2, p. 78. Murphy did not receive this video.

Murphy claimed throughout trial that the Government did not give him a picture of the BRINK'S vault as it appeared upon discovery of the burglary. No witness, at trial, could remember the exact appearance of the vault upon discovery of the burglary. Only a picture of the larger hole in the vault was provided to Murphy at trial.

Withholding the picture of the smaller hole prevented Murphy from establishing that all the money in the vault could not have possibly been broken down from its packaging in the vault, passed out the small hole in the vault, then carried the entire length of the building to the rental truck ...all in less than 2 hours.

The *Brady* doctrine requires production of material in time for its effective use at trial. *U.S. v. Bencs, 28 F. 3d 555, 561 (6th Cir. 1994). Brady* disclosure obligation turns on the "cumulative effect" of all suppressed evidence favorable to the defense, not evidence considered item by item. *U.S. v. Bagley, 473 U.S. 667, 675 (1985).* When all the *Brady* violations are considered in total, Murphy has met his burden in clearly establishing a "reasonable probability" that the outcome of the trial would have been different. The Government's failure to timely turn over records ... required remand. *U.S. v. Garner, 507 F. 3d 399, 404-*

24

*405 (6th Cir. 2007).*

## I.    Cumulative Effect

Murphy's final argument is that even if each of the alleged errors discussed above do not individually constitute reversible error, the cumulative effect of such errors rendered his trial fundamentally unfair in violation of due process.  "Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair." *United States v. Hughes. 505 F. 3d 578, 597-598 (6th Cir. 2007); Walker v. Engle, 703 F.2d 959, 963 (6th Cir.1983);  see also United States v. Hines, 398 F.3d 713, 719 (6th Cir.2005).*

Murphy argues that the cumulative effect of [a]ll the errors contained in his Direct Appeal, which the 6th Circuit deemed not to have reached the threshold of ordering a new trial, should be considered *in toto* for his argument in these proceedings:

1.    The *Brady* violations;

2.    Prosecutorial misconduct;

3.    The violations surrounding the MASTER THIEF manual;

   a.    The prejudicial effect of the manual outweighed the probative value of the evidence;

   b.    Failure of the Court to give any limiting instruction on the MASTER THIEF Manual; and

   c.    Failure of the Court to address or rule upon the (Rule 403) prejudicial effect of the MASTER THIEF Manual.

The Defendant further argues that the cumulative effect of [a]ll the errors argued in these proceedings, *along with* the cumulative effect of the direct appeal errors, require a new trial in the interest of justice;

4.    All the **proven** instances of perjury;

25

5.      The Government's known use of perjured testimony;

6.      Ineffective Assistance of Counsel by attorney David Graeff; and

7.      Defendant's argument of "actual innocense".

All of these issues should persuade the Court to grant a new trial for a

cumulative effect argument in the interest of justice.

**J.      Reply to Government's Opposition**

The Defendant reserves the right to reply to the Government's Opposition

and/or Response to these pleadings.

**CONCLUSION**

For all of the above-stated reasons, this Court should grant the Defendant a

new trial and/or issue the Writ of Habeas Corpus and provide relief.

Respectfully submitted,

Sean Murphy
Defendant

**CERTIFICATE OF SERVICE**

I, Sean Murphy, certify that a true copy of this document has been served upon
the the Assistant United States Attorney Salvador Dominguez.

Sean Murphy

26