# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| SEAN D. MURPHY,<br>Petitioner | Civil No. 2:15...<br>Crim. No. 2: 11... |
| v | Judge George... |
| UNITED STATES,<br>Respondent | Mag. Judge Preston Deavers |

## PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE TO § 2255 PETITION AND MOTION FOR NEW TRIAL

Petitioner, Sean D. Murphy, hereby replies to the Government's Response to the § 2255 Petition and Motion for New Trial (Doc.# 206), pursuant to the Rules Governing § 2255 Proceedings, Rule 5(d).

## OVERVIEW

After reviewing the Government's Response to Petitioner's § 2255 Habeas Corpus Petition and Motion for New Trial, Petitioner states the Government's Response :

- 1 -

(1) Falls short of the procedural requirement necessary to overcome the relief requested in Petitioner's consolidated pleading;

(2) Essentially concedes to [some of] Petitioner's claims;

(3) Amounts to perpetrating a fraud upon the Court that would result in a miscarriage of justice;

(4) Misleads the Court on certain factual issues and legal arguments;

(5) Fails to prove Petitioner crossed state lines with stolen goods as required by 18 U.S.C. § 2314;

(6) Attempts to transform material legal claims supported by the record into minor discrepancies;

(7) Wrongfully asserts there was overwhelming evidence of Petitioner's guilt at Trial, where the "only" witness to place the Petitioner in the State of Ohio between January 17, 2009 and January 18, 2009,

is Robert Doucette, whose Grand Jury
and Trial testimony has proven to be
false; and

(8)     Fails to acknowledge that Petitioner was
taken by surprise by Robert Doucette's
Trial testimony, and, was denied the
ability to investigate based on defense
counsel's actions.

# ARGUMENT

The Government's entire argument at
trial, and, the Government's recitation of the
facts encompassed in their response to the
Petitioner's consolidated § 2255 pleading
focused specifically on proving Petitioner thus
committed the "burglary" of Brink's on the
weekend of January 17, 2009. However,
Petitioner was never changed with the
"burglary" of Brink's. Petitioner was
indicted for Interstate Transportation of
Stolen Goods ("ITS") in violation of 18
U.S.C. § 2314 and Conspiracy to Commit
ITS in violation of 18 U.S.C. § 371 and 2.
As it pertains to the proceedings, the
Government must prove Petitioner crossed

state lines with stolen goods to support a conviction of ITS and Conspiracy to commit ITS. In both instances, the Government failed to meet their burden to overcome the relief requested in the Writ.

At trial the Government only produced the testimony of Robert Doucette to prove Petitioner crossed state lines with stolen goods. In their Response to Petitioner's consolidated § 2255 pleading, the Government conveniently omitted any reference to facts establishing [when] the crew made their way back to Massachusetts after the Brink's burglary. Obviously, because the Government is satisfied with Plaintiff's newly discovered evidence that Doucette lied as to when the crew returned to Massachusetts and in many other areas. Petitioner construes this omission as the Government's conceding to the fact that Robert Doucette committed material perjury at Trial.

Petitioner will explain how Robert Doucette's intentional perjury goes to the core charges of ITS. The Declaration of Joseph Morgan in conjunction with certain matters Private Investigator ("PI") Gary Phillips was instructed to locate and

- 4 -

obtain rental records for that would
affirmatively establish there was a second
storage facility used by the perpetrators
that Robert Doucette [purposely] omitted
from his Grand Jury and Trial testimony.
(Vol. 6, pp. 11-12)

Doucette did testify that the storage
facility used to store the stolen coins and
money in was @ two hours from the
Pennsylvania ("PA") Hotel the crew stayed
at the weekend of the Brink's burglary.
(Vol. 3, p. 206). This is [Key] area where
Doucette got caught up. The PA storage
facility was only minutes away from the
Hotel as proven by Petitioner's Exhibits
attached to his § 2255 pleading. It was
the "Eastern Ohio" storage facility that
was @ 2 hours from the PA Hotel.

