UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SEAN D. MURPHY, )
    Petitioner )
               )    Case No. 2:14-CV-1706
    v. )   Crim. No. 2:11-CR-010(1)
              )   JUDGE GEORGE C. SMITH
UNITED STATES )   Mag. Judge. Elizabeth Deavers
    Respondent )

PETITIONER SEAN D. MURPHY'S OBJECTIONS
TO REPORT AND RECOMMENDATION

    Petitioner/Defendant, Sean D. Murphy, hereby files his objections to the Report and Recommendation filed on May 11, 2016, by Magistrate Elizabeth P. Deavers. The Petitioner received the Court's ruling on May 16, 2016[1]. This objection is timely filed pursuant to Rule 8(b) of the Rules Governing § 2255 Cases, and the "Mailbox Rule" Rule 3(d) of the Rules Governing § 2255 Proceedings.

---

[1] See, Causey v. Cain, 2006 U.S. Dist LEXIS 95418 FN 2 (5th Cir. 2006).

- 1 -

# ARGUMENT:

In addition to the Objections to the Report and Recommendation ("R&R") contained herein, Petitioner incorporates all arguments, exhibits, affidavits and declarations from the original pleadings [ECF Nos. 184, 185, 186, 187 and 188] into these Objections and [ECF 206 and 207].

I.    Motion for New Trial - Claim One

a.    Petitioner objects to the Magistrate Judge's proposed finding that the Comfort Inn Hotel documents do not constitute newly discovered evidence that Petitioner could not have obtained earlier. (R&R, p. 23).

In support of the finding, the Court noted that : (1) Petitioner knew the location of the Hotel ; (2) the name under which the defendants registered the room; (3) the location of the Pennsylvania ("PA") storage facility they used ; (4) and the location of any purported Ohio storage facility ; (5) Petitioner had access to all pertinent information he needed to acquire documentation on records to support his claim that the defendants stored proceeds of the burglary in Ohio, and spent the night at a

- 2 -

Comfort Inn in PA under an assumed name; and (6) had the information needed to obtain documents to establish the proximity of the hotel to the PA storage facility. (R & R, p. 23).

The Court erred in making the finding that the Comfort Inn documents do not constitute newly discovered evidence that Petitioner could have obtained earlier.

First, Petitioner did not know that Doucette was going to lie about staying in the Hotel on January 18, 2009 until the 3rd day of Trial, when Doucette testified he and the crew drove straight back to Lynn, MA on January 18, 2009. (TR Vol. 3. pp. 123-124). This "surprised" the Petitioner. On the same date, Petitioner cross-examined Doucette on the matter. (TR Vol. 3 p. 212). It was only then that Petitioner knew Doucette perjured himself regarding a material fact.

Second, Private Investigator Gary Phillips ("PI Phillips") did not return to Court until October 24, 2011, the 5th day of Trial. At that time PI Phillips told Petitioner that there was no way he was going to complete the [m]ajority of tasks he was instructed to investigate back in August 2011, never mind

- 3 -

track down a Hotel that [no]one Knew the name of.[2/]

Third, it took Petitioner approximately one-year to locate the Comfort Inn using friends and a Massachusetts Private Investigator, Richard Ferreira. Then another three months to subpoena the Comfort Inn documents because the Manager of the Comfort Inn, Carla O'Connor, told Petitioner's agents that the documents did not exist and a Subpoena would do no good because the Comfort Inn only retains records for two years. However, the Subpoena "produced" the documents needed.

Therefore, the Comfort Inn documents were "newly discovered" and Petitioner had no chance at obtaining the Hotel records before the Trial's conclusion, where Plaintiff only learned of the perjury on the 3rd day of a 5 day Trial, and, where PI Phillips told Petitioner he could not perform [e]xisting tasks. The Petitioner has clearly satisfied the four prongs of United States v. Turns, 198 F. 3d 594, 586 (6th Cir. 2000) that (1) the evidence was

_____

[2/] Neither Doucette, Morgan nor Murphy Knew the name of the Hotel.

- 4 -

discovered after trial; (2) it could not have been discovered earlier with due diligence; (3) it is material and not merely cumulative or impeaching; and (4) it would likely produce an acquittal if the case were retried.

First, the evidence was discovered "after" trial as discussed above. Second, it could not have been discovered earlier with due diligence based on the actual discovery of the material perjury near the end of trial, and, the failure of P.I Phillips to complete the majority of tasks he was instructed to perform in August 2011, nevermind new tasks. Third, the evidence is critically material to the case and not merely cumulative or impeaching. Where Doucette (1) lied about the itenerary of the crew [after] the Brink's burglary; lied about the time line of the return to Lynn, MA after the Brink's burglary; lied about staying in a Hotel on the night after the burglary; and lied about Nassor being present to split up the stolen Brink's money ..., it is absolutely material to the case and these proceedings. The evidence subpoenaed from the Comfort Inn proves Doucette lied and Nassor's testimony supports that contention. Petitioner's Affidavit further supports the argument and evidence that Doucette lied.

