IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SEAN D. MURPHY,**

       **Petitioner,**                             **CASE NO. 2:14-CV-1706**
                                                      **CRIM. CASE NO. 2:11-CR-010(1)**
   **v.**                                                   **JUDGE GEORGE C. SMITH**
                                                       **MAGISTRATE JUDGE DEAVERS**

**UNITED STATES OF AMERICA,**

       **Respondent.**

## OPINION AND ORDER

On May 11, 2016, the Magistrate Judge issued a *Report and Recommendation* recommending that the *Motion to Vacate under 28 U.S.C. 2255* (ECF No. 184) and *Motion for New Trial* (ECF No. 185) be denied and that this action be dismissed. (ECF No. 216). Petitioner has filed an *Objection* to the Magistrate Judge's *Report and Recommendation*. (ECF No. 217). Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow, Petitioner's *Objection* (ECF No. 217) is **OVERRULED**. The *Report and Recommendation* (ECF No. 216) is **ADOPTED** and **AFFIRMED**. The *Motion to Vacate under 28 U.S.C. 2255* (ECF No. 184) and *Motion for New Trial* (ECF No. 185) are **DENIED**. Petitioner's request for an evidentiary hearing is **DENIED**. This action is hereby **DISMISSED**.

Petitioner's request for a certificate of appealability is **DENIED**.

This case involves Petitioner's convictions after a jury trial on one count of conspiracy to transport merchandise and money in interstate commerce, and one count of transporting

merchandise and money in interstate commerce. (*See* ECF No. 178).[1] The Court imposed an aggregate term of 156 months imprisonment. (ECF No. 175). On November 19, 2014, the Sixth Circuit affirmed the sentence and judgment of this Court. (ECF No. 193). In his *Motion to Vacate under 28 U.S.C. 2255*, Petitioner asserts that prosecution witness Robert Doucette committed repeated material perjury (claim one); that the government knowingly presented such perjured testimony (claim two); that he is actually innocent (claim three); that he was denied the effective assistance of counsel (claim four); that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963) (claim five); and that he was denied a fair trial based on cumulative error (claim six). Petitioner also has filed a related motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, in which he claims that he has obtained newly discovered evidence establishing that prosecution witness Robert Doucette lied and reflecting Petitioner's innocence of the charges. The Magistrate Judge recommended dismissal of Petitioner's motion for a new trial, concluding that Petitioner had failed to present newly discovered evidence justifying a new trial and the record failed to reflect the existence of material exculpatory evidence supporting Petitioner's claim of innocence. The Magistrate Judge further recommended dismissal of Petitioner's § 2255 claims on the merits.

      Petitioner objects to all of the Magistrate Judge's recommendations. He again raises all of the arguments that he previously presented. Petitioner objects to the Magistrate Judge's conclusion that documents he submitted in support of his motion for a new trial do not constitute

---

[1] On March 27, 2013, the United States Court of Appeals for the Sixth Circuit dismissed Petitioner's convictions on Counts 2 and 3 of the *Indictment* and remanded the case for re-sentencing, but otherwise affirmed the judgment of this Court. *United States v. Murphy*, 518 F. App'x 396, unpublished, 2013 WL 1224092 (6th Cir. 2013).

2

newly discovered evidence that he could not have earlier obtained.[2]  Petitioner argues that he

could not earlier have obtained such evidence because he did not know that Doucette would lie

---

[2] Petitioner has also included a document which appears to be a summary of an interview by private investigator Richard E. Ferreira, with Robert Doucette on May 26, 2015.  (ECF No. 217, PageID# 2955-57).  The report indicates, in relevant part, as follows:

Q.  In your testimony, you testified that you did not stay at a Hotel on Sunday, January 18, 2009, after the Brinks burglary was completed, and that the entire Crew drove directly from the burglary, back home, without having stood over at any hotel or motel – Seeing that the Comfort Inn records for that date, show that a Mr. William Palavacini had stood [sic] at the hotel from January 18th, -to- January 19th, 2009, and that the Police has [sic] seized a Massachusetts Driver's license from Murphy's home, in the name of:  William Palavacini, would you be able to say for certain that the crew had not stood overnight at the Hotel, after having completed the Brink's Burglary?