Doucette purposely omitted any reference
to the Eastern Ohio storage facility because
an "incident" occurred at that location that
would [change the nature] of the offense(s),
thus qualifying [all] Defendants as Career
Offenders. Doucette's lapse in memory as
it relates to the Eastern Ohio storage
facility ... was complete self-serving.
That is why Doucette's answer to Petitioner's

question regarding the Eastern Ohio storage facility was "I don't recall" (Vol. 3, p. 195). That answer avoided a direct perjury charge for Doucette [if] the Petitioner had the "evidence" of the Eastern Ohio facility. Doucette suspected Petitioner was well-prepared for Trial. He just did not know how-prepared. (Vol.)

Doucette also testified the plan was to come back from Ohio "empty", meaning nothing would come back with the crew. (Grand Jury Minutes, p. 47; attached to Defendant's Exhibits AT TRIAL). David Nasson testified the crew had "no money" when the crew returned to Lynn, MA after the Brink's burglary. (Vol. 1, p. 185). Doucette and Joseph Morgan went to get the money and tools [after] Petitioner got arrested on a unrelated matter on 7/23/2009. (Vol 3, p. 127; Vol. 4, p. 23)

The fact of the matter is Petitioner did not cross state lines with stolen goods. Petitioner is well-versed in the law, a certified paralegal. (Vol. 1, pp. 9-11). Part of the reason for selecting to do crime in Ohio was because of Ohio's fairly lenient laws (Vol. 1, p. 165).

Petitioner has a prior federal offense
involving ITS of a Stolen Firearm.
(Pretrial Investigation Report). Petitioner
Knew [he] could not cross state lines
with stolen goods or it would automatically
"open the door" to federal prosecution and
much stiffer penalties. Therefore, Petitioner
took every precaution to ensure [he]
did not cross state lines with stolen goods.
The Government has acknowledged and
argued this was a spelled-out, sophisticated
[well-planned] heist. If not for the
unforeseen incident at the Eastern Ohio
storage facility, Doucette would not have
purposely omitted that part of the story
in his testimony. No stolen goods at all
crossed state lines on Petitioner's watch.

Petitioner will now address each of
the Government's responses in the order
they appear in their Memorandum.

I    Ineffective Assistance of Counsel.

Petitioner relies on [and refers to]
the argument and caselaw in his original
Memorandum of Law submitted with his
consolidated pleading. In addition thereto,

Petitioner argues:

A. David J. Graeff's Affidavit is without Merit.

Attorney Graeff averred in his Affidavit (Doc. # 207) that:

1. The investigation conducted by PI Gary Phillips continued up to the eve of trial (para. 4) thus implying that he did not tell PI Phillips to stop investigating

This averment is a blatant misstatement. Attorney Graeff told Petitioner on Sunday (night), October 16, 2011, that he told PI Phillips to "stop investigating" @ 2 weeks prior to the Suppression Hearing. When Petitioner asked Atty. Graeff why he told PI Phillips to stop investigating, Atty. Graeff said "I don't know." The next morning, Monday, October 17, 2011, Petitioner told the Court what Attorney Graeff did. Atty. Graeff then told the Court "everything Mr. Murphy said is correct." (Vol. 1, pp. 3-4).

Atty. Graeff's own admission on the day trial commenced contradicts his newly sworn Affidavit.

This uncalled for action by Atty. Graeff "blind-sided" Petitioner and caused Petitioner to proceed Pro-Se as it was abundantly clear Atty. Graeff was NOT acting in Petitioner's best interest.

Additionally, P1 Gary Phillips testified that Atty. Graeff "instructed him to stop investigating" (Vol. 6, pp. 6, 9, 11) which prevented P1 Phillips from completing the majority of the tasks Petitioner needed to be investigated. If there were any reservations as to whether Atty. Graeff instructed P1 Phillips to stop investigating, P1 Phillips trial testimony resolves the matter definitively.

AUSA Salvador Dominguez was present in Court when Atty. Graeff admitted to the Court what he did to Petitioner as it pertains to stopping the investigation and was also present during P1 Phillips testimony. For the Government to [now] argue that the factual record demonstrates the private investigator never stopped working on Murphy's case (Govt's Resp. p. 20) is

- 9 -

simply perpetrating a fraud upon the Court
that would result in a miscarriage of
justice.