- 5 -

Morgan's Declaration [ECF No. 188], although not "primary" evidence, certainly corroborates the admissible evidence (as secondary evidence) that Doucette lied repeatedly in material and non-material matters.

The Petitioner is charged with Interstate Transportation of Stolen Goods ("ITS") that allegedly occurred smack-dab in the middle of where Doucette lied to the jury. Doucette said Murphy crossed state lines with stolen goods on January 18, 2009 and proceeded to Lynn, MA. The evidence proves that to be untrue. Doucette testified the truck was to come home empty (Grand Jury Testimony, p 47). That was the truth. There was no plan in place to take the stolen goods out of Ohio. Murphy is an experienced paralegal who knows the law. The reason for choosing Ohio was because of its lenient (state) laws. Murphy certainly knew the federal implications and took precautions. The only evidence of a conspiracy to cross state lines with stolen goods and the actual crossing of state lines with stolen goods came from Doucette right in the area that he got caught lying. There is no corroborating evidence of ITS other than Doucette's proven lies.

- 6 -

b.    Petitioner objects to the Magistrate Judge's finding that nothing prevented Petitioner from providing Phillips or defense counsel with information that would have enabled Phillips to obtain the documents Petitioner now submits in support of his claim prior to trial. (R&R, p 24).

The Court erred in finding that Petitioner could have obtained the documents "prior to trial". As stated above, Petitioner did not know he was going to need [the] Hotel documents until the end of day 3 of the Trial [3]. Therefore, Petitioner could not have obtained the documents prior to Trial.

c.    Petitioner objects to the Magistrate's finding that Petitioner did not notify the Court he needed additional time to obtain evidence for the defense.

It is without dispute, that the Court was not going to "suspend" the Trial on the 4th day in order for Petitioner to conduct further

---

[3]    Petitioner calls for an Evidentiary Hearing where PI Phillips testifies as to whether he could have timely located the Hotel without the name of the Hotel in 2 days, and, Comfort Inn Manager Carla O'Connor states what she told PI Ferreira.

-7-

investigation to prove Doucette was lying. The Court would not even allow Petitioner to recall Doucette as a defense witness. (TR Vol. 4, p. 154).

d. Petitioner objects to the Magistrate Judge's finding that this Court is not persuaded that any of the evidence Petitioner refers to, or any of the Petitioner's claimed instances of perjury by Doucette lends credibility to his claim that he is innocent of the crimes charged or constitutes material evidence of an exculpatory nature that likely would have produced an acquittal. (R&R, p. 24)

As discussed above, Doucette's testimony is the [o]nly evidence that stolen goods from Brink's crossed state lines on Petitioner's watch. There is no corroborating evidence, circumstantial or otherwise, to support the Government's case that Petitioner crossed state lines with stolen goods. In fact, the evidence supports Petitioner's claims. It is obvious that Doucette lied when he testified the crew drove straight back to Lynn on January 18, 2009 and did not stay at a Hotel. It was [only] Doucette's testimony that stolen goods from Brink's went back to Lynn on January

18, 2009.  Nasson's testified he was present [at Doucette's house] to clean the truck and return it.  Nasson also testified he never saw any stolen money at Doucette's house. (TR Vol. 1, p. 185).  Nasson did not receive any money until after Murphy's arrest.  Doucette's testimony of what occurred "after the Brink's burglary" is perjurous, uncorroborated, and inconsistent.  Even the Court questioned Doucette's credibility when the Court asked Doucette where the rest of the money was, when Doucette got sentenced.  (See Exhibit B, attached).  Murphy obviously convinced the Court that Doucette was lying.

On Rule 33 motion, the district court may weigh evidence and assess credibility of witnesses.  United States v. Solorio, 337 F. 3d 580, 589 FN6 (6th Cir. 2003); United States v. Matthews, 298 Fed. Appx. 460, 465 (6th Cir. 2008).  Petitioner requests the Court to assess the credibility of Doucette.

e.  Petitioner objects to the Magistrate Judge's finding that the Comfort Inn documents do nothing to call into question the substantial evidence indicating the Petitioner did conspire to and plan and burglarize Brinks, and

- 9 -

transport the proceeds of the burglary across state lines. (R&R, p. 24).

First and foremost, Petitioner is not charged with burglarizing Brinks. Petitioner concedes there was sufficient evidence to prove the planning and execution of the Brinks burglary at Trial. However, the evidence supporting ITS is tenuous at best and strewn with Doucette's lies. For the Court to find that there was substantial evidence to transport the proceeds of the burglary across state lines and the Comfort Inn documents do nothing to call into question the "substantial evidence" of ITS ... was error.

F.    Petitioner objects to the Magistrate Judge's ruling that neither Morgan's Declaration on Moschopoulos' Declaration constitute the type of material evidence sufficient to justify a new trial. (R&R, p. 24).