A.  To be honest with you, I guess I[] have to say that it is possible, because by the time we had completed the Burglary, I had been awake for at least 36 straight hours without sleep, and I can[] remember just collapsing after we were done, so I'd have to tell you that it was possible that we had stood at a motel overnight, but that if we did, I had lost my memory of it.

Q.  Whereas you had testified that the Crew had trouble starting a Budget Rental Truck in the Hotel Parking lot, on the morning of the Burglary – January 17th, 2009, and that it had taken 1 to 2 hours to drive from the Hotel Parking lot to the Pennsylvania Storage Facility, -- AND whereas the Map Quest directions clearly indicate that the distance to travel from the hotel Parking lot – to—the Pennsylvania storage Facility would take no more than 2-5 minutes to travel, is it possible that you were wrong in stating that it took 1-2 hours to travel?

A.  Ye[a]h, like I told you, everything was just happening quickly, I was extremely tired, nervous, and scared, cause I had never done anything like this before, so, I guess I could have been wrong in stating that it would have taken 1-2 hours to travel from the Hotel to the Storage Facility.  You also gotta realize that within a short period of time, after the burglary, that the FBI showed up at my door, to question me about this Burglary. . . and I wasn't about to try and lie to them. . . so I had to tell them what I remembered at that time.

Q.  In your testimony, you also stated that Joe Morgan had rented the Storage Bin at U-Haul in Lynn, Ma., yet, the records indicate that a George Bogart had rented Fin #90 on 01/23/2009, and a video record had been summonsed to show who the person was that actually rented the Bin #90, which depicts Robert You – Doucette

3

until the third day of trial, did not know the name of the hotel where he and co-defendants stayed after the burglary, and because his private investigator failed to perform the tasks requested by Petitioner during trial.  Petitioner did not request additional time to obtain such evidence, because he did not believe the Court would grant such a request.  Petitioner objects to the Magistrate Judge's conclusion that nothing in the record lends credibility to his claim that he is innocent of the crimes charged or calls into question the substantial evidence of guilt.  Petitioner argues at length that he has produced evidence indicating that Doucette lied and that Petitioner did not cross state lines or conspire to do so, thus establishing his innocence.  Petitioner argues that the *Declaration of Anthony Moschopoulos* (indicating that Doucette stated that he regretted lying) and *Declaration of Joseph M. Morgan* (verifying Petitioner's alleged version of the events at issue), must be considered as significant evidence corroborating his claims and an indication that that Doucette has recanted.  Petitioner objects to the Magistrate Judge's conclusion to the contrary.  Petitioner disputes that other evidence submitted at trial corroborates Doucette's testimony indicating Petitioner's guilt and requests that Doucette's testimony be considered in its entirety.

---

at the Service/Sales Desk, whereby George Bogart's Name was signed as the person renting this Bin.  How would you explain this?

A.  I didn't sign for anything.  I walked in there with Joe Morgan to rent the Bin, and Joe Morgan signed the Paper-work, Not Me, I can only guess that Joe Morgan had apparently written down Bogart's Name, as being the person renting the Bin, I never looked at the form that Joe was filling out, so I never actually seen who's name was written on the rental form, soooo, I guess I could have been wrong about this, too.  I'm just telling you the truth of the matter as I remember it, I've got nothing to hide anymore, I feel badly for Sean, but I'm just trying to make something of my life, starting all over again.

(PageID# 2955-56).

Petitioner also objects to the Magistrate Judge's recommendation of dismissal of his § 2255 claims. He argues that the record establishes that his attorney improperly acted against his interest during trial in regard to the mailing of a letter to prosecution witness David Nassor and denied him the effective assistance of counsel by instructing the defense investigator Gary Phillips to cease investigations on the case prior to trial. Petitioner again argues that it was solely through the fault of defense counsel that he was unable to obtain information regarding the location of an Ohio storage facility defendants used to store proceeds of the Brinks burglary which, he contends, would have established his innocence. Petitioner also complains that his attorney told the jury, during *voir dire*, that he was going to make mistakes.