Had PI Phillips not been instructed to
stop investigating, he would have located
the Eastern Ohio storage facility based
on Petitioner's detailed instructions as
to where the storage facility was located
and specific charachteristics (sic) of
the storage facility. Locating the storage
facility and obtaining Rental Records
for Brian Hetherman would prove that
Doucette committed perjury, and, that no
stolen goods crossed state lines. The
Govt. realizes this fact. (Govt. Resp.,
p. 25 FN 2).

Regarding the Hotel, Petitioner was
"caught by surprise" when Doucette denied
staying at a Hotel on Sunday, January
18, 2009. When Petitioner addressed the
matter with PI Phillips after Doucette's
trial testimony, PI Phillips reminded the
Petitioner that he could not and did not
complete the majority of the original
tasks he was requested to perform.
There was no way he could locate the
Hotel records and the location of the Hotel

and obtain the necessary information for the
Petitioner within a day or two before the in-
progress trial ended. The Hotel records would
have proven: (1) Doucette committed perjury;
and (2) that stolen goods did not cross state
lines on January 18, 2009, as Doucette
testified to. Petitioner attempted with due
diligence to obtain the information but was
thwarted by his [only] means to produce
the evidence at trial.

2.     Attorney Graeff's "recollection" to
       instruct PI Gary Phillips to not post
       a notice in various colleges and
       universities at the request of Mr.
       Murphy occurred [after] trial had
       commenced while Petitioner was
       proceeding Pro-Se and not during
       the pre-trial stages. (para. 6)

       Furthermore, PI Phillips told Petitioner
       he did post the notice on bulletin boards
       at local colleges. Therefore, Atty. Graeff's
       recollection is misplaced.

3      Attorney Graeff's "recollection" to
       instruct PI Phillips not to send a

a letter to a co-defendant at the
Deleware County Jail also occurred
[after] trial commenced while
Petitioner was proceeding Pro-Se
and not during the pretrial period.
(para. 8) (See Trial Transcript,
Day 6 "Sealed", 10/20/2011, pp.
195-196)

It is important to note that David
Nassor is NOT a co-defendant in this matter.

4.      Attorney Graeff avens that when
Murphy asked him if he had the
Doucette recorded statement, he said
"no" because he did not have the
Doucette tape at counsel's table.
(para. 14)

This averment by Atty. Graeff is a feeble
attempt to deflect the many ineffective errors
made by Atty. Graeff while representing the
Petitioner. First, Petitioner was very clear
when he questioned Atty. Graeff about the
recorded Doucette statement. Atty. Graeff
told Petitioner "he never received it."
Second, if in fact Atty. Graeff [did]

receive the Doucette recorded statement, he had a "duty" to turn it over to Petitioner when Petitioner elected to proceed Pro-Se. Even more so, when Petitioner inquired as to whether Atty. Graeff received Doucette's recorded statement during trial. Atty. Graeff failed to provide Doucette's recorded statement to Petitioner which amounts to ineffectiveness.

5.    Attorney Graeff's recollection that the Doucette recorded statement basically reflected what he testified to (para 15) is factually untrue.

Atty. Graeff cannot independently determine [what] information Petitioner was seeking to discover from the Doucette recorded statement. For instance, Doucette testified that Petitioner went to a local homeless shelter to collect DNA evidence to plant at the scene of Brink's. (Vol. 3, pp 33-34; Vol. 4, pp. 86-87). This alleged statement did not appear in Doucette's Grand Jury testimony, nor did this statement appear on [any] FBI-302 Report. The statement is of material relevance where Petitioner

received a 2-point increase in his base level offense score for Obstruction of Justice for allegedly planting DNA evidence at Brink's. Coincidentally, Doucette does NOT claim to have observed Petitioner collecting the DNA.

Additionally, Doucette's recorded statement would have given Petitioner additional evidence to prove Doucette perjured himself at trial, where Doucette lied no less than 19 times at trial. Some lies were material some not so material. The recorded statement surely would have assisted Petitioner. It was the "omissions" from the recorded statement that Doucette subsequently testified to at the Grand Jury and at Trial that Petitioner was seeking.

For these reasons alone, Atty. Graeff's Affidavit is without merit.