As discussed above, although Morgan's Declaration [ECF No. 188] may not be "primary" evidence sufficient to justify a new Trial, it is certainly "secondary" evidence that corroborates (1) the subpoenaed Comfort Inn documents and U-HAUL documents; (2) Murphy's Affidavit; and (3) Nassor's testimony at

Trial. The Moschopoulos Declaration [ECF No 197] is supported and corroborated by PI Richard Ferreira's interview of Doucette on 5-26-2015.[4] (Exhibit A, attached).

In the interview of Doucette, PI Ferreira showed Doucette the records from the Comfort Inn establishing William Palavacini stayed at the Hotel on Sunday, January 18, 2009. Only then did Doucette say it was possible they stayed in a Hotel overnight. At trial, Doucette was adamant that the crew drove straight back to Lynn. When questioned about what the crew did on that night (drove back to Brinks), Doucette clearly denied that happened. (TR. Vol. 3, 211-213).

Also at trial, Doucette stated two or three times that he was up for 100 hours straight. (TR Vol. 4, pp 4, 16, 17, 107, 109). Now Doucette tells PI Ferreira he was up for 36 hours straight, which is about right.

At Trial, Doucette testified that it was Joe Morgan who went in U-HAUL to rent the storage bin. (TR Vol. 3, p. 127; Vol. 4,

---

[4] Petitioner moves the Court to accept PI Ferreira's report of the interview of Doucette as new evidence in this matter. The interview had not been given to Petitioner prior to filing deadlines of the Petition.

p. 24). After PI Ferreira "tells" Doucette
the surveillance video shows him at the U-HAUL
customer service desk, Doucette admits to being
[in]side U-HAUL. Doucette acknowledges the
"Bogart" alias and states he never signed
anything ... which is true. The U-HAUL
contract is unsigned and no ID was produced.

g.    Petitioner objects to the Magistrate Judge's
finding that the Morgan Declaration and
Moschopolos Declaration at most, constitute
impeachment evidence. (R & R, p. 24)
        The Declarations are not "impeachment"
evidence. They are evidence supporting the
Petitioner's claim that Doucette committed perjury
in a material manner requiring a new trial.

h.    Petitioner objects to the Magistrate
Judge's finding that nothing in the record
supports Petitioner's claim that Doucette lied
when testifying against Petitioner. (R & R, p. 24).
        This finding is clear error. The
subpoenaed Comfort Inn documents alone
establish Doucette lied at Trial. Petitioner's
Affidavit establishes Doucette lied at Trial.
Nasson's testimony establishes Doucette lied at
Trial. PI Ferreira's interview of Doucette

establishes Doucette lied at Trial.

i.    Petitioner objects to the Magistrate
Judge's finding that Doucette's testimony was
corroborated by other evidence submitted at
Trial. (R&R, pp. 24-25).

There was absolutely no corroboration
of Doucette's testimony involving Petitioner
crossing state lines with stolen goods from
Brinks. As a matter of fact, the "evidence"
contradicts Doucette's testimony in that area.

The only "corroboration" of Doucette's
testimony at Trial was documents and testimony
regarding what (1) occurred "prior to" the Brinks
burglary; (2) "during" the Brinks burglary; and
(3) "after" Murphy got arrested on 1-23-2009.
There is no corroboration of Doucette's story
from the time the burglary was completed on
the early morning hours of Jan. 18, 2009,
until after Murphy's arrest on 1-23-2009.

j.    Petitioner objects to the Magistrate
Judge's finding that virtually all of
Petitioner's claimed instances of perjury by
Doucette simply do not involve material
facts in regard to Petitioner's guilt.
(R&R, p 25)

-13-

As discussed above, Petitioner's instances of Doucette's perjury, as they relate to Petitioner [a]llegedly crossing state lines with stolen goods are material facts in regard to whether or not Petitioner is guilty of ITS.

In addressing specific instances, the Court omitted (1) the Eastern Ohio Storage Facility; and (2) staying in a Hotel on January 18 2009. (R&R, p. 25).

Petitioner concedes that [s]ome of his claimed instances of perjury by Doucette [m]ay not be material. However, there are many instances of perjury that are material and the [non]material instances of perjury, effectively bolster the material instances.


K.    Petitioner objects to the Magistrate Judge's finding that the record fails to support the Petitioner's claim that Doucette committed perjury, that the prosecutor knowingly presented perjured testimony, or that newly discovered evidence establishes Petitioner's innocence or justifies a new trial or will warrant habeas relief. (R&R, p. 25)

It is clear based on the record, that Doucette committed perjury. To state otherwise is absurd. The newly discovered evidence does

- 14 -

establish Petitioner's innocence of ITS and justifies a new trial and/or habeas relief. The evidence also establishes the prosecutor knowingly presented perjured testimony. (See below).