On the sixth day of trial, Attorney Graeff, acting as stand-by counsel, advised the Court that Petitioner had requested him to send a letter to prosecution witness David Nassor located at the Delaware County jail, containing questions regarding Nassor's upcoming trial testimony. *Transcript* (filed under seal) (ECF No. 161). The defense investigator had refused to mail the letter. (PageID#2219). Attorney Graeff did not feel that he could, within ethical bounds, mail the letter on Petitioner's behalf, and expressed concern that if the letter was not mailed, it may cause issues with his continued ability to act as stand-by counsel. (PageID# 2220). The letter was sealed. (*Id.*). At counsel's request, the Court made arrangements for the letter to be delivered to Nassor at the jail. (*Id.*). Nothing in the record supports Petitioner's claim that counsel acted improperly in regard to this matter, or that Petitioner was prejudiced thereby.

Petitioner also complains that defense counsel stated as follows during *voir dire*:

> On a personal note, I am a person that is human, and I make mistakes. The last time Mr. Dominguez and I tried a case, a number of years ago, he, in his closing argument, made mention of a mistake that I had made during the course of the trial. And in Mr. Dominguez's opinion, it involved the evidence itself, and in my opinion, it did not. But all I am saying is that each of us here

5

> in our everyday lives make mistakes. I am going to make a mistake in this case. All I am asking is that you don't hold Mr. Murphy to that mistake if it does not involve the testimony or the documents that are being introduced into the case? You understand what I am saying with respect to my own misgivings or any problems that I may have in communicating or making mistakes.

*Transcript* (filed under seal) (ECF No. 162, PageID# 2292). Again, counsel did not perform in a constitutionally unreasonable manner by making this statement to the jury, nor has Petitioner established prejudice thereby, as that term is defined under *Strickland v. Washington*, 466 U.S. 668 (1984).

Further, upon review of the entire record, this Court agrees that Petitioner has failed to present any new evidence of a material or exculpatory nature that he could not have earlier obtain that establishes his actual innocence of the charges against him or justifies a new trial. Likewise, the record is without support for his claim of prosecutorial misconduct. Petitioner has also failed to establish the denial of the effective assistance of counsel so as to warrant relief in these proceedings, particularly where Petitioner chose to exercise his right of self-representation. *See Faretta v. California*, 422 U.S. 806, 834 n.46 ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). The record reflects that Petitioner provided Phillips with inadequate information to obtain certain material which Petitioner alleges would have been exculpatory to the defense. As discussed by the Magistrate Judge, in any event, such material would have only provided impeachment evidence, and does not support his claim that Doucette lied. The United States Court of Appeals for the Sixth Circuit has already considered, and rejected, Petitioner's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and this Court therefore will not now again consider such claim here. The record reflects substantial evidence

of guilt. In short, upon careful review of the entire record, and for the reasons detailed in the Magistrate Judge's *Report and Recommendation*, this Court likewise concludes that Petitioner has failed to establish a basis for relief.

Therefore, Petitioner's *Objection* (ECF No. 217) is **OVERRULED**. The *Report and Recommendation* (ECF No. 216) is **ADOPTED** and **AFFIRMED**. The *Motion to Vacate under 28 U.S.C. 2255* (ECF No. 184) and *Motion for New Trial* (ECF No. 185) are **DENIED**. Petitioner's request for an evidentiary hearing is **DENIED.** This action is hereby **DISMISSED**.

Petitioner also has filed a request for a certificate of appealability. "In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of habeas corpus in federal court holds no automatic right to appeal from an adverse decision by a district court." *Jordan v. Fisher*, -- U.S. --. --, 135 S.Ct. 2647, 2650 (2015); 28 U.S.C. § 2253(c)(1) (requiring a habeas petitioner to obtain a certificate of appealability in order to appeal.) The petitioner must establish the substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This standard is a codification of *Barefoot v. Estelle*, 463 U.S. 880 (1983). *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (recognizing codification of *Barefoot* in 28 U.S.C. § 2253(c)(2)). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack,* 529 U.S. at 484 (quoting *Barefoot*, 463 U.S., at 893 n. 4).

Where the Court dismisses a claim on procedural grounds, however, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Thus, there are two components to determining whether a certificate of appealability should issue when a claim is dismissed on procedural grounds: "one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id*. at 485. The court may first "resolve the issue whose answer is more apparent from the record and arguments." *Id*.

The Court is not persuaded that Petitioner has established that reasonable jurists would debate whether this action should have been resolved differently. Petitioner's request for a certificate of appealability therefore is **DENIED.**

       **IT IS SO ORDERED.**

                                              */s/ George C. Smith*_____
                                              **GEORGE C. SMITH, JUDGE**
                                              **UNITED STATES DISTRICT COURT**