B.      The Government's assertion that the Petitioner did not request the Court to issue Subpoenas for defense witnesses Attorney Graeff failed to Subpoena at Petitioner's request, also lacks merit.

When Atty. Graeff told Petitioner he
instructed PI Gary Phillips to stop investigating,
Atty. Graeff also told Petitioner he did
not subpoena the defense witnesses Petitioner
requested Atty. Graeff to subpoena (Vol. 1,
pp 3-4). Contrary to the Govt.'s assertion
(Govt.'s Resp. pg. 24), Petitioner did request
the Court to issue Subpoenas to defense
witnesses. PI Gary Phillips filled out the
necessary Forms. The Court sided with
the Government and denied the Subpoenas.
(Vol. 1, p 20). Petitioner also wanted to
recall Doucette as a defense witness. *
The Court again sided with the Government
and denied Petitioner's request to recall
Doucette as a defense witness. (Vol. 1, p 224).
Allowing Petitioner to recall Doucette [may]
have affected the jury's verdict.

*(Vol 4,
pp 113, 150-
154)

Petitioner's defense witnesses would also
have testified to what they observed when
the crew returned from Ohio and conversations
amongst the co-conspirators during the
span of the conspiracy. This testimony
would also have contributed to proving
Doucette committed perjury in material areas
of his trial testimony.

- 15 -

In conclusion of the Ineffective claim, Atty. Graeff's pre-trial representation of Petitioner fell measureably (sic) below an objectionable standard of reasonableness. Atty. Graeff's Affidavit contradicts his own admissions made on the record at the beginning of trial and is also in contradiction to Petitioner's averrments and Pl Gary Phillips' trial testimony. The habeas petition should be granted for ineffective assistance of counsel.

## II. Actual Innocense

In addition to Petitioner's arguments, caselaw and exhibits in Petitioner's consolidated pleading, Petitioner replies to the Government's Response as follows, for the actual innocense claim:

Petitioner has claimed that he is actually innocent of the ITS charge. The only Government witness alleging Petitioner crossed state lines with stolen goods was Robert Doucette ... who is a [proven] perjurer.

The crew's plan was to come back home empty (Grand Jury testimony of Robert Doucette, p. 47) or as little as possible (Vol. 3, p. 113). David Nassor testified he never

"saw" or "received" any money when the crew returned from Ohio (Vol. 1, p. 185)

Additionally, if the plan was to come home empty as Doucette testified, then there was no "conspiracy" to cross state lines with stolen goods.

Even though the Government claims the Petitioner proffered his involvement in the caper prior to trial, the Government did not present an admission by Petitioner that he crossed state lines with stolen goods.

Petitioner presented evidence that Morgan and Doucette acted alone [after] the Petitioner was in jail on an unrelated matter in ultimately crossing state lines with stolen goods.

It is important to note that the Petitioner also avoided any reference to the Eastern Ohio storage facility for the same reason(s) Doucette did. More importantly, Petitioner's Proffer letter specifically stated if Petitioner makes any statement not relating to "theft-related" offenses, Petitioner will be prosecuted. This Proffer letter was prepared by and signed by AUSA Salvador Dominguez on January 29, 2010. Therefore, Petitioner was contractually bound to only

discuss non-violent theft-related crimes
or he would be prosecuted.

The Government's assertion that the
Petitioner's actual innocense claim is
baseless is a hollow argument with no
proper support of their argument.

III.    Doucette's Recantation

In addition to Petitioner's original arguments,
caselaw and exhibits in the consolidated
pleading, Petitioner replies to the Government's
Response to Doucette's recantation as follows:

The Government recites the testimony of
witnesses who corroborated Doucette's trial
testimony in [areas] of Doucette's testimony
not contested by Petitioner.

Petitioner concedes that Doucette did not
completely fabricate his entire testimony.
Petitioner argues that Doucette purposely
lied at least nineteen (19) times at Trial,
including telling the jury "he war as honest
as he could be." (Vol. 4, p. 113). Collectively,
the many instances of material perjury, in
conjunction with the many instances of not
so material perjury, should persuade the
Court to grant relief.