Recantation.

i. Petitioner objects to the Magistrate Judge's ruling that Doucette has not recanted his trial testimony. (R & R, p 29).

In addition to telling Moschopoulos that he (Doucette) regrets lying at Murphy's trial, Doucette admitted to P.I. Ferreira that (1) he now admits it was possible the crew stayed at a Hotel on January 18, 2009, only after being shown the Hotel records (Exhibit A); (2) that he was only awake for 36 hours, where at trial, Doucette repeatedly claimed he was awake for 100 hours; (3) Doucette "feels bad" for Murphy; and (4) Doucette now admits he went inside U-HAUL when the storage bin was rented, where he denied that at Trial.

At trial, Doucette affirmatively denied all of the above facts. Petitioner was fortunate to "prove" these lies. All the instances of perjury listed on Petitioner's

Memorandum of Law [ECF No. 184] are all "actual lies" Doucette told at Trial.

When the motion for new trial is based on recantation of a material government witness, the motion should be granted only if: (1) the court is reasonably well satisfied that the trial testimony given by the material witness is false; (2) without the false testimony, the jury might have reached a different conclusion, and (3) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial. United States v. Willis, 257 F.3d 636, 642-643 (6th Cir. 2001); Gordon v. United States, 178 F.2d 896, 900 (6th Cir. 1949).

It is readily apparent that the trial testimony of Doucette was false and that Doucette was a material government witness. The jury most certainly [m]ight have reached a different conclusion had Petitioner presented proof of the false testimony, given the lack of any corroboration of ITS. The Petitioner was taken by surprise when Doucette lied and could not meet it before the trial concluded. (See above, pgs. 2-4). Petitioner has met his burden on this claim.

- 16 -

<u>Government presented perjured testimony</u>

m.    Petitioner objects to the Magistrate Judge not making any findings in regards to Petitioner's claim that the prosecutor knowingly presented perjured testimony at trial.

The Court cited caselaw applicable to the claim. (R&R, pgs. 20-21). However, no findings were issued.

n.    Petitioner objects to the Magistrate Judge not mentioning that the prosecutor "admitted" he had knowledge and information that the burglary crew stayed in a Hotel on January 18, 2009, near the PA storage facility. Petitioner averred he told the prosecutor the crew stayed in a Hotel on January 18, 2009, near the PA storage facility [ECF No 200].

The prosecutor's statement that the government did not have "affirmative proof" that the crew stayed in a Hotel on Sunday, January 18, 2009, is an admission. (See Government's Reply, ECF 206, p. 36, Page ID 2828). The government investigated every lead, document, witness and piece of evidence in this matter. The government "chose" not to investigate the Hotel the crew stayed in

on January 18, 2009, after the Brinks burglary
presumably because the government knew
Doucette lied about it. There is no other
reason why the government did not produce
the Hotel records or summons the Hotel
employee at trial. The government certainly
did so for "every other" document or witness
in this case.

In order to prevail on a claim that the
government presented perjured testimony, [the
petitioner] must show (1) that the statements
were actually false; (2) the statements were
material; and (3) [the] prosecutor knew they
were false. United States v. Pierce, 62 F.3d
818, 834 (6th Cir. 1995).

It has already been demonstrated that
(1) the statement Doucette made to the jury
denying he stayed in a Hotel on January 18,
2009, was actually false; (2) the statement
was material as to whether Petitioner actually
crossed state lines with stolen goods from
Brinks; and (3) the prosecutor knew the
statement was false ... by his own admission.
Nothing more is required. Petitioner incorporates
all arguments contained herein regarding the
materiality of how and why Doucette's lie(s)
are material facts.

o.   Petitioner objects that the Magistrate Judge did not mention that Petitioner averred [t]he prosecutor exhibited compunction when Doucette committed this perjury.

The prosecutor did not deny he visibly exhibited compunction when Doucette testified he did not stay in a Hotel on Sunday, January 18, 2009.  (Govt's Response , ECF 206]

## Certificate of Appeal

Should the Court ultimately rule against the Petitioner on all the above claims, as they relate to the Motion for New Trial, Petitioner respectfully request the Court to issue a Certificate of Appeal on the above claims.  (See Section III.)

II.   ## Motion to Vacate 2255

a.   ## Brady Claim - Claim Five

The Sixth Circuit in United States v. Murphy, 518 Fed. Appx. 396, 402-403 (6th Cir. 2013) stated Murphy has not demonstrated any of the information he seeks would have changed the outcome of the trial given the substantial evidence against him.

For this reason, we deny Murphy's Brady claim.

Now that Petitioner has "evidence" of Doucette's perjury, the recorded statement of Doucette would have certainly given Petitioner further evidence of Doucette's lies [5].

[I]f it was Attorney David Graeff who did not give Petitioner the recorded Doucette statement, this would [add to] Petitioner's Ineffective Assistance of Counsel claim.