The Government argues the Court was in a position to observe Doucette's demeanor and to determine his credibility as he testified (Govt.'s Resp. pp. 29-30). The Petitioner agrees. That is why Judge Smith asked Doucette "where is the rest of the money" on the day Doucette was sentenced, because the Court was skeptical towards Doucette's Trial testimony (Exhibit D of the §2255 Petition). In denying Petitioner's Rule 29 motion, the Court ruled Petitioner did not "prove" Doucette committed perjury (Doc #146). Petitioner has now met his burden.

It is abundantly clear many areas of Doucette's trial testimony were false. It cannot be said that the jury would not have reached a different verdict had the many instances of false testimony been presented to the jury with evidence of its falsity.

The Government's argument that Rob Doucette's testimony was credible and substantially corroborated misleads the Court where Petitioner "proved" Doucette committed perjury in matters material to the charge of ITS.

Doucette recanted in front of an
Anthony Moschopoulos. Doucette admitted
to lying at Petitioner's Trial. That
recantation along with the newly discovered
evidence of Doucette's perjurous statements,
is sufficient to obtain relief.

IV    <u>Motion for New Trial</u>

In addition to Petitioner's arguments,
caselaw and exhibits in Petitioner's original
consolidated pleading, Petitioner replies to
the Government's New Trial Response as
follows:

The Government's argument that Doucette
simply did not recall staying one additional
night in Pennsylvania following the burglary
(Govt. Resp. p. 31) is an attempt to
transform material factual legal matters
supported by the record into minor discrepan-
cies. The Government argues this fact is
[not] material to the burglary itself.
(Govt. Resp. p. 31). However, as argued
above, Petitioner was not charged with
the "burglary" of Brink's. Doucette's
perjurous statements regarding not staying
at the Hotel after the burglary go directly

-20-

to the actual charge of ITS and whether or
not Petitioner crossed state lines with stolen
goods. Doucette testified at the Grand Jury
and at trial that on Sunday, January 18,
2009, the crew drove directly back to Lynn,
MA after the Brink's burglary. Yet, Hotel
records prove that did not occur. So Doucette's
testimony as it relates to crossing state
lines has proven to be false.

The Government argues that Petitioner
could have obtained the Hotel records in
October 2011 with due diligence. That
argument fails. First, Petitioner did
attempt to have PI Phillips locate the Hotel
and obtain guest records for the Hotel,
when Doucette's testimony "caught Petitioner
by surprise." PI Phillips stated he could not
complete the task as the Trial was nearing
its end when Doucette committed the perjury
on cross-examination. Second, when Petitioner
called the Comfort Inn in Mars, PA after
taking 10 months to locate and identify
the Hotel (from jail), the General Manager
of the Hotel told Petitioner they only keep
records for 2 years and did not have the
January 2009 records. The manager would
not tell Petitioner if [any] law enforcement

contacted them regarding William Palavacini
staying at the Hotel on January 18, 2009.
Petitioner then Subpoenaed the Hotel
records and finally obtained the evidence
he needed in June 2013. However, the
Petitioner was "in-transit" back to Ohio
in June 2013 to be resentenced. The
Petitioner was not returned to Bristol
County Jail until December 20, 2013.
Furthermore, Petitioner had to wait for
his 2nd Direct Appeal to be resolved
before he could file the consolidated
pleading. When Rule 33 time limits were
approaching, Petitioner was required to
file the consolidated pleading.

Third, the Government states that [if]
they knew the name of and the location of
the Hotel, they would have subpoenaed the
documents (Govt. Resp. p. 32). Petitioner
did tell the Government the location of the
Hotel, which the Government could have easily
located. The Government did not produce
any information relating to the Hotel because:
(1) their Star Witness, Robert Doucette, was
purposely misleading the Government; and (2)
the Government did not want to provide the
Petitioner with evidence that their Star

Witness was lying. The Government had incentive NOT to produce the Hotel records. Both Petitioner and Joseph Morgan stated the crew stayed at the same Hotel on January 16, 2009 and January 18, 2009.

The Government argues the Joseph Morgan Affidavit does not exonerate Murphy. (Govt. Resp. p. 33). Contrary to the Government's assertions, the Morgan Affidavit does exonerate Petitioner. The Morgan Declaration establishes Petitioner is not guilty of ITS. No stolen goods crossed state lines with Petitioner present. Morgan finally agreed to come forward after reading all the lies contained in Doucette's Trial testimony. Morgan could not let Doucette's perjurous testimony result in a miscarriage of justice. It was Morgan who pointed out to Petitioner the majority of lies as Morgan was with Doucette after the Petitioner went to jail.