## b   Ineffective Assistance of Counsel

1.   Petitioner objects to the Magistrate Judge's finding that Petitioner's claim that Attorney Graeff went behind his back and told the Judge, prosecutor and FBI agent that Murphy was communicating with Nassor ... Petitioner provides no further specifity regarding this claim, and the record does not support a claim of the denial of the effective assistance of this basis. (R:R, p. 29, FN 13).

The record does provide specifity on this issue. (See TR of Jury Trial — Day 6 — Sealed

---

[5]   It is important to note, that to date the Petitioner has "never" been given Doucette's recorded statement.

-20-

Portion; an extention of Vol. 4, pp 195-198).

Where Attorney Graeff went to the Trial Judge, prosecutor on the case and the FBI Agent on the case to devise a plan against Petitioner's interests and rights, Attorney Graeff was clearly not acting in Petitioner's best interest or on his behalf. Attorney Graeff was working "with" the opposition instead of just refusing to mail the letter. This was clear ineffective assistance. The Court should have removed Attorney Graeff from Petitioner's case. Petitioner could NOT object because all of this was "hidden" from Petitioner. (See Transcript).

   2.   Petitioner objects to the Magistrate Judge not incorporating caselaw that an attorney must make independent investigation of facts and circumstances in order to provide reasonably effective assistance to their clients. Towns v. Smith, 395 F. 3d. 251, 258 (6th Cir. 2005).

   Attorney Graeff had a duty to investigate the matters Petitioner instructed he and PI Phillips to investigate. By Attorney Graeff instructing PI Phillips to stop investigating 10-14 days before trial and before PI Phillips could complete the tasks he was

instructed to investigate amounts to ineffective assistance of counsel.

Attorney Graeff's actions deprived the Petitioner his ability to mount a meaningful defense. Petitioner was prejudiced by Attorney Graeff's actions. Had PI Phillips completed the tasks he was instructed to investigate, Petitioner may have been able to prove he did NOT cross state lines with stolen goods. Attorney Graeff was not functioning as defense counsel when he (1) told PI Phillips to stop investigating with no reason; and (2) when he devised a plan against Petitioner to intercept a letter sent from Petitioner to Nassor with the Judge, prosecutor and FBI agent. See, Strickland v. Washington, 466 U.S 668, 687 (1984)

3. Petitioner objects to the Magistrate Judge's finding that nothing in the record supports Petitioner's claim that Phillips could have obtained evidence that Doucette lied or that Phillips could have obtained any information exculpatory to the defense, but for the actions of defense counsel. (R & R, p. 35).

Had PI Phillips worked with Petitioner, he certainly would have been able to locate

-22-

the Eastern Ohio storage facility. The initial information provided would have allowed PI Phillips to compile a list of [p]ossible locations that could be narrowed down to pinpoint the actual storage facility. PI Phillips testified if he had more time he would have identified more possibilities, yes. (TR Vol. 6, p. 12).

Additionally, had PI Phillips even attempted to locate the [o]ther things he was specifically instructed to investigate, Petitioner may have been able to prove Doucette lied and the jury may have discredited Doucette's testimony...

4.    Petitioner objects that the Magistrate Judge did not mention that Attorney Graeff told the jury he was going to make mistakes. During the Voir Dire, Graeff told the jury he was going to make mistakes. (Voir Dire, p. 71)

Attorney Graeff knew he had "already" did things to Petitioner's defense that were detrimental to the defense. These statements contribute to Petitioner's claim of ineffective assistance of counsel.

5.    Petitioner objects to the Magistrate Judge's finding that Phillips did not indicate.

that Petitioner ever requested him to obtain records from the Comfort Inn regarding the names of guests who stayed at the hotel on the night of January 18, 2009. (R&R, p. 35).

Petitioner "did" discuss the matter of the Hotel when PI Phillips came back to Court on Monday, October 24, 2011. PI Phillips told Petitioner he could not complete the "majority" of tasks he was previously instructed to investigate and where no one remembered the "name" of the hotel, PI Phillips told Petitioner there was insufficient time to even begin an investigation.

Petitioner calls for an Evidentiary Hearing where PI Phillips can testify to these facts, or what he remembers.

6. Petitioner objects to the Magistrate Judge's finding that Phillips stated the Petitioner failed to provide him with adequate information to identify the location of any Eastern Ohio storage facility. (R&R, p. 35).

As stated above, it was "time restraints" that prevented Phillips from being able to locate the Eastern Ohio storage facility, not in-adequate information. PI Phillips testified

if he had more time he would have identified
more possibilities, yes. (TR Vol. 6, p. 12).

7. Petitioner objects to the Magistrate
Judge's finding that the record likewise does
not indicate that Petitioner provided Phillips with
necessary information to obtain records that
would purportedly show that Petitioner rented
an Ohio storage unit for storage of the
Brinks burglary. (R&R, p. 35)
    Petitioner provided PI Phillips with all
the information he could provide, including that
the storage bin was rented under the name
Brian Hetherman, Petitioner believed the
storage facility was located off of Rt. 7,
that the storage bins were orange and the
facility was about an hour from the Ohio/
Pennsylvania border.