Doucette's lies were not mere inconsistencies. Doucette purposely lied under oath, and also, admitted to lying to the Grand Jury (Vol. 3, pp. 168-169; Vol. 4, pp. 21-22) The Government knew Doucette was lying to the Court and to the jury. The

Reaction of the prosecutor when Doucette
denied staying at the Hotel on Sunday,
January 18, 2009, were clear and convincing
The prosecutor exhibited compunction. The
Government's only response was "the Government
had no affirmative proof the crew spent the
night in Pemsylvania." (Govt. Resp. p. 36).
Petitioner construes that statement by the
Government as an admission that it had
information the crew stayed at a Hotel after
the Brink's burglary. More importantly, the
Government does not deny it had information
the crew stayed at a Hotel near the PA
storage facility on January 18, 2009.
    The Government further argues that
Doucette's testimony reflects his "recollection
of events" and there is no way Murphy can
argue that Doucette's characterization of
false testimony were not the result of
confusion, mistake or faulty memory. (Govt.
Resp. p 36). Unfortunately, the Government
did not review Petitioner's cross-examination
of Doucette at trial. Petitioner specifically
asked Doucette if he remembered doing
laundry at the Hotel while the crew went
back to Brink's to see if police discovered
the burglary (Vol. 3, pp. 212-213). Doucette

affirmatively denied it and stated why would
we do that, it makes no sense. Petitioner
told the Government the crew went back to
Brink's on Sunday, January 18, 2009 to
see if the burglary had been discovered.
For the Government to argue that Doucette's
testimony was not "false testimony" misleads
the Court and amounts to perpetrating a
fraud upon the Court.

The Affidavits of Joseph Morgan and
Anthony Moschopoulos were obtained: (1)
[Morgan's] shortly after he read Doucette's
trial testimony; and (2) [Moschopoulos']
after Doucette was released from federal
prison in 2013 and returned to Lynn, MA
to make the statements in front of Anthony
Moschopoulos. Petitioner presented the
statements with his timely filed consolidated
pleading. Therefore, Petitioner did not
"sandbag" as the Government contends.

V.  The 25 Allegations of Doucette Perjury

The Government responds to Petitioner's
detailed account(s) of Doucette committing
perjury by claiming: Doucette was confused;
mere discrepancies; not material; only

- 25 -

Fodder; impeachment material; Doucette mixed up the names; inconsistencies and the jury apparently believed Doucette.

As it pertains to #5, evidence of the crew returning to Brink's on January 18, 2009 was presented by the extra 452 miles on the rental car that Doucette pawned off as Murphy driving the car around Lynn, when it was established that the rental car stayed in Doucette's driveway until Murphy was arrested two days after returning from Ohio. (Vol. 4, pp 16-18)

As it pertains to #9, the "only" key to the PA storage bin was seized by State Police on January 23, 2009, in Murphy's residence ... not in PA (Vol. 2, p. 172)

As it pertains to #13, no "wet" money was seized at Murphy's residence. No Report or testimony stated the money seized was wet.

As it pertains to #23, had Murphy presented evidence of Doucette's blatant perjury (as he does now) the jury may have reached a different result.

When the Court reviews [all] of the Doucette lies collectively, it cannot be said Petitioner received a fair trial.

# CONCLUSION

In conclusion, the Government's Response falls short of the procedural requirement necessary to overcome the relief requested in Petitioner's consolidated pleading. The record is sufficiently clear for the Court to grant the Petition.

Respectfully submitted,

Sean O. Murphy
Bristol County Jail
400 Faunce Corner Rd.
Dartmouth, MA 02747

Dated: 6-2-2015

## DECLARATION 28 U.S.C § 1746

I, Sean O. Murphy, declare that a copy of this Reply has been sent to AUSA Salvador Dominguez, and also to the Clerk, by placing it in the prison mailbox on this date, postage prepaid; under the penalties of perjury

Sean D. Murphy