8. Petitioner objects to the Magistrate
Judge's finding that Petitioner, himself, had
knowledge of the facts that would have enabled
Phillips to acquire such information from
the outset of Phillips' investigation of the
case. (R&R, p. 35)
    As discussed above, Petitioner provided
PI Phillips with all the information he could

- 25 -

provide.  It was Attorney Graeff who prevented PI Phillips from completing the investigatory tasks, not the Petitioner.  The Court erred in making that finding.

9.  Petitioner objects to the Magistrate Judge's finding that even had Petitioner obtained such information, it would have provided him with no more than potential impeachment evidence. (R&R, p 35).

Had Petitioner been provided with all the information PI Phillips was instructed to investigate and obtain, Petitioner would have been able to provide the jury with evidence that Petitioner did not cross state lines with stolen goods from Brinks and that all proceeds remained in the Eastern Ohio Storage facility; and that Doucette lied.

10.  Petitioner objects to the Magistrate Judge's finding that as to counsel's conduct before Petitioner proceeded pro-se, Petitioner's decision to represent himself makes it "virtually impossible to apply the Strickland test; the outcome of the cases depended on both counsel and [Petitioner's] conducts". (R&R, p. 37).

-26-

Attorney Graeff is [s]olely responsible for instructing PI Phillips to stop investigating without giving "any" reason for doing so. Petitioner had no part in that sabotage of the case. As a matter of fact, Petitioner attempted to correct Attorney Graeff's malicious actions by reactivating PI Phillips to complete the tasks he was originally instructed to investigate. Unfortunately, PI Phillips could not undo what Attorney Graeff did.

11. Petitioner objects to the Magistrate Judge's ruling that the record does not support Petitioner's claim of actual innocence. (R÷R, p. 38).

The Comfort Inn documents, Petitioner's Affidavit, Morgan's Declaration, Moschopoulos' Declaration and PI Ferreira's Report all support Petitioner's claims that Petitioner did not cross state lines with stolen goods. Also, Nasson's testimony supports the claim.

12. Petitioner objects to the Magistrate Judge's ruling that the record fails to support any of his claims of alleged error. (R÷R, p. 38). (See above).

## Certificate of Appeal

Should the Court ultimately deny the Petitioner's 2255 Claims, Petitioner respectfully requests the Court to issue a Certificate of Appeal on his 2255 Claims.

III.   ## Applicable Standard

The Defendant need only show a "reasonable likelihood" that the false testimony could have affected the jury. United States v. Agurs, 427 U.S. 97, 103 (1976).

Petitioner has clearly met that standard. Doucette's testimony throughout the trial was "in detail". Doucette did not merely [not recall] staying in a hotel on Sunday, January 18, 2009. Doucette specifically denied staying in a Hotel after being reminded of what occurred that evening. Any claim of "loss of memory" carries no weight after being reminded of what occurred and then Doucette adamantly denies it. There is no doubt that Doucette's lies could have affected the jury [i]f the Petitioner had the proof he needed.

Court ordinarily conducts evidentiary hearing on recantation, but in [s]ome

instances, may be able to assess credibility without hearing. <u>United States v. Pearson</u>, 203 F.3d 1243, 1274-1275 (10th Cir. 2000). Petitioner calls for an evidentiary hearing on the recantation claim, the ineffective assistance claim and the prosecutorial misconduct claim[6].

As to Petitioner's Rule 33 Motion for New Trial, all the claims under the Rule 33 motion need a [s]eparate Notice of Appeal, as those claims do not need a Certificate of Appeal. See, <u>United States v. Hatfield</u>, 815 F.2d 1068, 1073 (6th Cir. 1987).

Petitioner requests the Court to include his Reply to the Government's Response [ECF No. 207] when reviewing the record. This is Petitioner's last procedural chance to obtain relief from the Courts. Based on the evidence, relief is warranted. Sometimes jurisprudence requires the Court to call a spade a spade. Eventhough the Government had a strong case to prove the Brinks burglary, their case proving ITS was very weak with no corroboration.

---

[6]     It is possible that the Government and the Petitioner [m]ay come to an agreement when the Petitioner is brought back to Ohio to resolve the matter.

## Representation

Petitioner requests the Court to appoint the current attorney of record, Colter Paulson for (1) any evidentiary hearing; or (2) the ensuing appeal to the 6th Circuit Court of Appeal.

Respectfully submitted,

S S

Sean Murphy
Bristol County Jail
400 Faunce Corner Rd.
Dartmouth, MA 02747

Dated: 5-23-2016

## CERTIFICATE OF SERVICE

I, Sean Murphy, certify that I have sent a true copy of this pleading to AUSA Salvador Dominguez, by first class mail.

S S

Sean Murphy

<u>DECLARATION</u> - 28 U.S.C. § 1746

I, Sean O Murphy, declare that a copy of these Objections to the R&R were placed in the jail mailbox on May 23, 2016, postage pre-paid address to the Clerk of Court, U.S. District Court, Columbus, OH 43215.

Signed under the penalties of perjury.

Sean Murphy

# EXHIBIT  A

*Interview of Robert Doucette, DOB- 05/05/1969, of 11 Silver Street, Haverhill, Massachusetts, 01832, Tel# (978) 457-3206, On 05/26/2015:*

*As a result, **On Tuesday 05/26/2015,** I drove to Frank's Auto Clinic, in Haverhill Ma., arriving there at approximately 1:00pm, where I met with and was able to question Robert Doucette, who was surprisingly very cordial and cooperative with me, and answered the following questions that I posed to him about the matter at hand:*

*Q. Do you know anything about an Insurance Claim regarding Bad Peanut butter, that was sold at Trader Joe's ?*
*A. I have no idea what you're talking about*

*Q. Do you know the current whereabouts, and/or anything about the following items being taken from Sean Murphy, that he had stored away -- Heated Power Washer, Gas Powered Mini Roto Tiller, Free Standing Air Conditioner, Snap-On Battery Charger, Shop Vac, and $5,000.00 in Cash ?*
*A. No, I don't know anything about these items, I certainly didn't take them, and The FBI could have taken them, because they had raided the Warehouse and went into 6- different spaces, searching through them, and just throwing things everywhere, to include property that belonged to me, that I had stored there from My Mother's property, after she had passed on.*

*Q. In your testimony, you testified that you did not stay at a Hotel on Sunday, January 18th, 2009, after the Brinks Burglary was completed, and that the entire Crew drove directly from the burglary, back home, without having stood over at any hotel or motel -- Seeing that the Comfort Inn records for that date, show that a Mr. William Palavacini had stood at the hotel, from January 18th, -to- January 19th, 2009, and that the Police has seized a Massachusetts Driver's license from Murphy's home, in the name of: William Palavacini, would you be able to say for certain that the crew had not stood overnight at the Hotel, after having completed the Brink's Burglary ?*
*A. To be honest with you, I guess I's have to say that it is possible, because by the time we had completed the Burglary, I had been awake for at ;east 36 straight hours without sleep, and I cane remember just collapsing after we were done, so I'd have to tell you that it was possible that we had stood at a motel overnight, but that if we did, I had lost my memory of it.*

*Q. Whereas you had testified that the Crew had trouble starting a Budget Rental Truck in the Hotel Parking lot, on the morning of the Burglary- January 17th, 2009, and that it had taken 1-to- 2 hours to drive from the Hotel Parking lot to the Pennsylvania Storage Facility, -AND whereas Map Quest directions clearly indicate that the distance to travel from the hotel Parking lot -to- the Pennsylvania Storage Facility would take no more than 2-5 minutes to travel, is it possible that you were wrong in stating that it took 1-2 hours to travel ?*
*A. Yeh, like I told you, everything was just happening quickly, I was extremely tired, nervous, and scared, cause I had never done anything like this before, so, I guess I could have been wrong in stating that it would have taken 1-2 hours to travel from the Hotel to the Storage Facility, You also gotta realize that within a short period of time, after the Burglary, that the FBI showed up at my door, to question me about this Burglary, and they told me the way it had gone down, as if they were there with us, they knew everything, and I wasn't about to try and lie to them, because they already k new everything, so I had to tell them what I remembered at that time, I had to make a split second decision as to whether I was going to cooperate and help myself, or try and lie to them, of which I knew would not work.*
*Continued on Next Page*

*(Page # 11 -of- )*

*Q. In your testimony, you also stated that Joe Morgan had rented the Storage Bin at U-Haul in Lynn, Ma., yet, the records indicate that a George Bogart had rented Bin #90 on 01/23/2009, and a video recording had been summonsed to show who the person was that actually rented the Bin #90, which depicts Robert You, - Doucette at the Service/Sales Desk, whereby George Bogart's Name was signed as the person renting this Bin. How would you explain this ?*

*A. I didn't sign for anything, I walked in there with Joe Morgan to rent the Bin, and Joe Morgan signed the Paper-work, Not-Me, I can only guess that Joe Morgan had apparently written down Bogart's Name, as being the person renting the Bin, I never looked at the form that Joe was filling out, so I never actually seen who's name was written on the rental form, SOooo, I guess I could have been wrong about this, too, I'm just telling you the truth of the matter as I remember it, I've got nothing to hide anymore, I feel badly for Sean, but I'm just trying to make something of my life, starting all over again.*

*A. I'm still on Probation, I have over a million dollars to pay in restitution, and I'm trying to work enough to just make ends meet, which I'll probably be doing for the rest of my life, I'm just trying to do what I can to survive, and stay away from any trouble,*
*Jail ,was a rude awakening for me, and I ne3ver want to go back there again.*

*Prior to terminating this interview, Robert Doucette explained to me that he knows from our discussion, that Sean Murphy apparently believes that he-Robert had stolen these items from him, and might consider coming up with some way to proving this, and placing pressure on Robert, of which he-Robert is not that concerned about, because he did not take any of these items, that he has been truthful with this Detective, and that he is only been cooperative with this Detective, because he has nothing to hide, from this detective, nothing to hide from Sean Murphy, and nothing to hide from Law Enforcement.*

*At this, I explained to Robert that he knows Sean Murphy much better than I do, that I was not there to intimidate him in any way, on behalf of myself or Sean Murphy, and that whatever Sean Murphy chose to do about these matters, was his personal decision.*

*In conclusion, I thanked Robert Doucette for having spoken with me about these matters, and asked him for his Telephone number, so as I might be able to call him, if Sean had posed anymore questions that he might have about these matters, at which time Robert furnished me with his Tel. Number as being:*
**(978) 457-3206**

*Lisa M. L. Jansen, Tel.# (617) 293-3185 Owner of Frank's Auto Clinic -- Not for Public Information.*
*Robert Doucette works as the Office Manager, for: Frank's Auto Clinic 620 Main Street, Haverhill, Massachusetts Tel. # (978) 521-3936*
*Open - 8:am-5:00pm- Monday thru Friday and 8:00am-2:00pm- Saturdays*
**Travel-Time -from- Fairhaven, Ma. -to- Haverhill, Ma. and Back On 05/26/2015 - (4.8-Hrs.)**
**Interview of Witness in Haverhill, Ma., On - 05/26/2015 - (1.0-Hr.)**

---

**TRADER JOE's :** *Does not mail out products to anyone whatsoever.*

**ACCESS SECUREPAK** : *I have established an account with them and they do mail out products to the Bristol County House of Correction in Dartmouth, Massachusetts, NO- FOOD ITEMS AT ALL. They even confirmed that they would mail an order from me to Mr. Sean Murphy, at this facility.*
*Continued on Next Page*
*(Page # 12 -of- )*

**<u>NEW ENGLAND AUTO REPAIR  1263 Saratoga Street, East Boston, Ma.</u>**
*I attempted to get the name of the current owner and previous owner of this building, whereby I was able to learn through the Assessor's Office that the current owner is listed as being **Mass Port Authority**, however they did not list the previous owner's name.*

***Checking with the Suffolk Registry of Deeds,*** *was to no avail, either, because the previous owner's name was not on file for this address, and they told me that I would have to hire an Attorney, who would in turn hire someone else to research for this information, which is a bunch of Shit.*

*As a result, I sent a check to the Suffolk Registry of Deeds, requesting a copy of the current deed for this property as well as a copy of the deed that had been registered in the previous owner's name.*

*Don't know if this is going to work or not, right now.*

---

**Composition of Report- THRU- 05/28/2015**

**Respectfully Submitted:**
**Richard E. Ferreira**
**Licensed Private Detective**      **R E F Investigative Services**      **Massachusetts Lic.# P1412**

EXHIBIT  B

# Sentenced burglar mum on money

By Kathy Lynn Gray
THE COLUMBUS DISPATCH

The government's star witness in the Brink's warehouse burglary had plenty to say on the stand last month but nothing to say yesterday as he was sentenced to two years and three months in federal prison.

The testimony of Robert Doucette, 41, helped convict Sean D. Murphy, the ringleader behind the $2.3 million heist, during an October jury trial.

Besides sentencing Doucette, of Lynn, Mass., U.S. District Judge George C. Smith also ordered him to pay a share of $1.3 million in restitution for his part in the



Robert
Doucette



Sean D.
Murphy

January 2009 burglary in South Linden.

"He was the only witness who could place Murphy at the scene of the crime," Smith said.

Although conceding that Doucette provided "substantial" assistance to the government's investigation, Smith said he remains concerned that more than half of

the stolen money has not been found.

"The court wonders where Mr. Doucette's money is," Smith said.

Doucette and Joseph M. Morgan, 29, pleaded guilty in April to two charges from the burglary: racketeering and conspiracy to transport stolen merchandise and money across state lines. Morgan, who did not testify at Murphy's trial, was sentenced to four years and seven months in prison.

A jury found Murphy, 47, guilty of masterminding the heist after Doucette gave a play-by-play account of how the three defeated the warehouse's security system and burned their way into a mon-

ey vault.

Murphy has not been sentenced yet, but he and Morgan also will contribute to the $1.3 million in restitution, the judge said.

The three were part of the Lynn Breakers, a burglary ring out of Lynn, Mass., where Murphy lived and operated several moving companies. They were indicted in the Brink's case in January.

Doucette could have been sentenced to 15 years in prison. The government asked the judge for a lesser sentence because of his help, which included showing investigators where the burglars had stashed $388,000 in stolen coins.

kgray@dispatch.com